**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| MILLERCOORS, LLC,<br><br>       Plaintiff,<br><br>       v.<br><br>ANHEUSER-BUSCH COMPANIES, LLC,<br><br>       Defendant. | Case No. 19-cv-00218 |

## MILLERCOORS, LLC'S OPPOSITION TO
## ANHEUSER-BUSCH COMPANIES, LLC'S MOTION TO DISMISS

## TABLE OF CONTENTS

I.      Legal Standard ........................................................................................................... 1

II.     MillerCoors Has Stated a Claim for False Advertising. ...................................... 3

    A.      The Complaint Alleges Facts From Which the Court May Plausibly Conclude that AB's Advertisements are Misleading. .................................................... 3

    B.      MillerCoors Has Alleged Facts Showing Actual Deception. ................................ 6

    C.      MillerCoors Has Alleged Facts Showing Injury.................................................... 9

III.    MillerCoors Has Pled All the Elements Necessary to Support Its Allegation of Trademark Dilution, and it is Inappropriate to Address AB's Affirmative Defenses at the Motion to Dismiss Stage.................................................................................................................. 10

    A.      An Affirmative Defense is Not a Valid Ground for Dismissal; MillerCoors Need Not Plead Facts *Disproving* the Fair Use Defense................................................ 10

    B.      MillerCoors has Properly Pled All Elements for Dilution, and AB's Contentions to the Contrary Lack Merit. ................................................................................... 13

        i.      AB's Bad Faith Use of the MillerCoors Marks Constitutes Use in Commerce that Cannot Hide Behind the Curtain of Fair Use. ................. 14

        ii.     AB's Actions Are Likely to Cause Dilution by Tarnishment.................. 22

IV.     Conclusion….. ............................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Federal Cases

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*
   414 F.3d 400 (2d Cir. 2005) ........................................................................... 20

*Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*,
   391 F. Supp. 2d 1148 (S.D. Fla. 2005) .............................................................. 6

*Am. Italian Pasta Co. v. New World Pasta Co.*,
   371 F.3d 387 (8th Cir. 2004) ............................................................................. 5

*Americash Loans, LLC v. AO Ventures, LLC*,
   No. 08 C 5147, 2009 WL 743010 (N.D. Ill. Mar. 19, 2009) .............................. 11

*Ameritox, Ltd. v. Millennium Labs., Inc.*,
   889 F. Supp. 2d 1304 (M.D. Fla. 2012) ............................................................. 6

*Ansel Adams Publ'g Rights Tr. v. PRS Media Partners, LLC*,
   No. C 10-03740 JSW, 2010 WL 4974114 (N.D. Cal. Dec. 1, 2010) .............. 13, 20

*Architectural Mailboxes, LLC v. Epoch Design, LLC*,
   No. 10CV974 DMS ........................................................................................... 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................... 2, 3

*Auster Oil & Gas, Inc. v. Stream*,
   764 F.2d 381 (5th Cir. 1985) ............................................................................. 2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 2

*Bijur Lubricating Corp. v. Devco Corp.*,
   332 F. Supp. 2d 722 (D.N.J. 2004) .................................................................. 18

*Biomet, Inc. Health Ben. Plan v. Black*,
   51 F.Supp.2d 942 (N.D. Ind. 1999) ................................................................... 1

*Carr v. Tillery*,
   591 F.3d 909 (7th Cir. 2010) ............................................................................. 6

*Caterpillar Inc. v. Walt Disney Co.*,
   287 F. Supp. 2d 913 (C.D. Ill. 2003) ............................................................... 12

*Cayman Exploration Corp. v. United Gas Pipe Line Co.*,
   873 F.2d 1357 (10th Cir. 1989) ......................................................................... 2

*Conrad v. AM Cmty. Credit Union,*
No. 13-cv-461-bbc, 2013 WL 4052606 (W.D. Wis. Aug. 12, 2013) ......................................11

*Control Solutions, LLC v. Oshkosh Corp.,*
No. 10 C 121, 2011 WL 1131329 (N.D. Ill. Mar. 28, 2011) ....................................................8

*Coty Inc. v. Excell Brands, LLC,*
277 F. Supp. 3d 425 (S.D.N.Y. 2017)...................................................................................24

*Deckard v. Gen. Motors Corp.,*
307 F.3d 556 (7th Cir. 2002) ................................................................................................11

*Deere & Co v. MTD Products, Inc.,*
41 F.3d 39 (2d Cir. 1994)......................................................................................................23

*Delta Air Lines, Inc. v. Influence Direct, LLC,*
Nos. 3-14-0926, 3-14-1112, 2016 WL 310068 (M.D. Tenn. Jan. 15, 2016)..........................19

*Doctor's Data, Inc. v. Barrett,*
No. 10 C 03795, 2011 WL 5903508 (N.D. Ill. Nov. 22, 2011).........................................11, 14

*DuRocher v. Riddell, Inc.,*
97 F.Supp.3d 1006, 1014 (S.D. Ind. 2015) .............................................................................1

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,*
547 F.3d 1095 (9th Cir. 2008) ..................................................................................12, 15, 17

*Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.,*
707 F.3d 869 (7th Cir. 2013) ................................................................................................17

*Eli Lilly & Co. v. Arla Foods, Inc.,*
893 F.3d 375 (7th Cir. 2018) ..............................................................................................3, 7

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,*
228 F.3d 56 (2d Cir. 2000).....................................................................................................15

*Fed Ex Corp. v. UPS, Inc.,*
765 F. Supp. 2d 1011 (W.D. Tenn. 2010).................................................................................6

*Fleischfresser v. Dirs. of Sch. Dist. 200,*
15 F.3d 680 (7th Cir. 1994) ....................................................................................................5

*Frontrange Sols. USA, Inc. v. Newroad Software, Inc.,*
505 F. Supp. 2d 821 (D. Colo. 2007)......................................................................................12

*Galvotec Alloys, Inc. v. Gaus Anodes Int'l, LLC,*
No. 7:13-CV-664, 2014 WL 6805458 (S.D. Tex. Dec. 2, 2014)..............................................16

iii

*G.D. Searle & Co v. Hudson Pharmaceutical Corp.*,
    715 F.2d 37 (3d Cir. 1983)......................................................................................12

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997) .....................................................................................2

*United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*,
    772 F.3d 1102 (7th Cir. 2014) ...................................................................................8

*Halbrecht v. Prudential-Bache Props, Inc.*,
    Civ. No. H-90-799 (JAC), 1992 WL 336757 (D. Conn. July 25, 1991) .................6

*Healthnow N.Y. Inc. v. Catholic Health Sys., Inc.*,
    No. 14-CV-986S, 2015 WL 5673123 (W.D.N.Y. Sept. 25, 2015)..........................6

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*,
    73 F.3d 497 (2d Cir. 1996)...............................................................................19, 23

*Horphag Research Ltd. v. Garcia*,
    475 F.3d 1029 (9th Cir. 2007) ...........................................................................15, 19

*Language Line Servs., Inc. v. Language Servs. Assocs., LLC*,
    No. C 10-02605 JW, 2011 WL 5024281 (N.D. Cal. Oct. 13, 2011) ........................5

*Logan Graphic Prods., Inc. v. Textus USA, Inc.*,
    No. 02 C 1823, 2002 WL 31507174 (N.D. Ill. Nov. 8, 2002).................................9

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
    306 F. Supp. 3d 629, 639 (S.D.N.Y. 2018).............................................................7

*Lone Star Indus., Inc. v. Horman Family Trust*,
    960 F.2d 917 (10th Cir. 1992) ..................................................................................1

*Malletier v. Dooney & Bourke, Inc.*,
    561 F. Supp. 2d 368 (S.D.N.Y. 2008)....................................................................12

*Mattel, Inc. v. MCA Records, Inc.*,
    296 F.3d 894 (9th Cir. 2002) .................................................................................12

*Mattel, Inc. v. Walking Mountain Prods.*,
    353 F.3d 792 (9th Cir. 2003) .................................................................................12

*Mead Johnson & Co. v. Abbott Labs.*,
    201 F.3d 883 (7th Cir. 2000) ...................................................................................5

*Merisant Co. v. McNeil Nutritionals, LLC*,
    515 F. Supp. 2d 509 (E.D. Pa. 2007) ......................................................................4

DCACTIVE 49797672 v.2

*MJC Am., Ltd. v. Gree Elec. Appliances, Inc. of Zhuhai,*
    No. CV 13-04264-SJO (CWx), 2015 WL 12777382 (C.D. Cal. Feb. 2, 2015)...............19, 22

*Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.,*
    671 F.3d 526 (5th Cir. 2012) ...............................................................................12

*New Kids on the Block v. News Am. Publ'g, Inc.,*
    971 F.2d 302 (9th Cir. 1992) ...............................................................................18

*Packman v. Chicago Tribune Co.,*
    267 F.3d 628 (7th Cir. 2001) .................................................................................8

*Peters v. West,*
    692 F.3d 629 (7th Cir. 2012) .............................................................................2, 4

*Playboy Enters., Inc. v. Welles,*
    279 F.3d 796 (9th Cir. 2002) ...............................................................................12

*PODS Enters., LLC v. U-Haul Int'l, Inc.,*
    126 F. Supp. 3d 1263, 1280 (M.D. Fla. 2015) ......................................................16

*Prestonettes, Inc. v. Coty,*
    264 U.S. 359 (1924)............................................................................................18

*Priority Int'l Animal Concepts, Inc. v. Bryk,*
    No. 12-C-0150, 2012 WL 6020044 (E.D. Wis. Dec. 3, 2012) .................................9

*Richards v. Mitcheff,*
    696 F.3d 635 (7th Cir. 2012) ...............................................................................11

*Rogers v. Grimaldi,*
    875 F.2d 994 (2d Cir. 1989)............................................................................12, 17

*Rosetta Stone Ltd. v. Google, Inc.,*
    676 F.3d 144 (4th Cir. 2012) ...............................................................................15

*Scott Fetzer Co. v. House of Vacuums Inc.,*
    381 F.3d 477 (5th Cir. 2004) ...............................................................................12

*Slep-Tone Entm't Corp. v. Coyne,*
    41 F. Supp. 3d 707, 717–18 (N.D. Ill. 2014) ........................................................11

*Slep-Tone Entm't Corp. v. Elwood Enters., Inc.,*
    No. 13 C 7346, 2014 WL 1612891 (N.D. Ill. Apr. 21, 2014)..................................11

*Smith v. Chanel, Inc.,*
    402 F.2d 562 (9th Cir. 1968) ...........................................................................18, 24

v

*Sorensen v. WD-40 Co.*,
  792 F.3d 712 (7th Cir. 2015) ...............................................................................15

*SSP Agricultural, Etc. v. Orchard-Rite Ltd.*,
  592 F.2d 1096 (9th Cir. 1979) .............................................................................12

*Sullivan v. Bickler*,
  360 F. Supp. 3d 778, 786 (N.D. Ill. 2019) ..........................................................17

*Tiffany (NJ) Inc. v. eBay, Inc.*,
  576 F. Supp. 2d 463 (S.D.N.Y. 2008).............................................................21, 23

*Toni & Guy (USA) Ltd. v. Nature's Therapy, Inc.*,
  No. 03 CV 2420 (RMB), 2006 WL 1153354 (S.D.N.Y. May 1, 2006) ................17

*Toys R Us, Inc. v. Feinberg*,
  26 F. Supp. 2d 639 (S.D.N.Y. 1998).....................................................................23

*Turner v. Pleasant*,
  663 F.3d 770 (5th Cir. 2011) .................................................................................1

*Ty Inc. v. Perryman*,
  306 F.3d 509 (7th Cir. 2002) ...............................................................................23

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
  20 F.3d 771 (7th Cir. 1994) ...................................................................................8

*Vidal Sassoon, Inc. v. Bristol-Myers Co.*,
  661 F.2d 272 (2d Cir. 1981).....................................................................................1

*Villano, Inc. v. CBS, Inc.*,
  176 F.R.D. 130 (S.D.N.Y. 1997) ............................................................................9

*Vincent v. Utah Plastic Surgery Soc'y*,
  621 F. App'x 546 (10th Cir. 2015) .........................................................................8

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ..................................................................................3

*Wilson v. Frito-Lay N. Am., Inc.*,
  No. 12-1586 SC, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013)..............................4

*World Impressions, Inc. v. McDonald's Corp.*,
  235 F. Supp. 2d 831 (N.D. Ill. 2002) ...................................................................15

*Wysong Corp. v. APN, Inc.*,
  889 F.3d 267 (6th Cir. 2018) ..................................................................................7

vi

## Federal Statutes

15 U.S.C. § 1125(c)(1)................................................................................................13

15 U.S.C. § 1125(c)(2)(C) .........................................................................................13

## Other Authorities

Federal Rules of Civil Procedure, Rule 8 .....................................................................1

Federal Rules of Civil Procedure, Rule 12(b)(6) ....................................................6, 11

Federal Rules of Civil Procedure, Rule 9(b)............................................................8, 9

## MILLERCOORS, LLC'S OPPOSITION TO
## ANHEUSER-BUSCH COMPANIES, LLC'S MOTION TO DISMISS

Anheuser-Busch Companies, LLC's ("AB") motion to dismiss should be denied. MillerCoors, LLC's ("MillerCoors") complaint ("Complaint") seeks to hold AB liable under the federal Lanham Act for its deceptive advertising campaign ("Campaign"), which exploits consumers' lack of familiarity with beer brewing and has led to the mistaken belief that *Miller Lite* and *Coors Light* beers contain corn syrup or high fructose corn syrup ("HFCS").  This conduct is not only actionable false advertising, but also dilutes the famous *Miller Lite* and *Coors Light* trademarks by wrongly mischaracterizing their contents and quality.

Resting its argument on the incorrect assertion that its advertising claims are literally true and unambiguous, AB's motion asserts MillerCoors has no legal remedy.  AB is wrong, however, because Section 43(a) of the Lanham Act protects against "more than blatant falsehoods" and prohibits literally true but misleading advertising of the type in which AB has engaged here.  *Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 277 (2d Cir. 1981) (citation omitted).

## I.   Legal Standard

"Courts view motions to dismiss for failure to state a claim with disfavor because such motions undermine the policy of deciding causes of action on their merits."  *DuRocher v. Riddell, Inc.*, 97 F.Supp.3d 1006, 1014 (S.D. Ind. 2015) (citing *Biomet, Inc. Health Ben. Plan v. Black,* 51 F.Supp.2d 942, 945 (N.D. Ind. 1999); *see also, Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (same point); *Lone Star Indus., Inc. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir. 1992) (same point).  Courts are rightly skeptical of such motions because the standard for pleading set forth in Rule 8 of the Federal Rules of Civil Procedure requires simply "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.

Courts around the country have framed Rule 8 as "erect[ing] a powerful presumption against rejecting pleadings for failure to state a claim." *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (citation omitted); *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985) (same point); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (same point).

Although AB has filed a putative motion to dismiss, its brief in support relies on facts outside of the Complaint and arguments that AB might or might not prove during the subsequent course of litigation. For example, AB's brief argues that the Complaint does not identify specific data proving MillerCoors claims, and that it does not definitively rebut all of AB's possible defenses. Dkt. 29, AB's Memo of Law in Support of Motion to Dismiss ("MTD") at 9-11. But this is not required at the pleadings stage. Potential evidentiary disputes and affirmative defenses of the types on which AB relies are not relevant for a motion to dismiss. The key question is whether MillerCoors has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is appropriate only if the Complaint fails to answer that question. *Id.* In making that determination, courts must accept as true all allegations contained in the complaint at issue, and must construe those allegations "in the light most favorable to the plaintiff," including by "draw[ing] all plausible inferences in [the plaintiff's] favor." *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012) (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

To be facially plausible, a complaint must provide more than labels and conclusions, but need not contain "detailed factual allegations." *Twombly*, 550 U.S. at 555. Deciding whether the complaint as a whole moves the claim "across the line from conceivable to plausible" is "a

DCACTIVE 49797672 v.2

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 680.

## II.   MillerCoors Has Stated a Claim for False Advertising.

To state a claim for false advertising under the Lanham Act, a plaintiff need only allege facts showing that the defendant: (1) made a false or misleading statement; (2) that actually deceives or is likely to deceive a substantial segment of the advertisement's audience; (3) in a way that injures or is likely to injure the plaintiff. *See Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381–82 (7th Cir. 2018). ABI contends that MillerCoors Complaint fails on each of those three elements, but ABI is wrong.

### A.   The Complaint Alleges Facts From Which the Court May Plausibly Conclude that AB's Advertisements are Misleading.

The Complaint alleges that reasonable consumers are likely to interpret "made with corn syrup" and "brewed with corn syrup" to mean "includes corn syrup" (including HFCS). *See, e.g.,* Compl. ¶¶41, 101. AB's principal response is to argue about what **it** believes is the only possible reasonable interpretation of the phrases "made with corn syrup" and "brewed with corn syrup:" that corn syrup is used in the brewing process only, and is not present in the final beer product.[1] However, AB does not cite any authority for this proposition, and this position is firmly at odds with how ordinary people use "made with" or "brewed with," as well as the standard for motions to dismiss, which affords all reasonable inferences to the non-movant.

For example, a number of federal courts have recognized that the words "made with," when used in conjunction with a food or beverage ingredient, is synonymous with "includes,"

---

[1] AB also conveniently ignores the wide variety of phrases and contexts employed by its commercials, which are not limited to the terms "made with" and "brewed with." The ads summarized in the Complaint claim that *Miller Lite* and *Coors Light* are "made with," "brewed with," or "use" corn syrup, as contrasted with *Bud Light*, which is not and does not.

DCACTIVE 49797672 v.2

"contains," or "consists of." *See, e.g.*, *Merisant Co. v. McNeil Nutritionals, LLC*, 515 F. Supp. 2d 509, 534 (E.D. Pa. 2007) (finding that product at issue "is, in fact made *with* sugar, *i.e.*, it *contains* sugar"); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (statement on boxes of fruit snacks claiming that snacks were "made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients *in the product* were natural") (emphasis added); *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586 SC, 2013 WL 1320468, at *13 (N.D. Cal. Apr. 1, 2013) ("[A] reasonable consumer could interpret a bag of chips claiming to have been 'Made with ALL NATURAL Ingredients' to *consist exclusively of* natural ingredients[.]") (emphasis added). Those decisions confirm what the dictionary already makes clear: "made" means "put together of various ingredients."[2]  "Brewing" refers not only to the fermentation process by which beers are made, but is also commonly understood by consumers to mean the process by which tea is steeped, allowing the tea ingredients to infuse into the liquid. *Id.* (definition of "brewed").  Neither the term "made with" nor "brewed with" is inherently limiting.  Neither statement forecloses the possibility in consumers' minds that some or all of the ingredients with which the product is "made" or "brewed" will be present in the finished product consumed by people.  It is thus very plausible that reasonable consumers could understand AB's advertisements to falsely claim that there is corn syrup or HFCS in *Miller Lite* and *Coors Light*.  Indeed, the risk that consumers will "get it wrong" should be borne by the advertiser in this case, which has expended tens of millions of dollars to communicate this misleading message.  To the extent that there is more than one reasonable interpretation of the language, all inferences should be drawn in favor of MillerCoors at this stage in the case.  *Peters,* 692 F.3d at 632.

---

[2] Definition of "made." *Merriam-Webster's online dictionary*, available at https://www.merriam-webster.com/dictionary/made?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (May 7, 2019).

4

That reality distinguishes this case from the Seventh Circuit's *Mead Johnson* decision and others AB cites in its brief.  Those cases, which involve challenges of alleged superiority claims made by the defendants about their own products or services, hold that consumer survey evidence may not be used to change the meanings attributable to words that the court concluded were unambiguous.  *See, e.g.*, *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 885-86 (7th Cir. 2000); *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 393-94 (8th Cir. 2004); *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, No. C 10-02605 JW, 2011 WL 5024281, at *12 (N.D. Cal. Oct. 13, 2011).  In other words, if a misleading implication arises only from an objectively *unreasonable* interpretation of the language in an advertisement, the fact that many consumers adopt that *unreasonable* interpretation does not mean the advertiser is liable for making a misleading statement.  But that standard cannot apply here where the alleged false claim arises from a *reasonable* interpretation of AB's advertisements.  Moreover, none of these cases AB cites support such application at the motion-to-dismiss stage in a case challenging purported comparative claims made by the defendant about the plaintiff's products.

AB also argues that its advertisements cannot be false because they merely reframe statements from MillerCoors websites.  This is patently incorrect because the websites use different words, different contexts, and prominently explain how corn syrup is used in brewing. However, the court need not resolve such contradictions for purposes of ruling on AB's motion to dismiss.  Because AB's argument about the contents of MillerCoors websites relies on evidence outside the four corners of the Complaint, this Court should not consider the argument, and the evidence AB has submitted in support of it should be stricken.  *See Fleischfresser v. Dirs. of Sch. Dist. 200*, 15 F.3d 680, 684 (7th Cir. 1994) (at motion-to-dismiss stage, district court may not consider material outside of the pleadings unless the court has converted the

DCACTIVE 49797672 v.2

motion into one for summary judgment); *Halbrecht v. Prudential-Bache Props, Inc.*, Civ. No. H-90-799 (JAC), 1992 WL 336757, at *11 (D. Conn. July 25, 1991) ("On a motion to dismiss, a court cannot consider the materials submitted *by defendants* in support of their motion."). Besides, AB's argument about the MillerCoors websites is, at most, an affirmative defense to liability of the sort not properly raised until summary judgment. *See, e.g.*, *Healthnow N.Y. Inc. v. Catholic Health Sys., Inc.*, No. 14-CV-986S, 2015 WL 5673123, at *6 (W.D.N.Y. Sept. 25, 2015) (addressing a similar issue only after converting a motion to dismiss into a motion for summary judgment). It has nothing to do with the sufficiency of MillerCoors pleadings, which means it is not a valid basis for granting a Rule 12(b)(6) motion. *See Carr v. Tillery*, 591 F.3d 909, 912-13 (7th Cir. 2010).

Because consumers could reasonably interpret "made with corn syrup" and "brewed with corn syrup" to mean "contains corn syrup" (including HFCS) the MillerCoors Complaint plausibly alleges that AB's advertisements are misleading.

**B. MillerCoors Has Alleged Facts Showing Actual Deception.**

AB separately contends that MillerCoors has not alleged facts showing that a substantial percentage of consumers will actually be deceived. That argument fails for two reasons.

*First*, at the pleading stage, MillerCoors is not required to allege facts showing what percentage of consumers will actually be deceived. *See Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 391 F. Supp. 2d 1148, 1165 (S.D. Fla. 2005) ("At the pleading stage, [plaintiff] is not required to submit [evidence of consumer deception]. It is sufficient for [plaintiff] to allege that the statements are deceptive."); *Ameritox, Ltd. v. Millennium Labs., Inc.*, 889 F. Supp. 2d 1304, 1316 (M.D. Fla. 2012) ("[A]lthough a party must support allegations of misleading advertisements with evidence of consumer deception at later stages of litigation, that burden does not exist at the pleading stage."); *Fed Ex Corp. v. UPS, Inc.*, 765 F. Supp. 2d 1011, 1022 (W.D.

DCACTIVE 49797672 v.2

Tenn. 2010) ("[Plaintiff], however, is not required to set forth evidence of actual consumer confusion at the pleading stage."). MillerCoors burden is simply to plead facts that "support a plausible inference that the challenged advertisements in fact misle[a]d a significant number of reasonable consumers." *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 271 (6th Cir. 2018). Allegations pointing to survey data are not required: "'[J]udicial experience and common sense' are [the court's] guides." *Id.* (citation omitted); *see also Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 379 (7th Cir. 2018) (holding that "[c]onsumer surveys or other 'hard' evidence of actual consumer confusion are unnecessary at the preliminary-injunction stage[,]" where the evidentiary burden on plaintiff is heavier than it is at the motion-to-dismiss stage).

     *Second*, and relatedly, even were MillerCoors obliged to plead facts illustrating actual confusion, it has done so. The Complaint reproduces pages of real-world consumer responses to AB's advertisements, all criticizing *Miller Lite* and *Coors Light* for supposedly containing corn syrup or HFCS. *See* Compl. ¶¶ 92–93. The Complaint cites industry studies and reports indicating that consumers are likely to be confused by the message in AB's advertisements. *Id.* ¶ 85. On top of all that, the Complaint cites statements by one of AB's own executives describing AB's research findings concluding that consumers prefer not to consume products with corn syrup and that consumers confuse corn syrup with HFCS. *Id.* ¶¶ 3, 5. At a minimum, those specific factual allegations push AB's claims of actual confusion well past the plausibility threshold. They also distinguish this case from ones that AB cites in which dismissal was deemed proper because the complaints included nothing but conclusory allegations that deception or confusion was likely. *See Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 639 (S.D.N.Y. 2018) (dismissing Lanham Act claim because plaintiff "offers no facts that show that consumers or retailers believe [the impliedly false claim] or that this belief

likely influenced their purchasing decisions"); *Vincent v. Utah Plastic Surgery Soc'y*, 621 F. App'x 546, 550 (10th Cir. 2015) (affirming dismissal of Lanham Act claim because allegation of consumer confusion was "wholly unsupported by even a single relevant fact").

AB cites *Control Solutions, LLC v. Oshkosh Corp.*, No. 10 C 121, 2011 WL 1131329 (N.D. Ill. Mar. 28, 2011), and *Packman v. Chicago Tribune Co.*, 267 F.3d 628 (7th Cir. 2001), for the proposition that "[a]necdotal evidence of confusion is insufficient" to establish confusion at the motion-to-dismiss stage. But those cases do not reach that conclusion. Rather, they hold that a false claim is not actionable under the Lanham Act if it only misleads a small handful of people. *See Control Solutions*, 2011 WL 1131329, at *3 (granting motion to dismiss false advertising complaint that was based on a single phone call to a customer); *Packman*, 267 F.3d at 645 (district court properly dismissed claim because four phone calls at issue were alleged only to have caused *de minimis* confusion). That truism is irrelevant here, where MillerCoors alleges that millions of consumers were exposed to, and influenced by, AB's misleading advertisements.

AB's argument about Rule 9(b) is equally unavailing. Rule 9(b) provides that plaintiffs *alleging fraud* must plead with particularity "the circumstances constituting fraud[,]" including "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (pleading fraud under RICO claims) (citation omitted). Failure to surmount that bar helped doom the fraud claims in the *Control Solutions* and *Grenadyor* cases AB cites. *See Control Solutions*, 2011 WL 1131329, at *3 (dismissing complaint for "fail[ing] to allege with particularity the who, what, where and when" of the alleged fraud); *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1108-109 (7th Cir. 2014)

(dismissing complaint because it failed to indicate the basis for plaintiff's belief that the alleged fraudulent acts under the False Claims Act had actually occurred).  Notably, AB never even asserts that the MillerCoors Complaint is deficient when it comes to explaining the circumstances constituting its false advertising claim, and its reliance on Rule 9(b) in this case is misplaced.

The essential element of a false advertising claim is "the making of a false statement, not fraud," the latter of which requires "specific intent to harm the victim and defraud him of his money or property." *Priority Int'l Animal Concepts, Inc. v. Bryk*, No. 12-C-0150, 2012 WL 6020044, at *4 (E.D. Wis. Dec. 3, 2012) (*citing Villano, Inc. v. CBS, Inc.,* 176 F.R.D. 130, 131 (S.D.N.Y. 1997)).  Here, AB appears to contend that MillerCoors must prove every element of its claim with the particularity described in Rule 9(b), regardless of whether the element involves "the circumstances constituting fraud."  It is unsurprising that AB has not cited a single case holding that such a standard should apply here.

### C.  MillerCoors Has Alleged Facts Showing Injury.

AB faults the MillerCoors Complaint for not including "examples" or "data" showing that MillerCoors is suffering injury from AB's advertisements.  As already explained, such evidentiary proofs are not required at the pleadings stage.  MillerCoors burden is simply to allege facts that, taken as true, render it plausible that AB's advertisements damage MillerCoors reputation or sales.  By way of illustration, one court in this circuit held that a Lanham Act claimant adequately pleaded injury by alleging that it would be "injured by way of lost sales and lost opportunities, among other things[,]" and that the defendant's statements had harmed the plaintiff's "reputation and goodwill."  *See Logan Graphic Prods., Inc. v. Textus USA, Inc.*, No. 02 C 1823, 2002 WL 31507174, at *4 (N.D. Ill. Nov. 8, 2002).  The MillerCoors Complaint goes well beyond that.  Specifically, MillerCoors provided screenshots of real-world reactions to AB's

Campaign.  Compl. ¶¶ 92-93.  These reactions included consumers associating *Miller Lite, Coors Light,* and corn syrup (including HFCS) with "poison," stating that they would purchase shirts with "I Hate Corn Syrup," and swearing off MillerCoors products: "I won't drink your beer anymore if you [use HFCS]."  *Id.*  These are classic examples of cognizable injury to brand reputation and goodwill.

AB is simply wrong, moreover, to say that the Complaint "contains no facts supporting th[e] conclusion" that MillerCoors has been and continues to be damaged by AB's false advertisements.  MTD at 10.  As mentioned above, the Complaint includes: (1) screenshots of consumers disparaging *Miller Lite* and *Coors Light* because of AB's advertisements (Compl. ¶¶ 92-93); and (2) statements by one of AB's own executives explaining how and why *Miller Lite* and *Coors Light* would be harmed by advertisements associating them with corn syrup (Compl. ¶¶ 3-5).

III.  **MillerCoors Has Pled All the Elements Necessary to Support Its Allegation of Trademark Dilution, and it is Inappropriate to Address AB's Affirmative Defenses at the Motion to Dismiss Stage.**

A.  **An Affirmative Defense is Not a Valid Ground for Dismissal; MillerCoors Need Not Plead Facts *Disproving* the Fair Use Defense.**

AB argues fair use to defend its use of MillerCoors famous marks in the Campaign. It says that the elements of the nominative fair use defense are "clear from the face of the Complaint" and that the MillerCoors dilution claim should therefore be dismissed.  MTD at 12. But, AB's nominative fair use defense is both inapplicable here, and in any event, insufficient to support a motion to dismiss.

As a preliminary matter, the Court need not consider the merits of AB's fair use defense because it would be inappropriate to decide the issue of fair use, an affirmative defense, at the

DCACTIVE 49797672 v.2

motion to dismiss stage.  "Complaints need not anticipate defenses and attempt to defeat them."
*Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012).

Many of the cases AB cites in its motion also support this proposition.  *See, e.g.*, *Slep-Tone Entm't Corp. v. Coyne*, 41 F. Supp. 3d 707, 717–18 (N.D. Ill. 2014) (nominative fair use "defense would fail at the Rule 12(b)(6) stage even if it existed" because "[s]ettled precedent holds that 'complaints need not allege facts that tend to defeat affirmative defenses.'") (citations omitted); *see also Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) (finding a motion to dismiss on the ground of an affirmative defense is improper because "the existence of a defense does not undercut the adequacy of [a] claim"); *Slep-Tone Entm't Corp. v. Elwood Enters., Inc.*, No. 13 C 7346, 2014 WL 1612891, at *5 (N.D. Ill. Apr. 21, 2014) (finding that defendant "cannot prevail" on the nominative fair use defense because "it is inappropriate for consideration in a Rule 12(b)(6) motion"); *Americash Loans, LLC v. AO Ventures, LLC*, No. 08 C 5147, 2009 WL 743010, at *4 (N.D. Ill. Mar. 19, 2009) ("premature" to address the nominative fair use defense on a motion to dismiss); *Conrad v. AM Cmty. Credit Union*, No. 13-cv-461-bbc, 2013 WL 4052606, at *4 (W.D. Wis. Aug. 12, 2013) , *aff'd*, 750 F.3d 634 (7th Cir. 2014) ("because a determination of fair use is fact-intensive and contingent on many different factors, it would be premature to apply" on a motion to dismiss a copyright infringement claim); *see also Doctor's Data, Inc. v. Barrett*, No. 10 C 03795, 2011 WL 5903508, at **7-8 (N.D. Ill. Nov. 22, 2011) (denying motion to dismiss "scarce" allegations of dilution because "[a]t this stage, [plaintiff's] allegations are sufficient to put [defendant] on notice of [plaintiff's] claim of dilution.  Whether [plaintiff] can *prove* actual dilution must be the subject of further litigation beyond the motion-to-dismiss stage.") (emphasis in original).

11

AB cites scores of other cases in support of its nominative fair use defense. However, nearly all of those cases were decided at summary judgment or post-trial, when courts may properly consider the facts underlying nominative fair use arguments. *See*, *Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 379 (S.D.N.Y. 2008); *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 489-90 (5th Cir. 2004); *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532-33 (5th Cir. 2012); *Frontrange Sols. USA, Inc. v. Newroad Software, Inc.*, 505 F. Supp. 2d 821, 834-35 (D. Colo. 2007); *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 806 (9th Cir. 2002); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 809-12 (9th Cir. 2003); *Rogers v. Grimaldi*, 875 F.2d 994, 1000 (2d Cir. 1989); *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1098 (9th Cir. 2008); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 899 (9th Cir. 2002); *Caterpillar Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913, 922 (C.D. Ill. 2003). None of these cases supports AB's argument that nominative fair use arguments are appropriately addressed at the motion-to-dismiss stage.

Nevertheless, should the Court look to the merits of AB's defense (as explained above, it need not and should not at this stage), it will find the defense lacking. AB's use of MillerCoors marks does not constitute fair use—rather, it constitutes denigrating commercial use actionable under the Lanham Act. As just one example, AB's Campaign has disparaged MillerCoors products as cheap and inferior compared to AB's products. Compl. ¶¶ 72-74. This is not the sort of "fair use" that is protected from false advertising claims. *G.D. Searle & Co v. Hudson Pharmaceutical Corp.*, 715 F.2d 37, 841 (3d Cir. 1983) ("The use of a competitor's trademark for purposes of comparative advertising is not trademark infringement '***so long as*** it does not contain misrepresentations. . .'")(quoting *SSP Agricultural, Etc. v. Orchard-Rite Ltd.*, 592 F.2d 1096, 1103 (9th Cir. 1979)(emphasis added).

**B. MillerCoors has Properly Pled All Elements for Dilution, and AB's Contentions to the Contrary Lack Merit.**

AB's motion to dismiss must further be denied because MillerCoors has properly pled the

elements for trademark dilution.  Section 43(c)(1) of the Lanham Act provides:

> [1] Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, [2] at any time after the owner's mark has become famous, [3] commences use of a mark or trade name in commerce that [4] is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1).  The Act further defines "dilution by tarnishment" as "association arising

from the similarity between a mark or trade name and a famous mark that harms the reputation

of the famous mark."  15 U.S.C. § 1125(c)(2)(C).

MillerCoors has adequately pleaded that its *Coors Light* and *Miller Lite* trademarks are

famous (Compl. ¶¶ 24-32; 111).  AB does not contest this.  MillerCoors has also pleaded that AB

began using MillerCoors famous trademarks *after* they became famous (Compl., *ibid.*).  AB does

not contest this, either.  AB contests only the adequacy of the pleading of the last two elements

of MillerCoors' dilution claim.  MTD at 16–20.

AB argues that MillerCoors does not adequately plead the third element of a dilution

claim because MillerCoors dilution claim does not refer to a "second mark," is just a

"repackaged version" of its false advertising claim, and is therefore a "poor fit" for AB's false

advertising misconduct.  MTD at 17-20.  These arguments are misguided and premature.

Pleadings of false advertising and trademark dilution often go hand-in-hand, and can be properly

pled, even in the absence of a "second mark."  *See, e.g.*, *Ansel Adams Publ'g Rights Tr. v. PRS

Media Partners, LLC*, No. C 10-03740 JSW, 2010 WL 4974114, at *3 (N.D. Cal. Dec. 1, 2010)

13

(denying motion to dismiss false advertising and dilution claims where defendant was alleged to be using plaintiff's mark, not a "second mark," to falsely advertise); *Doctor's Data, Inc.*, 2011 WL 5903508, at **7-8 (denying motion to dismiss dilution claim where plaintiff alleged that defendant was damaging plaintiff's name and business, and misrepresenting the nature of plaintiff's services to the public, through false advertisements, without any reference to a "second mark").

Finally, AB argues that the MillerCoors pleadings do not satisfy the fourth element of a dilution claim, "dilution by blurring or dilution by tarnishment of the famous mark." MTD at 19. Again, MillerCoors has sufficiently pled facts showing that AB's actions give rise to a likelihood of dilution. Specifically, MillerCoors provided real-world reactions to AB's Campaign showing consumers now mistakenly believe that MillerCoors products actually contain corn syrup and are thus inferior or even unhealthy. Compl. ¶¶ 92-93. This is quintessential evidence of dilution by blurring or tarnishment.

### i. AB's Bad Faith Use of the MillerCoors Marks Constitutes Use in Commerce that Cannot Hide Behind the Curtain of Fair Use.

AB argues that its Campaign cannot constitute dilution because it is fair use, not use in commerce. This argument fails for reasons similar to those explained in the false advertising context. The nature and scope of AB's use of the MillerCoors marks as alleged in the Complaint are extraordinary. This is far from a standard comparative advertising case. In fact, the combination of bad faith use[3] and misrepresentation by AB provides a plausible basis that the primary purpose of the Campaign was to falsely associate the *Miller Lite* and *Coors Light* marks with inferior and unwholesome characteristics in order to tarnish the products. These allegations satisfy MillerCoors use in commerce pleading requirements.

---

[3] AB knew and intended to mislead consumers and frighten them about *Miller Lite* and *Coors Light* in order to switch them away from those brands in favor of *Bud Light*. Compl. ¶¶ 3-6.

14

1.  <u>AB's Bad Faith Use of MillerCoors Famous Marks.</u>

AB's fair use defense must fail because it has not used the MillerCoors marks in good faith and has used more of the marks than necessary to make its putative comparison.  Good faith is a necessary staple of any fair use of a trademark, whether in the context of infringement or dilution.  *See Sorensen v. WD-40 Co.*, 792 F.3d 712, 723 (7th Cir. 2015) (to make out any fair use defense, a defendant must establish that it used the plaintiff's trademark in good faith); *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 169-70 (4th Cir. 2012) (vacating summary judgment for defendant because of the trial court's failure to address whether the fair use was made in good faith); *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 66-68 (2d Cir. 2000) (reversing summary judgment because trial court failed to properly analyze good faith requirement of fair use defense); *E.S.S. Entm't 2000, Inc.*, 547 F.3d at 1099 (affirming summary judgment, rejecting nominative fair use defense because defendant's "goal" was "not to comment on [Plaintiff's product] *per se*.").  This is because bad faith use of a competitor's mark is often designed to cause consumer confusion, which contravenes a core tenet of trademark law.  *See EMI Catalogue P'ship*, 228 F.3d at 67 ("good faith inquiry in a fair use analysis necessarily concerns the question whether the user of a mark intended to create consumer confusion"); *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1037-38 (9th Cir. 2007) ("[e]ligibility for a fair use defense based on "comparative commercial advertising" is conditioned on the challenged use being fair;" thus making defense unavailable where the defendant's use of plaintiff's identical mark intentionally sought to sow confusion and "appropriate the cachet of [plaintiff's] trademark[.]").

Courts therefore reject the fair use defense in dilution cases where the defendant did not use the plaintiff's mark merely to identify or describe the plaintiff's product and did not do so in good faith.  *World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831, 846 (N.D. Ill.

2002) (rejecting fair use defense because the defendant's use exceeded that required to provide consumers with a good faith description); *Galvotec Alloys, Inc. v. Gaus Anodes Int'l, LLC*, No. 7:13-CV-664, 2014 WL 6805458, at **12-13 (S.D. Tex. Dec. 2, 2014) (rejecting fair use defense where defendant claimed it used the plaintiff's mark "to identify [plaintiff] and distinguish it from Defendant" but defendant's use was misleading, was not done "fairly and in good faith ... nor was it done for the purpose of comparing the parties' goods or services"); *PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1280 (M.D. Fla. 2015) ("[T]here was sufficient evidence supporting the jury's finding that U–Haul's use of 'pods' was not in good faith, defeating U–Haul's fair use defense.").

Here, AB's lack of good faith identification of MillerCoors products is "clear from the face of the Complaint."  The Complaint alleges that AB used MillerCoors marks to misleadingly describe the MillerCoors products as inferior, cheaper, and unhealthy in order to tarnish MillerCoors marks.  *See, e.g.,* Compl. ¶¶ 41, 95.  AB's ads thus do not, and were not designed, merely to "identify the [MillerCoors] product" as alleged by AB. MTD at 13-14.  The allegations of the Complaint, taken as true, show that AB's use of MillerCoors famous marks was in bad faith and illegal, not a reasonably necessary good faith identification.

Moreover, AB's use of the *Miller Lite* and *Coors Light* marks is neither nominative, nor genuinely comparative.  For example, AB's advertisement including only the *Miller Lite* can placed next to a bottle of Karo Lite Corn Syrup with the title "The 'Lite' Family Portrait" (Compl. ¶83) does not include AB marks or make any express comparison.  This association is made to denigrate the MillerCoors marks in consumers' minds through affiliation with corn syrup sweeteners.  Having created the misperception that MillerCoors products are inferior and unhealthy, AB uses the tarnished MillerCoors marks to promote AB's *Bud Light* product as

16

better and more genuine -- a higher quality alternative beer as compared to the MillerCoors corn syrup-tainted products. Such commercial use is far from fair, and it is certainly not in good faith.

### 2. AB's Use of MillerCoors Famous Marks is Untruthful and Done Solely to Make Denigrating Misrepresentations.

Complementary to the requirement that a dilution defendant use plaintiff's famous marks in good faith is the requirement that defendant's use must also be truthful and designed to clearly communicate relevant facts to consumers, not mislead. That is why *truthful* comparative advertising is not generally actionable for dilution under the Lanham Act: the use of another's mark in an expressive work will not be actionable under the Lanham Act *unless* it "has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, *unless [it] explicitly misleads as to the* source or *content of the work*." *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989) (emphasis added); *see also Toni & Guy (USA) Ltd. v. Nature's Therapy, Inc.*, No. 03 CV 2420 (RMB), 2006 WL 1153354, at *13 (S.D.N.Y. May 1, 2006) (declining to find dilution where defendant's use "allow[ed] consumers to compare the *relative merits* of competing products.") (emphasis added).[4] Here, and as MillerCoors has properly pled, AB has used the MillerCoors famous marks for the singular purpose of tarnishing them with false and deceptive attributes, using them in connection with a product that does not exist: *Miller Lite* and *Coors Light* beers that contain corn syrup. Compl. ¶¶ 39–98.

Moreover, by using the MillerCoors famous marks in this manner, AB ascribes relevance to corn syrup in *Miller Lite* and *Coors Light* that does not exist. Such an ascription is in and of itself misleading and denigrating by misrepresentation. *Cf. E.S.S. Entm't 2000, Inc.*, 547 F.3d at

---

[4]Although the Seventh Circuit in *Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, 707 F.3d 869, 871 (7th Cir. 2013), declined to decide whether to follow the *Rogers* test, it has decided that this is not an issue for the motion to dismiss stage. *See Sullivan v. Bickler*, 360 F. Supp. 3d 778, 786 (N.D. Ill. 2019) (noting that the Seventh Circuit has yet to adopt the *Rogers* test, and denying motion to dismiss trademark infringement claim because defendant's First Amendment argument "depend[ed] largely upon factual questions that are not properly resolved at the pleading phase").

DCACTIVE 49797672 v.2

1099 (applying *Rogers*); *compare Architectural Mailboxes, LLC v. Epoch Design, LLC*, No. 10CV974 DMS CAB, 2011 WL 1630809, at **4-5 (S.D. Cal. Apr. 28, 2011) (permitting false advertising claims to proceed, but dismissing dilution claims because the underlying false advertising related to *relevant, essential attributes of the products* in dispute: whether the plaintiff's locking mailbox was as secure and safe as defendant's product) (emphasis added).

And, even where courts have declined to find dilution in the comparative advertising context, they have noted that their decisions rest on defendant's *truthful* use of plaintiff's mark. *See, e.g.*, *Bijur Lubricating Corp. v. Devco Corp.*, 332 F. Supp. 2d 722, 732–33 (D.N.J. 2004) ("A commercial rival is permitted to use the original manufacturer's name *truthfully* to describe a replacement part.") (emphasis added); *Smith v. Chanel, Inc.*, 402 F.2d 562, 569 (9th Cir. 1968) (declining to find dilution because "both authority and reason require a holding that *in the absence of misrepresentation* or confusion as to source or sponsorship a seller in promoting his own goods may use the trademark of another to identify the latter's goods.") (emphasis added); *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992) (declining to find dilution where "The New Kids do *not claim there was anything false or misleading* about the newspapers' use of their mark.") (emphasis added) (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) (Holmes, J.) ("When the mark is used in a way *that does not deceive the public* we see no such sanctity in the word as to prevent its being used to tell the truth.")) (emphasis added).

AB's use of the MillerCoors famous marks in this case is not truthful. As alleged in the Complaint — the allegations of which must be accepted as true at this stage of the litigation — the aim of AB's advertising campaign is to tarnish the *Miller Lite* and *Coors Light* marks by causing consumers to associate them with beers that contain corn syrup. Compl. ¶¶ 39-98. That

18

is not the type of truthful descriptive use that has historically been treated as protected from dilution claims.

### 3. AB's Advertisements do not Use MillerCoors Marks to Describe MillerCoors Products.

AB claims that it uses the mark *only* to identify MillerCoors products, and that there is no "second mark" used to "creat[e] a negative association."  MTD at 17.  But, as discussed above, AB does much more when it uses MillerCoors famous marks.  The crux of MillerCoors dilution claim is that AB's advertisements are *not* describing MillerCoors products; they are describing an entirely different set of products (beer with corn syrup) and attaching MillerCoors famous marks to those products.  Such use of a mark — tying it to products that are demonstrably different from and inferior to the plaintiff's products — is the essence of dilution through tarnishment.  *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996) ("The *sine qua non* of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use.").  Through its high-profile Campaign, AB "create[s] an improper association between [MillerCoors famous marks] and a new product"—that "new product" being the purposefully false, misleading beer product that contains corn syrup.  *See Horphag*, 475 F.3d at 1037-38; *see also Delta Air Lines, Inc. v. Influence Direct, LLC*, Nos. 3-14-0926, 3-14-1112, 2016 WL 310068 (M.D. Tenn. Jan. 15, 2016).

AB relies on two cases to claim that MillerCoors dilution claim must fail due to its failure to identify a "second mark."  First, the purported requirement of a "second mark" is overstated: no such requirement exists under the Lanham Act.  In *MJC Am., Ltd. v. Gree Elec. Appliances, Inc. of Zhuhai*, the court rejected defendant's argument that the lack of "any second mark or product at issue to blur with or to tarnish the Soleus Air [M]ark" was fatal to plaintiff's claim.  No. CV 13-04264 SJO (CWx), 2015 WL 12777382, at **6–7 (C.D. Cal. Feb. 2, 2015).  The

court there noted that "MJC need not allege the use of a second mark to make out its dilution claim" because "the 'use of the mark element' required to make out a claim under the trademark dilution statute 'demonstrates that a trademark dilution claim does not depend on use of a junior mark.'"  *Id.* (citation omitted); *see also Ansel Adams Publ'g Rights Tr.*, 2010 WL 4974114, at *3 (declining to require the use of a "second mark," finding allegation of defendant's use of plaintiff's identical mark to be sufficient).

Second, the cases that AB cites for this proposition found fair use under different circumstances.  In *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, the court reversed a grant of a preliminary injunction, making no mention of the absence of a "second mark," but instead holding that defendant "did not use [plaintiff's] trademarks by causing separate, branded pop-up ads to appear on computer screens above," and therefore had not used the mark in commerce under the Lanham Act.  414 F.3d 400, 400, 410 (2d Cir. 2005) ("the WhenU pop-up ads appear in a separate window that is prominently branded with the WhenU mark; they have absolutely no tangible effect on the appearance or functionality of the 1–800 website.").  The court likened defendant's website's deployment of a competitor's pop-ad when a consumer was viewing plaintiff's website to routine "product placement:"

> For example, a drug store typically places its own store-brand generic products next to the trademarked products they emulate in order to induce a customer who has specifically sought out the trademarked product to consider the store's less-expensive alternative. [Defendant] employs this same marketing strategy by informing [consumers] who have sought out a specific trademarked product [here, plaintiff's] about available coupons, discounts, or alternative products that may be of interest to them.

*Id.* at 410–11.  In stark contrast, and despite AB's cries of transparency to the contrary (*see* ECF 39 at 1), AB is not using MillerCoors trademarks to simply identify a competing product.  It is using the marks to identify a false product: MillerCoors beer that contains corn syrup.  As

20

MillerCoors has pled, no such product exists (Compl. p. 2), and therefore AB's use of MillerCoors marks in this fashion is neither truthful nor exempted from action under the Lanham Act.

AB also relies on *Tiffany (NJ) Inc. v. eBay Inc.*, seeking the same treatment as eBay, which the court found had not diluted Tiffany's famous TIFFANY mark. 600 F.3d 93, 112 (2d Cir. 2010). But AB's actions here are far different from those of eBay. The court there found that eBay used the TIFFANY mark only in connection "with products that individual third party sellers [on eBay's website] ha[d] characterized as Tiffany items." *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 525 (S.D.N.Y. 2008), *aff'd in part, rev'd in part,* 600 F.3d 93 (2d Cir. 2010). Moreover, because Tiffany had complained that eBay was using the TIFFANY mark in connection with counterfeit, inauthentic Tiffany goods, the court also noted that eBay could not be diluting Tiffany' mark because:

> The evidence established that when eBay obtained knowledge of listings offering such items, it removed them. Indeed, having concluded that when eBay has knowledge or a reason to know of infringement on its website, it takes appropriate steps to discontinue supplying its website to the infringer, it would defy logic to nevertheless conclude that eBay is tarnishing Tiffany's mark.

*Id*. The court here applauded eBay's efforts to quell application of the TIFFANY mark to inauthentic, fake Tiffany goods.

AB's actions to date in connection with the Campaign cannot be similarly commended. AB has directly and purposefully used and appended MillerCoors famous trademarks to a false product: beer that contains corn syrup. Compl. ¶¶ 39-79, 83, 89. AB has neither addressed nor mitigated instances of consumer confusion and actual dilution (though MillerCoors recognizes this is not necessary for a successful claim of dilution). *See* Compl. ¶¶ 39-79. This behavior is

21

more akin to defendant's actions in *MJC Am., Ltd.*, where the court found defendant's use of plaintiff's famous trademark in connection with the sale of a product that once existed, but subsequently posed a safety risk and was therefore removed from the market, to be dilutive of the trademark.  2015 WL 12777382, at *6.  The court there denied defendant's request for a judgment on the pleadings with respect to the dilution claim, finding that plaintiff's complaint supported the theory that "[defendant's] unauthorized sale of the Soleus Air products presented a danger that consumers would develop unfavorable associations with the Trademark."  *Id.* at **6–7.  Similarly, AB is using the famous MillerCoors marks on a product that does not exist and creates an unfavorable, distasteful impression in the minds of consumers.

### ii.  *AB's Actions Are Likely to Cause Dilution by Tarnishment.*

MillerCoors has pleaded facts sufficient to show that AB's use of MillerCoors famous marks constitutes dilution by tarnishment.  AB's actions have caused MillerCoors marks to be associated with non-existent beer products that contain corn syrup—a substance commonly found to be unsavory and undesirable to consumers, especially in the context of beverages.  Compl. ¶¶ 3, 5, 6, 12, 36-38.  Such actions create indelible associations in the consumer's mind, all the more pernicious when made with famous, household marks.  As Judge Posner noted in pondering the hypothetical consequence of using the "Tiffany" trademark in connection with a "striptease joint:"

> [C]onsumers will not think the striptease joint under common ownership with the jewelry store. But because of the inveterate tendency of the human mind to proceed by association, every time they think of the word "Tiffany" their image of the fancy jewelry store will be tarnished by the association of the word with the strip joint . . .  "tarnishment" . . . reduces the distinctness of the trademark as a signifier of the trademarked product or service.

*Ty Inc. v. Perryman*, 306 F.3d 509, 511 (7th Cir. 2002).  Similarly here, AB's actions are likely to result in the occurrence that every time a consumer thinks of the marks *Miller Lite* or *Coors Light*, that consumer will think of "corn syrup."

Tarnishment is not confined to use of the mark in connection with sexual activity, obscenity, or illegal activity.  The Second Circuit made that clear in *Hormel Foods Corp. v. Jim Henson Prods., Inc.* when it explained that "tarnishment is not limited to seamy conduct[,]" 73 F.3d at 507, and can result from "a mark's association with an inferior product, not just an offensive product." *Tiffany (NJ) Inc.*, 576 F. Supp. 2d at 525 (*citing Toys R Us, Inc. v. Feinberg*, 26 F. Supp. 2d 639, 644 (S.D.N.Y. 1998)).  To the extent AB implies otherwise, it's simply wrong on the law.  *See Deere & Co v. MTD Products, Inc.*, 41 F.3d 39, 43 (2d Cir. 1994) (a claim of dilution by tarnishment ''arises when the plaintiff's trademark is linked to products of *shoddy quality*, or is portrayed in an *unwholesome or unsavory context* likely to evoke unflattering thoughts about the owner's product.") (emphasis added).

*Hormel* makes clear that the essential condition "of tarnishment is a finding that plaintiff's mark will *suffer negative associations* through defendant's use." 73 F.3d at 507 (emphasis added).  There, the court declined to find a likelihood of dilution of Hormel's famous SPAM trademark because Jim Henson's Muppets' character, "Spa'am," was found by the district court to be "a likeable, positive character, [who] will not generate any negative associations." *Id*. The court held that Jim Henson's application of Hormel's trademark to a likeable puppet that embodied a "parody or humorous depiction of a mark" could not "cause negative associations" with Hormel's mark, especially because "Henson [was] not a direct competitor[.]" *Id*. at 508. The court explained that "Dilution of this sort [by tarnishment] is more likely to be found when the alterations are made by a competitor with both an incentive to diminish the favorable

attributes of the mark and an ample opportunity to promote its products in ways that make no significant alteration." *Id.* at 507-08 (citation omitted). And it is this contrasted circumstance that AB finds itself in: as a direct competitor to MillerCoors, it uses the famous MillerCoors trademarks in connection with a false beer product that contains corn syrup. AB's use "diminish[es] the favorable attributes" of marks that until now have signified great taste, value, and quality.

AB's alleged actions are more akin to those of defendant Excell in *Coty Inc. v. Excell Brands, LLC*. There, the court found that defendant had tarnished plaintiff's marks by using plaintiff's famous marks in connection with "inferior oils, employ[ing] cheaper packaging components, lack[ing] any quality assurance program, and produce[ing] fragrances with potentially harmful ingredients[.]" 277 F. Supp. 3d 425, 460-61 (S.D.N.Y. 2017). As discussed *supra* and alleged in MillerCoors Complaint (Compl. ¶¶ 36-38), consumers' negative associations with corn syrup, particularly in beverages, is well-known and widespread. AB intentionally fabricated a boogeyman product to scare consumers away from the signature MillerCoors products, *Miller Lite* and *Coors Light*, thereby also diluting the famous marks of the same name. *Cf. Smith v. Chanel, Inc.*, 402 F.2d 562, 566, 568 (9th Cir. 1968) (blessing competitor's ability to use plaintiff's famous trademark to "advis[e] consumers of the *equivalence* and . . . of *knowledge that an identical product* [] being offered at one third the price," but noting that "if [defendants] really claim less than exact duplication of the qualities inherent in the product itself, it would have been appropriate to require some clarification of the language of their advertisement.").

## IV.   Conclusion

For all the foregoing reasons, MillerCoors respectfully requests that the Court deny AB's Motion to Dismiss. AB's deceptive advertising Campaign is leading consumers to the mistaken

belief that *Miller Lite* and *Coors Light* beers contain corn syrup or HFCS.  MillerCoors has

appropriately alleged false advertising and trademark dilution of the famous *Miller Lite* and

*Coors Light* marks.

Respectfully submitted this 9th day of May, 2019.

*/s/ Donald Schott*

Donald Schott
don.schott@quarles.com
Anita Marie Boor
anita.boor@quarles.com
QUARLES & BRADY, LLP
33 East Main Street, Suite 900
Madison, WI 53703
(608) 283-2452

Christopher A. Cole
ccole@crowell.com
David Ervin
dervin@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
(202) 624-2701

Holly Melton
hmelton@crowell.com
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
(212) 895-4258

*Attorneys for Plaintiff*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2019 I caused a copy of the foregoing document to be served via ECF on counsel for Defendant Anheuser-Busch Companies, LLC.


<u>*/s/ Donald Schott*</u>
Donald Schott

DCACTIVE 49797672 v.2