IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MILLERCOORS, LLC,

                                Plaintiff,                      OPINION AND ORDER

     v.                                                      19-cv-218-wmc

ANHEUSER-BUSCH COMPANIES, LLC,

                                Defendant.

During Super Bowl LIII, defendant Anheuser-Busch Companies, LLC, launched an advertising campaign highlighting plaintiff MillerCoors, LLC's use of corn syrup in brewing Miller Lite and Coors Light, as compared to Anheuser-Busch's use of rice in its flagship light beer, Bud Light.  This lawsuit followed, with MillerCoors asserting a claim of false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

Before the court is plaintiff's motion for preliminary injunction.  (Dkt. #8.)[1]  In keeping with the court's comments during oral argument on that motion on May 16, 2019,

---

[1] Also before the court is defendant's motion to dismiss plaintiff's complaint (dkt. #47), which strikes the court as a shot across the bow in response to plaintiff's motion for preliminary injunction. For the same reasons the court has granted a preliminary injunction based on the likelihood of plaintiff succeeding on some aspects of its Lanham Act false advertising claims, the court will deny that portion of the motion.  As for defendant's argument to dismiss plaintiff's trademark dilution claim under 15 U.S.C. § 1125(c), defendant primarily relies on the doctrine of fair use, § 1125(c)(3)(A), for which it bears the burden of proof.  *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 168-69 (4th Cir. 2012) ("[O]nce the owner of a famous mark establishes a prima facie case of dilution by blurring or tarnishment, it falls to the defendant to demonstrate that its use constituted a 'fair use ... other than as a designation of source for the [defendant's] own goods or services,' 15 U.S.C. § 1125(c)(3)(A)."); *see also Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 466 (7th Cir. 2000) (setting forth elements of trademark dilution claim, none of which implicate negating or disproving fair use).  Accordingly, the court agrees with plaintiff that it had no obligation to anticipate defendant's reliance on this doctrine in its complaint.  Regardless, defendant will have an opportunity to press this ground at summary judgment, or even to press for dismissal of the dilution claim sooner under Rules 11 and 12(d) if there truly is no good faith basis to assert that claim over a fair use defense.  Therefore, the court will deny defendant's motion to dismiss.

and for the reasons more fully explained below, the court will grant plaintiff a preliminary injunction, though more narrow in scope than that sought by plaintiff, enjoining defendant's use of the following statements: (1) Bud Light contains "100% less corn syrup"; (2) Bud Light in direct reference to "no corn syrup" without any reference to "brewed with," "made with" or "uses"; (3) Miller Lite and/or Coors Light and "corn syrup" without including any reference to "brewed with," "made with" or "uses"; and (4) describing "corn syrup" as an ingredient "in" the finished product.[2]

## UNDISPUTED FACTS[3]

### A. Relevant Light Beer Market

Miller Brewing Company was founded in 1855, and Coors Brewing Company was founded in 1873. Plaintiff MillerCoors, LLC was formed in 2008 as a U.S. joint venture between the owners of the Miller Brewing Company and the Coors Brewing Company. Miller Lite and Coors Light were both introduced to U.S. consumers in the 1970s. Defendant Anheuser-Busch Companies, LLC is a multinational beverage company that sells numerous products, including Bud Light beer. Currently, Bud Light has the largest market share of the U.S. market for light beers, while Miller Lite and Coors Light have the second and third-highest share of the U.S. market for light beer, respectively.

---

[2] While these are the express prohibitions, the court is confident that Anheuser-Busch's counsel also understands the "spirit" of these prohibitions in light of the exchanges at oral argument. Accordingly, the court would strongly encourage advance clearance before adopting any phrase or creative license in an attempt to maneuver around the prohibitions.

[3] Unless otherwise noted, the following facts are undisputed and material for purposes of plaintiff's motion for preliminary injunction.

MillerCoors market research reveals that the key reasons people buy Miller Lite and Coors Light are because the beers are (1) authentic, (2) a good value, (3) of high quality, and (4) refreshing.   Plaintiff represents that its annual investment in advertising and promoting these two products in the United States has exceeded hundreds of millions of dollars per year, for the past ten years.[4]   In a recent comparative advertising campaign, MillerCoors highlighted the difference in calories and carbohydrates between Miller Lite and Bud Light as depicted below:



(Harrison Decl., Ex. 20 (dkt. #40-22).)

## B. Beer Brewing Process and Ingredients

The first step in brewing beer is to create a nutrient substrate, called "wort," that yeast needs for fermentation.   The sugars in the wort are sourced from malt, or from a combination of malt and starchy grains like corn or rice.   Plaintiff asserts that the sugar source is selected based on the style and taste characteristics, which defendant does not

---

[4] While defendant technically disputes these facts for lack of sufficient knowledge or information about plaintiff's internal market research and advertising budget, it offers no reason to suspect that they are incorrect, at least for purposes of the current motion.

dispute, although pointing out that cost may also be a factor.  Defendant further represents that corn syrup is less expensive than rice.

In its brewing process for Miller Lite and Coors Light beers, plaintiff contends that it uses "corn syrup, rather than another source of sugar, to aid fermentation because it does not mask or change the barley and hops flavors and aromas distinctive to Miller Lite and Coors Light beers."  (Pl.'s PFOFs (dkt. #10) ¶ 14.)  Defendant contends that plaintiff has also "publicly, attributed the taste of its beers, in part, to corn syrup, stating that 'corn syrup gives beer a milder and lighter-bodied flavor.'"  (Def.'s Resp. to Pl.'s PFOFs (dkt. #30) ¶ 14 (quoting Goeler Decl. (dkt. #31) ¶ 24)).)  There is no meaningful difference between using rice or corn syrup as an ingredient in terms of health or safety of the resulting beer product.

The yeast's natural fermentation process converts the corn syrup sugars into ethanol, flavors, aromas, carbon dioxide, heat and a next generation of yeast cells, leaving a small amount of residual sugars.  Plaintiff represents -- and defendant disputes only on the basis that it lacks information and knowledge -- that "[n]o corn syrup appears in the Coors Light and Miller Lite products at the end of the fermentation."  (Pl.'s PFOFs (dkt. #10) ¶ 18 (citing White Decl. (dkt. #12) ¶ 5(d)).)  Moreover, MillerCoors does not add corn syrup or any other sweetener (including high-fructose corn syrup) to the finished Coors Light or Miller Lite products.

While defendant Anheuser-Busch uses corn syrup as an ingredient in fermentations

of many of its other products,[5] Bud Light uses rice as its sugar source.  Presumably, no rice

or any other sweetener appears in Bud Light at the end of the fermentation process either.

### C.  Super Bowl Commercials and Subsequent Advertisements

On February 3, 2019, during the television broadcast of Super Bowl LIII, Anheuser-

Busch launched a nationwide advertising campaigning featuring claims that Miller Lite and

Coors Light are "made with" or "brewed with" corn syrup.  A 60-second commercial, titled

"Special Delivery," first ran during the Super Bowl and has continued to run both in a full-

length version, as well as shorter 15-second and 30-second "cut down" versions.  (Reis

Decl., Ex. 4 (dkt. #14-4).)

While defendant purports to dispute any description or paraphrasing of the "Special

Delivery" advertisement, the commercial contains the following scenes in order:

- The Bud Light King, the Bud Light Knight and a wizard discuss how Bud Light is brewed, with four barrels behind them labeled, "Water," "Rice," "Hops," and "Barley.

- One of the Bud Light King's knights then enters with a large barrel labeled "Corn Syrup" and announces, " My King, this corn syrup was just delivered."

- The Bud Light King responds, "that's not ours.  We don't brew Bud Light with corn syrup."  The knight responds, "Miller Lite uses corn syrup," to which the King respond, "Let us take it to them at once."

- The party then embarks on an arduous journey to deliver the barrel of corn syrup to the Miller Lite Castle.

- Once the Bud Light party arrives at the Miller Lite Castle, the Bud Light King announces, "Oh brewers of Miller Lite, we received your corn syrup by mistake."  The Miller Lite King, with a supply of Miller Lite at his side, responds, "That's not our corn syrup.  We received our shipment this

---

[5] For example, Bud Ice, Natural Light, Natural Ice, Busch Light, Rolling Rock, Stella Artois Cidre, Stella Artois Spritzer and Bon & Viv Sparking White are brewed with corn syrup.

morning . . . . Try the Coors Light Castle.  They also use corn syrup."

- The party then embarks on another arduous journey to deliver the barrel to the Coors Light Castle.

- Upon arrival, the Bud Light King again announces, "Oh brewers of Coors Light, is this corn syrup yours?"  The Coors Light King answers, "Well, well, well.  Looks like the corn syrup has come home to be brewed.  To be clear, we brew Coors Light with corn syrup."

- The commercial closes with the written statement and voice over, "Bud Light, Brewed with no Corn Syrup."

(Reis Decl., Ex. 4 (dkt. #14-4); Harrison Decl., Ex. 32 (dkt. #40-32) (transcript).)  Since the Superbowl, the "Special Delivery" commercial in its 30-second and 60-second versions has aired over 900 times on over 20 channels.  (Pl.'s PFOFs (dkt. #10) ¶ 34; Def.'s Resp. to Pl.'s PFOFs (dkt. #30) ¶ 34.)

During the Super Bowl, Anheuser-Busch also aired two 15-second commercials, "Medieval Barbers"[6] and "Trojan Horse Occupants."  (Reis Decl., Exs. 5, 6 (dkt. ##14-5, 14-6); Harrison Decl., Exs. 33, 34 (dkt. ##40-33, 40-34) (transcripts).)  Collectively, these commercials, like Special Delivery, also state that Miller Lite and Coors Light are "made with corn syrup."  Since the Super Bowl, these ads have aired 257 and 566 times, respectively.

This year's Super Bowl advertising commanded between $5.1 and $5.3 million per 30 seconds of media placement, not including production costs.  The "Special Delivery" ad, in particular, "quickly became one of the night's most talked about . . . with some observers hailing it as an advertising touchdown."  (Reis Decl. (dkt. #14) ¶ 24.)

---

[6] Plaintiff refers to this commercial as "Shop Talk."

Since the Super Bowl, Anheuser-Busch has run other, related commercials as part of its campaign, including a 15-second "Bud Light Cave Explorers" commercials.  (Reis Decl., Ex. 10 (dkt. #14-10); Harrison Decl., Ex. 35 (dkt. #40-35) (transcript).)  Again, defendant disputes any attempt to paraphrase the commercial, but the commercial contains the following scenes in order:

- Two medieval characters enter a cave bearing torches.

- One character reads out-loud what is written on the inside over the cave, "Coors Light is made with barley, water, hop extract and corn syrup."

- The other character reads out-loud another writing, "Bud Light is made with barley, rice, water, hops and no corn syrup."

- The first character responds, "Good to know."

- The commercial closes with the same written statement as in Special Delivery, "Bud Light, Brewed with no Corn Syrup."

(*Id.*)

Anheuser-Busch also ran a 30-second commercial titled "Bud Light Mountain Folk." (Reis Decl., Ex. 1 (dkt. #14-11); Harrison Decl., Ex. 35 (dkt. #40-36) (transcript).)  While defendant objects to plaintiff's attempt to summarize the commercial, there is no dispute that it contains the following scenes:

- Medieval characters yell at each other from mountaintops.

- The first character yells, "Coors Light is made with barley, water, hop extract, and corn syrup."

- Another character then yells, "Miller Lite is made with barley, water, hops, hop extract, and corn syrup."

- A third character, then yells, "Bud Light is made with barley, rice, water, hops and no corn syrup."

- After yelling good-byes, the commercial closes with the written statement as

in the other commercials, "Bud Light, Brewed with no Corn Syrup."
(*Id.*)

In addition to these television commercials, Anheuser-Busch has also launched print-media and billboard campaigns, including three sequential billboards which read:

1. Bud Light 100% less corn syrup than Coors Light.

2. and . . . wait for it . . .

3. 100% less corn syrup than Miller Lite.

(Reis Decl., Ex. 20 (dkt. #14-20).)

Anheuser-Busch has also used its Twitter account to further this campaign.  Three days after the Super Bowl, Anheuser-Busch's Twitter account displayed the following image:



(Reis Decl., Ex. 2 (dkt. #14-2).)   A few weeks later, Anheuser-Busch Natural Light's Twitter account contained the following image, displaying a Miller Lite can next to a Karo corn syrup bottle as if in a family portrait:



(Reis Decl., Ex. 18 (dkt. #14-18).)

At the end of February, Anheuser-Busch ran two new commercials during the Oscars' broadcast.   The first commercial ran 15 seconds and is titled, "Thespians."   It features two female actors exchanging the respective ingredients of Miller Lite and Bud Light.  (Reis Dec., Ex 12 (dkt. #14-12); Harrison Decl., Ex. 37 (dkt. #40-37) (transcript).) Recognizing the same objection by defendant, the commercial contains the following scenes:

- The first medieval actress enters the stage holding a bottle of Miller Lite and says, "Miller Lite is made with barley, water, hops, hop extract, and corn syrup."

- The second actress enters the stage holding a bottle of Bud Light and says, "Bud Light is made with barley, rice, water, hops, and no corn syrup."

- The audience applauds and otherwise reacts enthusiastically.

- The commercial closes with the same written statement as in the other commercials, "Bud Light, Brewed with no Corn Syrup."

(*Id.*)  The second commercial contains the same two actresses, in a 24-second mock film preview.  (Reis Decl., Ex. 13 (dkt. #14-13).)  The advertisement contains no spoken words, but displays the following frames:

 

On March 20, 2019, Anheuser-Busch premiered a new commercial with the Bud Light King stating:

> Miller, Miller, Miller.  I've been made aware of your recent advertisement.  I brought you your shipment of corn syrup, and this is how you repay me?
>
> Look if you're this set on imitating our kingdom, may I suggest also imitating us by putting an ingredients label on your packaging.  People want to know what ingredients are in their beer.
>
> But what do I know?  I'm just the king of a kingdom that doesn't brew beer with corn syrup.

(Reis Decl., Ex. 25 (dkt. #14-25); Harrison Decl., Ex. 38 (dkt. #40-38).)  The commercial ends with the same language and voiceover, "Bud Light, Brewed with no Corn Syrup."

In a New York Times article, dated March 21, 2019, Anheuser-Busch's vice

president of communications stated, "We stand behind the Bud Light transparency campaign and have no plans to change the advertising."  (Reis Decl., Ex. 27 (dkt. #14-27).)

### D. Anheuser-Busch's Intent in Launching Campaign

On February 7, 2019, Beer Business Daily reported that according to Andy Goeler, Anheuser-Busch's head of marketing for Bud Light, told its distributors that:

> [Anheuser-Busch] did focus-group the heck out of this [Special Delivery] ad, and found consumers generally don't differentiate between high fructose corn syrup and corn syrup, and that it is a major triggering point in choosing brands to purchase, particularly among women.

(Reis Decl., Ex. 21 (dkt. #14-21).)[7]  In an interview with Food and Wine Magazine, in response to the question, "What is wrong with corn syrup?," Goeler responded:

> People started to react to corn syrup, they started to react to no preservatives, and they started to react to no artificial flavors.  There are things that consumers on their own had perceptions -- for whatever reason -- that there were ingredients they preferred not to consume if they didn't have to.  So it was pretty clear to us what to highlight.  If you look at our packaging, we highlight all three of those.  No corn syrup.  No artificial flavors.  No preservatives.  It was purely driven by consumer desire.

(Reis Decl., Ex. 22 (dkt. #14-22) 3.)  The interviewer then noted that Anheuser-Busch had "decided to focus on corn syrup instead of no preservative or things like that," and asked Goeler why he thought "consumers see corn syrup as something they don't want?"  (*Id.* at

---

[7]  Defendant does not dispute that this accurately quotes the article, but points out that this quotation is not attributed to Goeler directly; rather, the author of the article represents that this is what Goeler purportedly told Anheuser-Busch distributors.

4.)  In response, Goeler explained, "I think it's probably an ingredient some prefer not to consume is the simple answer. . . .  [S]ome consumers -- for their own personal reasons -- have concluded that they prefer not putting something like corn syrup, if they had a choice, into their body."  (*Id.*)

In an interview with the Milwaukee Business Journal, Goeler purportedly indicated that Anheuser-Busch

> will continue to run content focusing on ingredient transparency.  We'll continue to run the current content until it starts to reach a certain level of saturation.  We think it has a ways to go.  Once it reaches that, like we do all the time, we'll start putting new pieces of content in.  That's an ongoing piece of managing the brand.

(Reis Decl., Ex. 26 (dkt. #14-26) 4.)

In a trade publication, Anheuser-Busch's senior director of corporation communications, Josh Gold, in response to a Coors Light promotion to offer free beer anytime Bud Light talks about Coors Light on social or broadcast media, responded:

> Free beer is a good thing.  So is talking about ingredients inside of beer.  We continue to remain focused on transparency because we know that is what consumers are looking for. Knowing what is and isn't in your beer -- whether you paid for it or not -- can only be good for the beer industry overall.

(Reis Decl., Ex. 23 (dkt. #14-23) 5.)

### E.  MillerCoors' Consumer Survey

In support of its motion for preliminary injunction, MillerCoors retained Dr. Yoram Wind, a professor at the University of Pennsylvania Wharton School of Business with expertise in consumer behavior and marketing, to conduct a survey of consumers.  Wind

12

surveyed 2,034 consumers who were shown either a test or control version of the "Mountain Folk" commercial described above. Of the total respondents, 1,016 were randomly assigned to view the test ad, and 1,018 were randomly assigned to view a control ad.[8]

The control ad was the same commercial as the test ad, but with an added, prominent disclaimer: "While corn syrup is used during the brewing of Miller Lite and Coors Light, *there is __NO corn syrup in the Miller Lite and Coors Light you drink__*." (Wind Rept. (dkt. #15) ¶ 15 (emphasis in original).)[9]

According to Wind's analysis, "61 percent of respondents who saw the test stimulus believe that corn syrup is in the Miller Lite and/or Coors Light you drink (3 percent who said 'In Drink' plus 58 percent who said 'Both Brewed with and in Drink'). In contrast, only 26 percent of respondents who saw the control stimulus (3 percent who said 'In Drink' plus 23 percent who said 'Both Brewed with and in Drink') have that belief." (*Id.* ¶ 81.) Wind, further opined, that the difference in perception of 35% of consumers "is both economically and statistically significant." (*Id.* ¶ 8(a).) Wind also concluded based on an analysis of open-ended responses that the phrase "'made with' used in the Bud Light commercial to describe the relationship between Miller Lite and/or Coors Light and corn

---

[8] In response to plaintiff's proposed findings of fact as to the survey, defendant offers a number of criticisms as to the reliability of the survey data, largely based on the report of defendant's own expert, Dr. John R. Hauser, which the court addresses in its opinion below.

[9] Defendant points out that Wind's report also references another disclaimer, which has virtually the same language as the first, though it is not clear from his report which one was actually used in the survey. (Wind Rept. (dkt. #15) ¶ 6 ("While Miller Lite and Coors Light are brewed using corn syrup, *there is __NO corn syrup in the Miller Lite and Coors Light you drink__*.").) The court will address the significance of this slight discrepancy below.

syrup is ambiguous." (*Id.* ¶ 78.)[10]

In support of its motion, plaintiff contends that the advertisements exploit or further misconceptions about corn syrup and high fructose corn syrup ("HFCS"). The corn syrup MillerCoors uses in its brewing process is a distinct substance from HFCS. Dr. John S. White, a biochemist with industry experience in "products of the corn wet milling industry including starches, maltodextrins and corn syrups," represents that he "has worked extensively on the divisive [HFCS] issue for the past 15 years," and that "there is a common point of confusion about corn syrup and HFCS, despite the fact that they are very different products." (White Decl. (dkt. #12) ¶¶ 3, 5(d).) With respect to the survey, Wind concluded that "more respondents who saw the test stimulus (24 percent) than who saw the control stimulus (19 percent) believed that the commercial says, suggests, or implies that corn syrup and high fructose corn syrup are the same." (*Id.* ¶ 86.)

### F. Consumer Communications

In January 2019, before the launch of the advertising campaign at issue in this lawsuit, "MillerCoors had received virtually no consumer communications related to corn syrup." (Pl.'s PFOFs (dkt. #30) ¶ 92 (citing Wind Rept. (dkt. #15) ¶ 93).) After the Super Bowl, through March 22, 2019, MillerCoors received 179 communications related

---

[10] Prior to the Super Bowl commercials, Anheuser-Busch ran a couple of advertisements in January 2019, announcing Bud Light would soon have an ingredients label. (Pl.'s PFOFs (dkt. #10) ¶¶ 26-27; Reis Decl., Ex. 24 (dkt. #14-24).) Wind opines in his report that "[t]he focus of this pre-corn syrup campaign on beer ingredients primed the respondents to interpret the phrase 'Made with corn syrup'—the theme of the comparative advertising campaign—to denote an ingredient." (Wind Rept. (dkt. #15) ¶ 89(d).)

to corn syrup. (*Id.* ¶ 93 (citing Wind Rept. (dkt. #15) ¶ 93).) Defendant disputes the significance of these communications on the basis that "[t]his small number of communications after the Super Bowl consists of thoughts from a miniscule fraction of the overall relevant consumers, and Dr. Wind provided no evidence that his dataset of particular consumers who actively reached out to MillerCoors is representative of all potential MillerCoors consumers." (Def.'s Resp. to Pl.'s PFOFs (dkt. #30) ¶ 92 (citing Hauser Decl. (dkt. #36) ¶¶ 54-56).) Nevertheless, according to Wind's analysis, "[t]wenty-two percent of consumer communications noted that the presence of corn syrup will have an impact on their likelihood of purchasing Miller Lite and/or Coors Light, with 18 percent likely to end or decrease their purchases of Miller Lite and/or Coors Light and 4 percent noting a likelihood to begin or increase their purchases of Miller Lite and/or Coors Light." (Wind Rept. (dkt. #15) ¶ 94.)

### G. Social Media Reaction to Campaign

Following the Super Bowl, plaintiff has identified the following tweets and posts on social media focused on the presence of corn syrup in Miller Lite and Coors Light products:





(Reis Decl., Ex. 16 (dkt. #14-16).)

A week after the Super Bowl, a Facebook user also posted the following picture of a grocery store display, showing Miller Lite with packaged ears of corn and bottles of Aunt Jemima syrup on top the cases of beer:



(Reis Decl., Ex. 15 (dkt. #14-15).)

As part of his report, Wind also directed a third-party Voluble, to collect posts from

various social media forums and reviews, including Instagram, Reddit, Twitter and YouTube. Voluble organized the posts into two categories: (1) Twitter posts in which an account authored by Anheuser-Busch mentioned corn syrup and subsequent retweets of those posts; and (2) online conversations mentioning corn syrup in Bud Light, Miller Lite or Coors Light. As it did with the survey data, defendant challenges the reliability of this study as well. The court will address those challenges below. The first category generated 3,206,145 "total impressions"; the second category generated 314,587,587 "total impressions." (Wind Rept. (dkt. #15) ¶¶ 108-09, 112.) Based on this data, Wind concluded that "[o]f the posts authored by consumers that included a mention of corn syrup and at least one of the three brands, more than twice as many expressed a negative sentiment as opposed to a positive one, 22.0% to 9.8%." (*Id.* ¶ 117.) Wind also concluded that "28.6% of consumer posts include information that indicates the author holds the mistaken belief that corn syrup used in brewing is present in the final product (the beer itself). Conversely, only 6.9% of posts demonstrate that the author understands that corn syrup is part of the brewing process only and not present in the beer that would be consumed." (*Id.* ¶ 124.)

## OPINION

To obtain a preliminary injunction, a plaintiff "must establish that it has some likelihood of success on the merits; that it has no adequate remedy at law; that without relief it will suffer irreparable harm." *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018). "If the court determines that the moving party has failed to demonstrate any one of these three threshold requirements, it

must deny the injunction." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).  If the plaintiff passes that threshold, however, "the court must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest." *Planned Parenthood*, 896 F.3d at 816.  The Seventh Circuit instructs courts to "employ[] a sliding scale approach" for this balancing:  "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Id.* at 816 (quoting *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018)).

## I.  Likelihood of Success on the Merits

"To prevail on a deceptive-advertising claim under the Lanham Act, a plaintiff must establish that (1) the defendant made a material false statement of fact in a commercial advertisement; (2) the false statement actually deceived or had the tendency to deceive a substantial segment of its audience; and (3) the plaintiff has been or is likely to be injured as a result of the false statement." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381–82 (7th Cir. 2018) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999)).  The Seventh Circuit recognizes two types of "false statements":  (1) "those that are literally false" and (2) "those that are literally true but misleading." *Id.* at 382 (citing *Hot Wax*, 191 F.3d at 820).[11]

---

[11] Other circuit courts have also recognized a "false by necessary implication" or "misleading per se" category of statements, but the Seventh Circuit has not expressly adopted this doctrine. *See Eli Lilly*, 893 F.3d at 383 n.3.  Regardless, the court is hard pressed to articulate a material difference between these characterizations than the literally false and true but misleading categories adopted

The required proof varies based on which type of statement is at issue. A literally false statement is "an explicit representation of fact that on its face conflicts with reality." *Eli Lilly*, 893 F.3d at 382 (citing *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1091 (7th Cir. 1994)). The type of statements that fall into this category are "bald-faced, egregious, undeniable, [and] over the top." *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009). As such, "[a] literally false statement will necessarily deceive consumers, so extrinsic evidence of actual consumer confusion is not required." *Eli Lilly*, 893 F.3d at 382.

For statements that are literally true but misleading, "the plaintiff ordinarily must produce evidence of actual consumer confusion in order to carry its burden to show that the challenged statement has 'the tendency to deceive a substantial segment of its audience.'" *Id.* at 382 (quoting *Hot Wax*, 191 F.3d at 819–20). At the preliminary injunction stage, however, a consumer survey or other "hard evidence of actual consumer confusion" is not required. *Id.* Instead, the Seventh Circuit instructs that district courts should analyze "the ads themselves, the regulatory guidance, and the evidence of decreased demand." *Id.*

In its brief, plaintiff argues that it may also demonstrate that an ad has the tendency to deceive a substantial segment by showing that the "defendant has intentionally set out to deceive the public, and the defendant's deliberate conduct in this regard is of an egregious nature." *Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham*

---

in this circuit, particularly in the context of this case.

*Corp.*, 960 F.2d 294, 298–99 (2d Cir. 1992) ("*J&J * Merck*") (internal citations and quotation marks omitted).  Such evidence gives rise to a presumption "that consumers are, in fact, being deceived," and then "the burden shifts to the defendant to demonstrate the absence of consumer confusion." *Id.* (internal citation and quotations marks omitted).

In its response brief, defendant points out that the Seventh Circuit has not adopted this rebuttable presumption of confusion based on demonstrating an intent to deceive. (Def.'s Opp'n (dkt. #39) 27.)  However, the presumption has been adopted by at least the First, Second, Third, Eighth and Ninth Circuits.  *See generally* 5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 27:58 (5th ed. 2019) (citing *Cashmere & Camel Hair Mgrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 316 (1st Cir. 2002) ("It is well established that if there is proof that a defendant intentionally set out to deceive or mislead consumers, a presumption arises that customers in fact have been deceived."); *J&J * Merck*, 960 F.2d at 298; *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm, Inc.*, 19 F.3d 125, 132 (3d Cir. 1995) (adopting presumption, but also requiring showing of "clear and egregious conduct" in addition to intent); *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1336 (8th Cir. 1997) ("A predicate finding of intentional deception, as a major part of the defendant's marketing efforts, contained in comparative advertising, encompasses sufficient harm to justify a rebuttable presumption of causation and injury in fact."); *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 258 (9th Cir.), *supplemented sub nom. William H. Morris Co. v. Grp. W. Inc.*, 67 F.3d 310 (9th Cir. 1995) ("If Omicron intentionally misled consumers, we would presume consumers were in fact deceived and

21

Omicron would have the burden of demonstrating otherwise.")).[12]

## A. Misleading Statements

Recognizing that the alleged misleading statement must be considered in context of the full advertisement, *Hot Wax*, 191 F.3d at 820, plaintiff nonetheless focuses its argument around four misleading statements:  (1) "made with," "brewed with" or "uses" corn syrup; (2) Bud Light has "100% less corn syrup than Miller Lite or Coors Light" or that it has "no corn syrup"; (3) referring to corn syrup as an "ingredient"; and (4) corn syrup is used to "save money" or is "less expensive."

### 1.  "made with," "brewed with" or "uses"

There is no dispute that the statements that Miller Lite and Coors Light "use" or are "made with" or "brewed with" corn syrup are literally true.  Instead, plaintiff argues that "when viewed as a whole, [the advertisements] deceive[] consumers into believing that Miller Lite and Coors Light final products actually contain corn syrup and thus are unhealthy and inferior to Bud Light."  (Pl.'s Opening Br. (dkt. #9) 29.)  Plaintiff's argument also turns on its representation, grounded in expert opinion, that there is *no* corn syrup in either end product.  (White Decl. (dkt. #12) ¶ 5(d)).)  As mentioned above, defendant purports to dispute this fact on the basis that it lacks information and knowledge, but for purposes of the present motion, the court will assume that Miller Lite

---

[12] The Sixth has adopted a presumption of injury, entitling a plaintiff to monetary damages, if the defendant acted with an intent to deceive in publishing false statements.  *See Johnson Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 694 (6th Cir. 2000) (adopting presumption of injury upon showing of intent to deceive or bad faith).

and Coors Light contain no corn syrup.[13]

For support of its argument that these statements are misleading, plaintiff directs the court to *Abbott Laboratories v. Mead Johnson & Company*, 971 F.3d 6 (7th Cir. 1992), in which the Seventh Circuit reversed the district court's denial of a preliminary injunction in a Lanham Act claim involving competing oral electrolyte maintenance solutions ("OES") products administered to prevent dehydration in infants suffering from acute diarrhea or vomiting.  In *Abbott Laboratories*, the defendant introduced a new product "Ricelyte" into the market to compete with "Pedialyte."  *Id.* at 9.  Pedialyte was a "glucose-based solution," whereas Ricelyte was manufactured from "rice syrup solids."  *Id.*  In the advertisements at issue, defendant emphasized "that Ricelyte's carbohydrate components (*i.e.*, rice syrup solids) come from rice, whereas Pedialyte's carbohydrate component is glucose."  *Id.* at 10.

As the district court found, however, the rice syrup solids are "hydrolytically *derived* from rice carbohydrates, [but] are not actually 'rice carbohydrates' as that term is used in the scientific and medical communities."  *Id.* at 9.  In addition to finding that the description of Ricelyte as a "rice-based oral electrolyte solution" was literally false, the Seventh Circuit also concluded that the name Ricelyte

> implies more than the permissible message that Ricelyte is *produced from* rice or contains rice syrup solids derived from rice carbohydrates.  It also implies that Ricelyte *actually contains* rice and rice carbohydrates—or at least we can say that Abbott has established a strong likelihood of so proving at trial.

*Id.* at 15 (emphasis added).

---

[13] Indeed, based on the evidence before it, this is not only more likely than not, but the defendant had every incentive to provide proof to the contrary and has not.

Here, plaintiff MillerCoors would grasp onto this distinction between a product being "derived from" an ingredient as compared to "actually contain[ing]" the ingredient. In particular, plaintiff argues that defendant's advertisements blur this line or, at minimum, this language "do[es] not foreclose the possibility in consumers['] minds that corn syrup is added as a finishing ingredient to the beer." (Pl.'s Opening Br. (dkt. #9) 23.) As defendant points out, however, there is no affirmative duty to disclose or disclaim if the advertisement at issue is not false or misleading. (Def.'s Opp'n (dkt. #39) 22-23 (citing cases).)

More to the point, unlike in *Abbott Laboratories*, viewing the "made with," "brewed with" or "uses" statements in the context of the full commercials here, there are no express or implicit messages that the corn syrup is actually *in* the finished product. In finding the use of the Ricelyte name misleading, the *Abbott Laboratories* court pointed to "[t]he product's label [which] places the name 'Ricelyte' directly above the phrase 'Rice-Based Oral Electrolyte Maintenance Solution,'" and "references, both verbal and pictorial, to rice in Mead's print advertisements and brochures." *Abbott Labs.*, 971 F.2d at 15. As described in detail above, the Bud Light commercials containing the "made with" or "brewed with" language show delivery of a large barrel of corn syrup, but do not show corn syrup being added to the finished Miller Lite or Coors Light products. Moreover, unlike Ricelyte, Bud Light is apparently brewed with grains of rice, not some derivative syrup.

Plaintiff also directs the court to *Eli Lilly and Company v. Arla Foods, Inc.*, 893 F.3d 375 (7th Cir. 2018), in which the Seventh Circuit affirmed the district court's entry of a preliminary injunction against a cheese manufacturer's advertisements implying that milk from recombinant bovine somatropin ("rbST")-treated cows was unwholesome. The

advertisements at issue stated that "Arla cheese contains no 'weird stuff' or 'ingredients that you can't pronounce'—in particular, no milk from cows treated with [rbST]," and depicted rbST as "a cartoon monster with razor sharp horns and electric fur." *Id.* at 379. Critically, at least at the preliminary injunction stage, the defendant cheese producer conceded that "rbST-derived dairy products are the same quality, nutrition, and safety as other dairy products." *Id.* at 381.

The Seventh Circuit determined that the explicit statements were accurate: "RbST is an artificial growth hormone given to some cows, and Arla does not use milk from those cows." *Id.* at 382. The court, however, affirmed the district court's analysis of the evidence -- "the ads themselves, the regulatory guidance, and the evidence of decreased demand" -- to conclude that the advertisements were misleading. Specifically, the court explained:

> the ad campaign centers on disparaging dairy products made from milk supplied by rbST-treated cows. The ads draw a clear contrast between Arla cheese (high quality, nutritious) and cheese made from rbST-treated cows (impure, unwholesome). The use of monster imagery, "weird stuff" language, and child actors combine to colorfully communicate the message that responsible consumers should be concerned about rbST-derived dairy products.

*Id.* at 382–83.

Here, too, the *Eli Lilly* decision is distinguishable on the basis that the Bud Light "made with," "brewed with" or "uses" ads do not disparage corn syrup or otherwise expressly draw attention to any negative health consequences. (*See* Def.'s Opp'n (dkt. #39) 24 (distinguishing *Eli Lilly* and other comparative ads on the basis that the ads at issue here are "whimsical, humorous and no message of disgust or danger from drinking the beers are communicated verbally or in imagery").) In fairness, plaintiff's counsel rightly

25

points out that this link may have been unnecessary here, since at least some consumers appear to associate corn syrup, and particularly high fructose corn syrup, with harmful health consequences, or certainly defendant hoped.

However, instead of analyzing the commercial or the advertising campaign more broadly in order to demonstrate that these statements are misleading, plaintiff relies on open-ended questions in Wind's consumer survey, in which consumers interpreted "'made with' to mean, for example 'contains,' 'uses,' 'has,' 'is made with,' 'is in,' or 'is added.'" (Pl.'s Opening Br. (dkt. #9) 29 (citing Wind Rept. (dkt. #15) ¶ 78).)  As an initial matter, certain of the respondents' descriptions -- namely, "uses" and "is made with" -- appear accurate, and contradict plaintiff's argument that "made with" or "brewed with" means "is contained" in the finished product.  Indeed, responding that "made with" means "is made with" does not appear to be an interpretation of the phrase at all.

Putting aside these concerns about the quality of this proof, relying on survey evidence to find that an advertisement is "misleading" may well bring statements that merely are "susceptible to misunderstanding" within the scope of a Lanham Act violation, which the Seventh Circuit instructed is not appropriate in *Mead Johnson & Company v. Abbott Laboratories* ("*Mead Johnson I*"), 201 F.3d 883 (7th Cir. 2000).  In that case, an infant formula manufacturer brought a Lanham Act action against a competitor, based on the competitor's use of the statement "1st Choice of Doctors" in its advertisements.  The district court entered a preliminary injunction, in part, based on its finding that the statement "implies to consumers that a majority of physicians strongly prefer the product for strictly professional reasons," and the market research, while showing a plurality of

26

support among physicians, did not show a *majority* of support. *Id.* at 884. The Seventh Circuit rejected this conclusion and reversed the entry of a preliminary injunction, explaining that "it is all but impossible to call the claim of 'first choice' misleading . . . [u]nless the meaning of language is itself to be determined by survey evidence." *Id.* In other words, the Seventh Circuit rejected an attempt to solely rely on survey evidence to demonstrate that language is misleading.

In a subsequent opinion, denying a petition for rehearing, the Seventh Circuit clarified a portion of its prior opinion and order, explaining:

> Section 43(a)(1) forbids misleading as well as false claims, but interpreting "misleading" to include factual propositions that are susceptible to misunderstanding would make consumers as a whole worse off by suppressing truthful statements that will help many of them find superior products. A statement is misleading when, although literally true, it implies something that is false. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir.1992). "Misleading" is not a synonym for "misunderstood," and this record does not support a conclusion that Abbott's statements implied falsehoods about Similac.

*Mead Johnson & Co. v. Abbott Labs.* ("*Mead Johnson II*"), 209 F.3d 1032, 1034 (7th Cir. 2000).[14]

The court notes that *Mead Johnson* is not without its critics, and understandably so: how does one draw the line between an advertising statement that is susceptible to

---

[14] In the original opinion, the amended paragraph included a sentence about intent: "A 'misunderstood' statement is not the same as one designed to mislead." *Mead Johnson I*, 201 F.3d at 886. Arguably, this statement would support plaintiff's position that intent to deceive could be a basis for finding a statement misleading, but this language did not survive the amendment.

misunderstanding but not misleading?[15]   The Third Circuit -- the only court to discuss

substantively the *Mead Johnson* decisions -- described the Seventh Circuit's essential holding

as follows:  "there are circumstances under which the meaning of a factually accurate and

facially ambiguous statement is not open to attack through a consumer survey."  *Pernod*

*Ricard USA, LLC, v. Bacardi, USA, LLC*, 653 F.3d 241, 252 (3d Cir. 2011); *see also Am.*

*Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 393-94 (8th Cir. 2004) (rejecting

survey evidence to demonstrate that "America's Favorite Pasta" was misleading, explaining

"[t]o allow a consumer survey to determine a claim's benchmark would subject any

advertisement or promotional statement to numerous variables, often unpredictable, and

would introduce even more uncertainty into the marketplace. . . . The resulting

unpredictability would chill commercial speech, eliminating useful claims from packaging

and advertisements. . . .  [T]he Lanham Act protects against misleading and false statement

of fact, not misunderstood statements.").

        Moreover, requiring plaintiff to point to some other aspect of the ad besides a

truthful statement is entirely consistent with the approach of the Seventh Circuit and other

courts in the cases cited by plaintiff.  In finding a literally true statement misleading, courts

consistently seem to rely on disparaging or derogatory references to the ingredients in the

---

[15] One scholar has suggested that this holding requires materiality in addition to a misunderstanding for a claim to be misleading.  Rebecca Tushnet, *Running the Gamut from A to B: Federal Trademark and False Advertising Law*, 159 U. Pa. L. 1305, 1349 (2011).  To illustrate, Tushnet explains, "One may misunderstand a fact in the abstract:  I could be wrong about the size of a computer's hard drive.  If I am misled, however, I am being led:  induced, or at least potentially induced, to change my position based on my misunderstanding, as when I am more likely to buy a computer because of my belief about the size of the hard drive." *Id.*  Even this language, however, suggests that something more overt is required on the part of the advertiser to find a true statement misleading.

competitor's product, e.g., *Eli Lilly*, 893 F.3d at 379 (depicting rbST as a "cartoon monster with razor sharp horns and electric fur"); *Chobani, LLC v. Dannon Co., Inc.*, 157 F. Supp. 3d 190, (N.D.N.Y. 2016) (using "negative phrasing," e.g., "bad stuff," in reference to sucralose contained in defendant's yogurt); *Polar Corp. v. Coca-Cola Co.*, 871 F. Supp. 1520, 1521 (D. Mass. 1994) ("This Court finds that, by causing the polar bear to throw the can of Coke into a trash bin labeled 'Keep the Arctic Pure,' Polar has implied that Coke is not pure."), or references that suggest a quality not present in a product is in fact in the product, e.g., *Abbott Laboratories*, 971 F.2d at 10 (placing rice grains prominently on advertisements). Consistent with these cases, plaintiff MillerCoors must point to something in the advertisement to allow a reasonable consumer to draw the inference that "brewed with," "made with" or "uses" corn syrup means that corn syrup is *in* the final product.

When counsel for plaintiff was pressed at the hearing to identify a comparable characteristic in these advertisements, he appeared to rely on the scale of the campaign alone -- that is, Anheuser-Busch has produced a lot of advertisements, displayed them during high profile events, and mentioned "corn syrup" repeatedly.  Specifically, plaintiff relied on the "maxim of relevance," explaining that under this theory:

> if a speaker says something that is capable of more than one meaning and knows that . . . one of those meanings is something that's relevant and meaningful information to the listener and that the other meaning is something that is irrelevant and not meaningful to the listener, the listener will assume that the speaker means the meaningful, relevant statement because why would you be telling me something that's not important.

29

(Hr'g Tr. (dkt. #56) 12.)[16]  Intuitively, the argument is appealing:  why are these ads repeating "made with" or "brewed with" corn syrup if it does not mean that the corn syrup works its way into the final product?[17]  Still, plaintiff fails to direct the court to any case, and this court could not find any, relying on the pervasiveness or scale of an advertising campaign to find a neutral, truthful statement misleading within the meaning of the Lanham Act.

Perhaps, as discussed below, the context of these television commercials should be judged by statements displayed in print advertisements and other commercials that cross the line from "susceptible to misunderstanding" to outright misleading.  In other words, consumers could reasonably interpret "made with" and "brewed with" to mean corn syrup is in the final product because of defendant's other ads describing Bud Light as having 100% less corn syrup, or describing Miller Lite as "corn syrup" and Bud Light as "no corn syrup" without reference to the *brewing* process.  Still, this theory may prove too much of a stretch given the relative exposure of the Special Delivery and other commercials only using the "made with," "brewed with," or "uses" language as compared with the billboard advertisements and other, apparently less pervasive commercials that use more troubling

---

[16] The maxim of relevance (originally called the "maxim of relation") is one of philosopher Paul Grice's four conversational maxims, which jointly constitute the cooperative principle. *See* H.P. Grice, *Logic and Conversation*, in 3 Syntax and Semantics: Speech Acts, 47 (P. Cole and J.L. Morgan, eds. 1975).

[17] At the hearing, defendant argued that there are other reasons to highlight rice versus corn syrup distinction, namely that consumers may align Bud Light with the "farm-to-table" movement or using a "real ingredient versus a syrup."  (Hr'g Tr. (dkt. #56) 25.)  Perhaps, there is something to this basis for the advertisement, though it seems counter to the weight of the evidence as to defendant's intent that associating Miller Lite and Coors Light with corn syrup would motivate consumer's health concerns with consuming corn syrup or worse, high fructose corn syrup.

language.

Finally, as noted, plaintiff argues that an advertisement may be misleading under the Lanham Act even if "the 'context' comes in the form of preexisting beliefs," citing *Simeon Management Corporation v. Federal Trade Commission*, 579 F.2d 1137, 1146 (9th Cir. 1978). As indicated by its name, however, this case involved an order issued by the FTC requiring the plaintiff to disclose a lack of FDA approval, not a claim under the Lanham Act. As defendant points out in its opposition brief, FTC precedent is largely inapplicable to Lanham Act cases. *See, e.g.*, *Sandoz Pharm. v. Richardson-Vicks*, 902 F.2d 222, 230 (3d Cir. 1990) (declining plaintiff's "invitation to blur the distinctions between the FTC and a Lanham Act plaintiff"); *cf. Kraft, Inc. v. F.T.C.*, 970 F.2d 311, 319 (7th Cir. 1992) (rejecting reliance on Lanham Act decisions to challenge FTC order). As the court pressed during the hearing, there appear to be *no* Lanham Act cases that allow a plaintiff to rely solely on defendant's exploitation of consumer concerns to demonstrate that a truthful advertisement is misleading, at least where the truthful statement may well be properly understood, rather than necessarily misleading consumers. Indeed, such an approach would appear entirely inconsistent with the Seventh Circuit's guidance in *Mead Johnson*.[18]

For all these reasons, the court concludes that plaintiff has not demonstrated a likelihood of success in demonstrating that the advertisements solely using the language "brewed with," "made with," or "uses" corn syrup are misleading.

---

[18] At oral argument, plaintiff's counsel seemed to suggest that a literally true statement could be found to be misleading where there is substantial proof that the defendant intended to exploit the consumer's susceptibility to misunderstand its meaning, as appears to be the case here. Although the Seventh Circuit has yet to adopt this view, the argument is addressed in the section on Intent in Section I.B below.

**2. Bud Light has "100% less corn syrup than Miller Lite or Coors Light" or that it has "no corn syrup"**

Plaintiff also contends that defendant's statements that Bud Light contains "100% less corn syrup" than Miller Lite and/or Coors Light and that Bud Light contains "no corn syrup" are misleading because they "highlight this false dichotomy in a way that suggests consumers should care about it for important reasons such as health concerns." (Pl.'s Br. (dkt. #9) 30.) Unlike the "made with" or "brewed with" statement, these statements, while also literally true, support a reasonable interpretation that Miller Lite and Coors Light *contain* corn syrup. Thus, the court agrees with plaintiff that it has a likelihood of success in demonstrating that these statements are misleading. The same is also true for the second Thespians commercial, a mock film preview, which contains the following frames:

 

(Reis Decl., Ex. 13 (dkt. #14-13).) These advertisements, unlike the ones described above, do not contain any reference to Miller Lite and Coors Light being "made with" or "brewed with" corn syrup; instead, these advertisements -- either in stating what is *not* in Bud Light or in stating what *is* in Miller Lite or Coors Light -- cross the line from simply being susceptible to misunderstanding to being misleading, or, at minimum, the court finds that

plaintiff is likely to succeed in making such a showing.[19]

### 3. Ingredient

Next, plaintiff points to references to "corn syrup" being an "ingredient."  As an initial point, it is not clear what constitutes an "ingredient" in the context of beer.  As the parties acknowledged during the hearing, there are no labeling requirements with respect to ingredients for beer.  *See* 27 C.F.R. § 7.22 (requiring name, class, name and address of permit holder, net contents and alcohol content).  Even in the food context, as far as this court could find, "ingredient" is not defined, but appears to cover items that are used in the production of a food product, even if not *in* the end product (e.g., leavening items).  *See* 21 C.F.R. § 101.4 (setting for designation of ingredients for food labeling).  In an attempt to distance itself from any belief that corn syrup remains in the finished Miller Lite and Coors Light end products, plaintiff now refers to corn syrup as an "adjunct."  As defendant repeatedly points out, however, plaintiff at least at times has in the past (and apparently still does) listed corn syrup as an "ingredient" on its website, without any reference to it being used solely in the brewing process and not present in the end product.[20]

---

[19] Defendant's counsel suggests that the survey evidence will ultimately show that both statements will be understood by consumers to refer to how these beers are brewed, rather than their ingredients in light of the comprehensive campaigns original blanketing television commercials referring to the brewing process.  However, the court is persuaded that a reasonable jury could and likely would find that these ads encouraged consumers to draw the wrong inference from the original ads.

[20] Moreover, "adjunct" appears to have a specific meaning within the context of beer brewing, not applicable to corn syrup.  Under 27 C.F.R. § 25.15, "[b]eer must be brewed from malt or from substitutes for malt, which include "rice, grain of any kind, bran, glucose, sugar and molasses," and may also contain "adjuncts in fermenting beer," including "honey, fruit, fruit juice, fruit concentrate, herbs, spices, and other food materials."

Putting this dispute aside, the use of "ingredient" must also be considered in context.  In most of the advertisements, defendant uses the word ingredient or lists ingredients in conjunction with the "made with" or "brewed with" language.  For example, in the Cave Explorers commercial, one character reads out-loud what is written on the inside of the cave, "Coors Light is made with barley, water, hop extract and corn syrup," followed by another character reading out-loud from a different writing, "Bud Light is made with barley, rice, water, hops and no corn syrup."  (Reis Decl., Ex. 10 (dkt. #14-10); Harrison Decl., Ex. 35 (dkt. #40-35) (transcript).)  The same is true for the first Thespians advertisement and the Mountain Folk advertisements.  (*See* Reis Dec., Ex 12 (dkt. #14-12); Harrison Decl., Ex. 37 (dkt. #40-37) (transcript) (using "made with" to list ingredients in Bud Light and Miller Lite); Reis Decl., Ex. 1 (dkt. #14-11); Harrison Decl., Ex. 35 (dkt. #40-36) (transcript) (using "made with" to list ingredients in Bud Light, Miller Lite and Coors Light).)

There is one exception.  In the most recent commercial, released March 20, 2019, the Bud Light King states,

> Miller, Miller, Miller.  I've been made aware of your recent advertisement.  I brought you your shipment of corn syrup, and this is how you repay me?
>
> Look if you're this set on imitating our kingdom, may I suggest also imitating us by putting an ingredients label on your packaging.  People want to know *what ingredients are in their beer*.
>
> But what do I know?  I'm just the king of a kingdom that doesn't brew beer with corn syrup.

(Reis Decl., Ex. 25 (dkt. #14-25); Harrison Decl., Ex. 38 (dkt. #40-38) (emphasis added).)  For the same reason that the "100% less corn syrup," "no corn syrup" or "corn syrup"

language is problematic, the court also concludes that plaintiff is likely to succeed in demonstrating that this language is misleading because it crosses the line to encourage a reasonable consumer to believe that corn syrup is actually contained in the final product.

### 4.  "Save money" / "less expensive"

Finally, plaintiff points to statements that Miller Lite and Coors Light selected corn syrup to "save money" or because it is "less expensive."   Plaintiff contends that these statements "falsely suggest . . . [t]hat there is something inferior, wrong, or unhealthy about beer that is not brewed from rice."  (Pl.'s Br. (dkt. #9) 31.)  Plaintiff does not challenge the truthfulness of these statements.  Instead, plaintiff appears to contend that representations about the relative cost of corn syrup is misleading because a consumer would conclude that it is less healthy.  For reasons addressed above, however, this claim is too much of a stretch to warrant discussion.[21]

### B.  Intent to Deceive

To date, plaintiff's strongest evidence is defendant's own statements indicating that in launching this campaign, it was both aware of and intended to exploit consumer concerns about corn syrup (and high fructose corn syrup in particular).  As detailed above, defendant's head of marketing for Bud Light and senior director of corporation communications in various publications described the market research defendant engaged in before launching this campaign.  Specifically, defendant found that "consumers generally

---

[21] To the extent plaintiff's position is that corn syrup is *not* less expensive than rice or other malt substitutes, and therefore these statements are literally false, plaintiff failed to develop this record.

don't differentiate between high fructose corn syrup and corn syrup, and that it is a major triggering point in choosing brands to purchase"; "consumers on their own had perceptions -- for whatever reason -- that there were ingredients they preferred not to consume if they didn't have to" and, therefore, "it was pretty clear to us what to highlight"; and that consumers "have concluded that they prefer not putting something like corn syrup, if they had a choice, into their body." (Reis Decl., Exs. 21, 22, 23, 26 (dkt. ##14-21, 14-22, 14-23, 14-26).)

As the court indicated during the hearing, these statements support a finding that defendant was aware of consumer concerns about and the likelihood of confusion surrounding corn syrup and HFCS, and that defendant hoped consumers would interpret advertising statements about "made with corn syrup" or "brewed with corn syrup" as corn syrup actually being in the finished products.  As acknowledged above, however, the Seventh Circuit has not yet embraced the doctrine that would create a rebuttable presumption of consumer confusion or deception based on an intent to deceive, though perhaps this evidence could serve to color the "made with" and "brewed with" statements to push them across the line to allow a reasonable finding that they are misleading, and not simply susceptible to misunderstanding.  If either or both parties opt to appeal this decision to the Seventh Circuit, guidance on the use of intent in determining whether a statement is actually misleading under the Lanham Act would be of great value.

Moreover, as discussed above, at least the Second and Third Circuit require a showing of "egregious conduct" *in addition* to intent to deceive to give rise to this rebuttable presumption.  While other circuits have not required such a showing, from the court's

review, the Second and Third Circuits have developed the law surrounding the role of

intent in the Lanham Act context and plaintiff itself relied on a Second Circuit case to

pursue its intent theory.  (Pl.'s Opening Br. (dkt. #9 33-34 (discussing *J&J * Merck*, 960

F.2d at 297-98).[22]  Unfortunately, cases discussing the role of intent in false advertising

claims are fairly limited.  Indeed, while courts appear willing to find an intent to deceive,

there are no findings, as far as this court could uncover, of cases also finding "egregious"

conduct or a discussion of what that might entail to support the presumption.

As the Third Circuit explained in discussing competitor advertisements in the

antacid market:

> Both the earlier Mylanta advertising and the Maalox
> advertising have tried to exploit the consumer confusion the
> FDA feared between the results of ANC tests and symptom
> relief. The advertisements tout the ANC strength, promise
> symptom relief, and invite consumers to make the connection.
> *Although there is evidence of intent to mislead, it is of a kind regrettably
> pervasive throughout the antacid industry and does not reach the
> egregious proportions that would warrant a presumption shifting the
> burden of proof.* Therefore, we need not decide whether to adopt
> the *Smithkline Beecham* presumption in case of clear and
> egregious conduct. In this case, the district court's failure to
> consider Johnson–Merck's evidence as to Rorer's intent was
> not error.

*Johnson & Johnson-Merck Consumer Pharm.*, 19 F.3d at 132 (emphasis added); *see also Am.*

*Home Prod. Corp. v. Procter & Gamble Co.*, 871 F. Supp. 739, 763 (D.N.J. 1994) ("Despite

the great weight of the evidence demonstrating an intent to mislead, the court found that

---

[22] The court readily acknowledges that a more recent Second Circuit case may raise a question as to whether a showing of "egregious conduct" is required.  *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 67 (2d Cir. 2016) (affirming entry of permanent injunction in part because of district court's finding of intent to deceive without discussion of whether defendant also engaged in egregious conduct).

the actions of the defendant were simply not egregious.").

Because all advertising seems to be an effort to exploit consumer likes and dislikes, interests and fears, applying the Lanham Act to neutral, truthful statements intended to exploit or take advantage of consumer beliefs is problematic, especially in light of the arguable value of comparative advertisements in promoting intelligent consumer decision-making.  (*See* Def.'s Opp'n (dkt. #39) 19-20.)  Absent additional guidance from the Seventh Circuit, the court is unwilling, at this stage in the proceedings, to rely on intent as the hook to find plaintiff likely to succeed on demonstrating that the "made with," "brewed with," or "uses" corn syrup statements are misleading.[23]

## C.  Evidence of Confusion

To demonstrate a likelihood of success on its Lanham Act claim, plaintiff must put forth evidence that a "substantial segment of its audience" was deceived by defendant's advertisements. *Eli Lilly*, 893 F.3d at 381–82.  As detailed above, plaintiff offers evidence of confusion in the form of:  (1) a consumer survey conducted by its expert Dr. White; (2) consumer communications mentioning corn syrup after the launch of the campaign during the Super Bowl; and (3) reactions on social media.

Plaintiff principally relies on the surveys finding that "a net (after account for the control group) of 35% of consumers were misled by the ad into thinking that Miller Lite and Coors Light contain corn syrup."  (Pl.'s Opening Br. (dkt. #9) 35.)  Plaintiff directs

---

[23] Even if open to consideration, the court can conceive of no basis under current case law to prevent defendant to exploit the plaintiff's use of a "cheaper" ingredient in making its beer, even if it has nothing to do with the "quality" of the finished product.

the court to cases holding that survey evidence that "at least 15% of consumers have been misled" constitutes a "substantial percentage" for purposes of satisfying the second element of a Lanham Act claim.  (*Id.* (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm., Co.*, 290 F.3d 578, 594 (3d Cir. 2002); *Eli Lilly Co. v. Arla Foods, Inc.*, 17-cv-703, 2017 WL 4570547, at *9 (E.D. Wis. June 15, 2017), *aff'd* 893 F.3d 375 (7th Cir. 2018)).)

In response, defendant, largely through a declaration of its own expert, John R. Hauser, Sc.D., offers several challenges to the reliability of the survey and this 35% figure. *First*, defendant questions why Dr. Wind selected the "Mountain Man" commercial, instead of the "Special Delivery" commercial, on the basis that the "Special Delivery" commercial launched the adverting campaign, ran the most times and was seen by the most people.  (Def.'s Opp'n (dkt. #39) 30-31.)  In its reply brief, plaintiff points out that the two ads both "compare the respective beers and highlight corn syrup," and the "Mountain Man" ad "is arguably the more neutral of the two."  (Pl.'s Reply (dkt. #48) 5.)  The court agrees with plaintiff that both ads compare Miller Lite and Coors Light with Bud Light, and defendant has not articulated a basis -- nor could its counsel when pressed during the hearing -- why using the "Mountain Man" advertisement would undermine the value of the survey.  At minimum, this challenge would go to the weight the court might place on the survey and not a basis to reject it out of hand.

*Second*, Dr. Hauser contends that Dr. Wind asked improper leading questions. Specifically, he takes issue with QF7a and QF7b.  Q7Fa provides:

> Which, if any of the following statements does the TV commercial say, suggest or imply?  (*Select one only*):

1.  Miller Lite [and/or Coors Light] is/are <u>not</u> made with corn syrup;
2.  Miller Lite [and/or Coors Light] is/are made with corn syrup;
3.  Neither;
4.  Don't know/Unsure.

(Wind Rept. (dkt. #15) ¶ 62.)   If a respondent selected option 2 -- that Miller Lite and/or Coors Light is/are made with corn syrup -- then the respondents were shown QF7b (assuming that the question concerned Miller Lite), which provides:

> You said that Miller Lite is made with corn syrup.  Being "made with" corn syrup may mean a number of different things. Which, if any, of the following statements does the TV commercial say, suggest, or imply about Miller Lite?
> 1.  Corn syrup is used <u>only</u> during the brewing process for Miller Lite, but is <u>not</u> in the Miller Lite you drink.
> 2.  Corn syrup is <u>only</u> in the Miller Lite you drink, but is <u>not</u> used during the brewing process for Miller Lite.
> 3.  Corn syrup is <u>both</u> used during the brewing process for Miller Lite <u>and</u> is in the Miller Lite you drink.
> 4.  None of the statements above.
> 97.  Don't know/Unsure.

(Wind Rept. (dkt. #15) ¶ 63.)   Dr. Hauser contends that QF7b improperly instructs respondents that the term "made with" is ambiguous, which deviates from accepted practice.  (Hauser Decl. (dkt. #36) ¶ 27.)   Instead, Hauser maintains that respondents either should have been asked if they viewed the "made with" statement as ambiguous, and then only those individuals should have been asked what they believed the statement meant, or respondents should have been asked an open-ended question as to the meaning

of the term.  (*Id.*)[24]  In its reply, plaintiff responds to other challenges in Hauser's report (ones not raised in defendant's opposition brief), but does not respond to this particular challenge.  Regardless, the court concludes that this criticism also goes to the weight, rather than the admissibility, of this evidence, and that plaintiff has demonstrated at least some likelihood of persuading a reasonable jury of the risk of confusion.

*Third*, Hauser criticizes Wind's testing of the respondents' views of the connection between HCFS and corn syrup.  This criticism focuses in particular on QF8, which provides:

> Which, if any, of the following statements does the TV commercial say, suggest, or imply?
> 1. Corn syrup and high fructose corn syrup are the same.
> 2. Corn syrup and high fructose corn syrup are different from one another.
> 3. Neither of the statements.
> 4. Don't know/ Unsure.

(Wind Rept. (dkt. #15) ¶ 64.)  Hauser contends that this question was improper because the ads do not mention HFCS, and also points to the results of a prior open-ended question of the test group, where only 1.4% of the respondents volunteered "high fructose corn syrup" in their answers.  (Hauser Decl. (dkt. #36) ¶ 46.)  In response, plaintiff maintains

---

[24] Defendant also cites to analysis of Dr. Wind's codebook for open-ended responses conducted by an attorney for defendant for support of its argument that the leading nature of QF7a and QF7b distorted the results.  (Def.'s Opp'n (dkt. #39) 32-33 (citing Adam J. Simon Decl. (dkt. #35) ¶ 6).)  Specifically, defendant represents that in response to an open-ended question asking respondents to explain what "brewed with" meant, none indicated that corn syrup was "in" the beer they drink. From the court's review, however, it appears that the respondents were asked what "Bud Light, Brewed with *no* Corn Syrup" meant and, therefore, the open-ended response that it did not mean that corn syrup was "in" the end product both makes sense, but also does not undermine the reliability of QF7b which asked about the meaning of "made with corn syrup" in the context of Miller Lite and Coors Light.

that "Dr. Wind did not pose this question to measure confusion caused by the ad, but rather to measure any pre-existing consumer misunderstanding of the relationship between corn syrup and HFCS." (Pl.'s Reply (dkt. #48) 8.)

*Fourth*, defendant challenges the use of the disclaimer in the survey as a control. The thrust of defendant's criticism, as discussed above in the fact section, is that Dr. Wind's report contains two (slightly) different worded disclaimers. As plaintiff explains in the reply, Wind's report contained a typo; one of the versions was used in a prior version of the control ad which was pre-tested, but the control ad used in the formal survey consistently used the same disclaimer. (Pl.'s Reply (dkt. #48) 5.) Regardless, defendant's attempt to tease out any significance in the difference between the two disclaimers -- one says "While Miller Lite and Coors Light are brewed using corn syrup" with the other stating, "While corn syrup is used during the brewing of Miller Lite and Coors Lite" -- is immaterial.

Perhaps these challenges cast some doubt on survey results showing a difference in perception between the control and test advertisement of 35% of consumers, but defendant and its expert fall short of providing a basis to reject the survey results out of hand. Moreover, as plaintiff points out and as described above, the Seventh Circuit has repeatedly rejected the notion that survey evidence is required to obtain a preliminary injunction. *See, e.g., Eli Lilly*, 893 F.3d at 382.

Plaintiff also relies on consumer communications, and Wind's analysis of those communications, finding that 18% indicated that they were "likely to end or decrease their purchases of Miller Lite and/or Coors Light" because of corn syrup. (Wind Rept. (dkt.

42

#15) ¶ 94.)  As defendant points out persuasively, this analysis was based on 32 total communications, out of the approximately 100 million people who watched the Super Bowl.  (Def.'s Opp'n (dkt. #39) 35.)  Moreover, defendant points out that of the ten comments Wind highlights, a number of them accurately described that Miller Lite and Coors Light use or are brewed with corn syrup, rather than plaintiff's alleged mistaken belief that corn syrup is in the final product.  Viewed in isolation, the court agrees that these statements are insufficient to prove that a substantial segment of consumers are likely to be deceived by the advertisements, but it is some anecdotal support for the survey results.

Finally, plaintiff relies on the social media reaction to the advertisements, and again to Wind's analysis of that data to opine that "28.6% of consumer posts include information that indicates the author holds the mistaken belief that corn syrup used in brewing is present in the final product (the beer itself)."  (Wind Rept. (dkt. #15) ¶ 124.)  In response, defendant contends that this type of evidence is treated skeptically and that the "study is not a scientifically accepted method of measuring whether an ad is misleading."  (Def.'s Opp'n (dkt. #39) 34.)  Again, the court agrees that, viewed in isolation, this evidence may not carry the day in proving a likelihood of success in demonstrating consumer confusion, but it, too, provides anecdotal evidence to support the survey results.

In sum, the court finds that plaintiff's evidence is sufficient to support a finding at the preliminary injunction stage that it has some likelihood of success in proving defendant's advertisements deceived or have the tendency to deceive a substantial segment of consumers to believe that Miller Lite and Coors Light actually contain corn syrup.  Of

course, for the reasons explained above, these results are only relevant to those ads that the court concluded cross the line between susceptible to misunderstanding and misleading because of the language used and the context surrounding that language.

## II. Irreparable Injury

As indicated above, to succeed on a Lanham Act claim, plaintiff must also demonstrate that it "has been or is likely to be injured as a result of the false statement." *Eli Lilly*, 893 F.3d at 382. The injury requirement can be satisfied by showing an injury to "sales *or* business reputation." *Id.* at 383 (emphasis added). Moreover, to obtain a preliminary injunction, plaintiff must show "that it has no adequate remedy at law" and "that without [injunctive] relief it will suffer irreparable harm." *Planned Parenthood of Ind.*, 896 F.3d at 816 (citation omitted).

"[I]t is well settled that injuries arising from Lanham Act violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002). Likewise, the difficulty in assessing the damages associated with a loss of goodwill supports finding that the plaintiff lacked an adequate remedy at law. *Id.*; *see also Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 902 (7th Cir. 2001) (noting that "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by [trademark] violations") (internal citation omitted); *Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1120 (7th Cir. 1997) (noting that injury to goodwill "can constitute irreparable harm for which a plaintiff has no adequate remedy at law"); *see generally* McCarthy, *supra*, § 27.37 ("Where the challenged advertising makes a misleading

44

comparison to a competitor's product irreparable harm is presumed.").[25]

In its brief and at oral argument, defendant relies on two district court cases that declined to enter an injunction because the plaintiff had failed to prove a likelihood of irreparable harm in light of market evidence showing that the plaintiff's sales were *not* harmed by the challenged advertisements.  *See Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 124 (S.D.N.Y. 2019) (relying on evidence that "Danimals' share of the overall yogurt market improved, and that Danimals itself had its second-best ever market share in its product class, during the month when [defendant's competing product] came to market" to deny preliminary injunction); *Borden, Inc. v. Kraft, Inc.*, No. 84 C 5295, 1984 WL 1458, at *17 (N.D. Ill. Sept. 28, 1984) (denying preliminary injunction in part because "[s]ince the Kraft commercials started being aired in January, Borden's market share has actually increased due to a substantial sales increase").

In both cases, however, the court also found plaintiff's evidence of reputational harm was lacking.  *See Danone*, 362 F. Supp. 3d at 124-25 (finding no harm to "brand equity;" rejecting "conclusory testimony" about its "reputation as a purveyor of a healthy and nutritious children's snacks"); *Borden*, 1984 WL 1458, at *17 (Plaintiff "merely makes a broad, vague claim of irreparable injury caused by a false impression created in the mind

---

[25] In its briefing and at oral argument, defendant urged the court not to apply the presumption in light of the Supreme Court's holding in *eBay Inc v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006), concluding that in a *patent* case, the movant must supply evidence as to each element, including harm, to obtain injunctive relief.  While the Third Circuit has extended this holding to Lanham Act false advertisement claims, *see Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 219 (3d Cir. 2014), the Seventh Circuit has not.  Regardless, the court finds plaintiff has put forth sufficient evidence to demonstrate irreparable injury, even without the presumption as discussed above.

of the consumers.").  Here, however, the court has already found that plaintiff has put forth sufficient evidence in the form of a survey, and anecdotal social media and consumer comments, to support a finding that the reputation of its light beers has been injured by the challenged, misleading advertisements, or at least to rebut defendant's sales evidence to the contrary.[26]

There is one important caveat or clarification as to this finding, which is material to how the court has crafted the injunction below.  In discussing the plaintiff's evidence of reputational injury in *Danone*, the court observed:

> Dannon offers not a shred of evidence tending to suggest that its reputation would be harmed if Chobani were allowed to advertise that it had 33% less sugar (as opposed to some slightly lower number that might be more accurate), but would not be harmed if mom just looked at the label and saw that Danimals had 9 grams of sugar (which is what ever flavor now has) while Gimmies had 7 or 8.  This Court cannot infer reputational injury to the producer of a higher-sugar product on the record before it.

*Danone*, 362 F. Supp. 2d at 124-25.  In other words, a defendant is only on the hook under the Lanham Act for any reputational harm caused by the alleged misleading statements, and critically any claim of injury cannot be based on truthful statements not susceptible to a claim under the Lanham Act.

Here, if plaintiff's reputation was injured solely, or even principally, by consumer awareness that its products are brewed with or made with corn syrup, this may not serve

---

[26] As pointed out at oral argument, defendant's evidence is hardly conclusive on this point.  Indeed, there is *no* evidence that plaintiff's sales or market share is growing.  Instead, it is stable at best, while *defendant's* sales and market share *is* growing, albeit apparently at the expense of other, smaller competitors.  This begs the question why plaintiff's share of these lost sales has not grown, at least in proportion to its share of the market for light beers.

as a basis for reputational injury.  Instead, in limiting the injunction as described below, the court's finding of injury is only tied to those statements on which the court has concluded plaintiff is likely to succeed.

### III. Balance of Harms and Public Interest

Having found a likelihood of success on the merits as to certain of the alleged misleading statements and a finding of irreparable harm to plaintiff's reputation caused by those same statements, the court further finds that the injunction described below supports the public's interest in truthful advertising.  *Abbott Labs.*, 971 F.2d at 19 ("[T]he public interest in truthful advertising . . . lies at the heart of the Lanham Act.").  Moreover, the court is unpersuaded that any harm to defendant by enjoining it from displaying certain, limited advertisements and print materials outweighs the harm to plaintiff, particularly since defendant's counsel represented it has discontinued most of these ads already (with one exception addressed below).  *See Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 C 4957, 2015 WL 3637740, at *23 (N.D. Ill. June 11, 2015) (Defendant has "no right to make false statements in its advertising, and enjoining it from engaging in unlawful behavior is no hardship at all.").

### IV.  Injunction

Based on the above discussion, the court will grant a limited injunction, enjoining defendant from using the following language in its commercials, print advertisements and social media:

- Bud Light contains "100% less corn syrup";

47

- Bud Light in direct reference to "no corn syrup" without any reference to "brewed with," "made with" or "uses";

- Miller Lite and/or Coors Light and "corn syrup" without including any reference to "brewed with," "made with" or "uses"; and

- Describing "corn syrup" as an ingredient "in" the finished product.

With reference to the above described advertisements, the court specifically intends to include, without limiting, defendant's display of the following advertisements:

- "100% less corn syrup" billboards (Reis Decl., Ex. 20 (dkt. #14-20));[27]

- Second Thespians commercial (Reis Decl., Ex. 13 (dkt. #14-13)); and

- Bud Light King commercial (Reis Decl., Ex. 25 (dkt. #14-25); Harrison Decl., Ex. 38 (dkt. #40-38)).

One final note, at the end of the hearing, plaintiff also urged the court to enjoin "packaging materials," including the following depictions and language, which the court has marked with a red circle:



(Def.'s Hr'g Exs. (dkt. #54-2) 7.)  Because this argument was not advanced in plaintiff's written preliminary injunction submissions, the court declines at this time to include it

---

[27] At the hearing, defendant represented that these billboard advertisements had been removed or were in the process of being removed.  (Hr'g Tr. (dkt. #56) 71.)

within the scope of the injunction, although plaintiff may have until June 3, 2019, to file a supplementary brief explaining why the injunction should cover these non-comparative packaging materials, to which defendant may have until June 10, 2019, to respond, including an estimate of the costs of compliance.  On or before June 10, 2019, defendant should also file any support for issuance of a bond.  Plaintiff may have until June 17, 2019, to respond.

## ORDER

IT IS ORDERED that:

1) Plaintiff MillerCoors, LLC's motion for preliminary injunction (dkt. #8) is GRANTED IN PART AND DENIED IN PART as follows. Defendant Anheuser Busch is PRELIMINARILY ENJOINED from using the following language within ten (10) days of this order in its commercials, print advertising and social media:

   • Bud Light contains "100% less corn syrup";

   • Bud Light in direct reference to "no corn syrup" without any reference to "brewed with," "made with" or "uses";

   • Miller Lite and/or Coors Light and "corn syrup" without including any reference to "brewed with," "made with" or "uses"; and

   • Describing "corn syrup" as an ingredient "in" the finished product.

2) Defendant Anheuser-Busch's motion to dismiss (dkt. #28) is DENIED.

Entered this 24th day of May, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

49