IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MILLERCOORS, LLC,

                Plaintiff,                         OPINION AND ORDER

v.

                                                      19-cv-218-wmc

ANHEUSER-BUSCH COMPANIES, LLC,

                Defendant.

---

For reasons explained in an earlier opinion, this court entered a preliminary injunction prohibiting defendant Anheuser-Busch Companies, LLC, from using misleading advertising to suggest that corn syrup is *in* plaintiff's Miller Lite and Coors Light beers, including emphasizing that corn syrup is *not* in its Bud Light beer in light of a massive advertising campaign intended to suggest just that to consumers. (5/24/19 Op. & Order (dkt. #57).) At the time, however, the court reserved on whether to extend that injunction to Bud Light's packaging because the focus of plaintiff's original motion for preliminary injunction was on television, bill board and print advertising, and the record was not developed sufficiently as to the question of package labeling. Following additional briefing and factual submissions by the parties, the court will now modify its preliminary injunction to cover packaging, but will allow defendant to sell products using the packaging it had on hand as of June 6, 2019, or until March 2, 2020, whichever occurs first.[1]

---

[1] While the parties briefed this packaging issue, plaintiff filed a notice of appeal from entry of the original preliminary injunction. (Dkt. #74.) This court has jurisdiction to modify the injunction. *See* Fed. R. Civ. P. 62(d) ("While an appeal is pending from an interlocutory order . . . . that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, *modify*, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.").

FINDINGS OF FACTS

A. **Overview of Bud Light Packaging**

For beer, secondary packaging is the outer packaging that contains individual bottles and cans. For a 6-pack, 12-pack or 24-pack of Bud Light, the secondary packaging is the outer cardboard package that holds the bottles or cans. The following images reflect the current version of the packaging of the front and side panels of Bud Light's 6-pack of bottles:




(Reis Decl. (dkt. #60) ¶¶ 5-6.)

MillerCoors points out the "no corn syrup" on the front and side panels, and the "see bottom panel" language on the side panels. The bottom panel also states "find out what's *in* your beer" and "learn more at: budlight.com." (Emphasis added.)

Case: 3:19-cv-00218-wmc   Document #: 102   Filed: 09/04/19   Page 3 of 14



(*Id.* ¶ 7.)

Until June 3, 2019, the Bud Light website contained the following images:





(*Id.* ¶¶ 27-28.) The first image states, "We believe you deserve to know what ingredients we put *into* our beer." (Emphasis added.)

The prior injunction required compliance by June 3, and defendant represents that it changed the website images to the following on that date:



(Harrison Decl., Ex. 1 (dkt. #68-1).) The language has been modified to now read, "We believe you deserve to know what ingredients we *use* to brew our beer." (Emphasis added.) Moreover, the second image displayed above was replaced with the following image:



(Harrison Decl., Ex. 2 (dkt. #68-2).)[2]

---

[2] Plaintiff also includes images of so-called "Bud Light extensions," referring to Bud Light Lime, Bud Light Orange, and Bud Light Lemon Tea, all of which also contain the "no corn syrup" language. (Pl.'s Suppl. PFOFs (dkt. #59) ¶¶ 127-38; *see also* Reis Decl., Ex. 1 (dkt. #60-1).) Because those products are also identified as Bud Light and have the same language as the core product, the court's analysis applies with equal effect.

4

B. **Light Beer Retail Displays**

At least some retail displays of Bud Light are displayed alongside packages of Miller Lite and Coors Lights, as depicted below:



(Reis Decl, Ex. 2 (dkt. #60-2) 4.)

Ryan Reis, MillerCoors Vice President of the Coors family of brands, avers that packages of Bud Light are "almost always" displayed at retail alongside packages of Coors Light and Miller Lite (Pl.'s Suppl. PFOFs (dkt. #59) ¶¶ 146-47), an assertion defendant purports to dispute solely because it is only supported by Reis's "say-so," but provides no

5

contrary opinion or experience evidence. Reis also represents that there is "nearly total overlap between Miller Lite and Bud Light distribution and retail" (*id.* ¶ 148), which defendant purports to dispute on the same basis. According to an unspecified Nielsen report, Bud Light, Coors Light and Miller Lite also comprise 100% of the national premium light beer market.

### C. Packaging as a Driver of Purchasing

Reis avers that secondary packaging is an effective way to drive purchasing decisions because it communicates claims about the product to consumers at the point-of-purchase. Defendant challenges Reis's ability to provide such statements on two grounds: lack of personal knowledge or expertise on consumer behavior. Given Reis's current role and past education and experience in marketing and brand management, including at MillerCoors (Reis Decl. (dkt. #14) ¶¶ 2-4), both grounds fall flat. Indeed, Reis's background and expertise appear to make him eminently qualified to testify about the marketing of beer.

The parties also offer competing customer studies in support of their respective positions. MillerCoors points to a Neilsen report showing that 32% of Baby Boomers, 47% of Generation X and 60% of Millennials have not yet decided which brand of beer to purchase when they enter a store. (Reis Decl. (dkt. #60) ¶ 35.) In contrast, Anheuser-Busch points to Mintel's 2018 consumer research report on beer and craft beer, showing that packing is not an important factor in deciding what beer to purchase for 91% of beer purchasers and for 94% of non-craft beer drinkers, the latter of which include drinkers of light beer, but does not disclose whether light beer purchasers fall above or below that percentage. (Saini Decl. (dkt. #66) ¶¶ 3-6.)

### D. Bud Light's Survey

Defendant further commissioned its own survey to undermine plaintiff's claim of a likelihood of consumer confusion with respect to the challenged statements on the packaging. Specifically, Philip Johnson, a market research survey expert, conducted a survey of 625 light beer drinkers. The participants were shown either a test or control version of the side or front panels of Bud Light's 12-pack bottle packaging. The only difference between the test and control was that the control had the "no corn syrup" language and icon removed.

After reviewing the front image for 10 seconds and the side image for 10 seconds, participants were asked a series of open ended questions, including: "In your own words, what as the main message, if any, on the package you just saw? Please describe it as best as you can. What else, if anything, did the information on the package say or suggest to you?" (Johnson Decl. (dkt. #65) ¶ 23.) In response to this question, zero respondents in either group mentioned Miller Lite or Coors Light. The majority of respondents reported that the main message conveyed by the packaging is Bud Light's ingredients. For those respondents who correctly identified Bud Light or Budweiser as the brand of beer shown in the packaging, they were then asked, "Did the package say or suggest <u>OR</u> did the package not say or suggest something about any other brand or brands of beer?" (*Id.* ¶ 26.) In response, 28% of the test group and 23% of the control group answered that the packaging did say or suggest something about other brands. Those respondents were then asked, "[w]hat other brand of beer did the package say or suggest something about?," to which only one respondent in the test group identified Miller Lite or Coors Light. (Johnson Reply

7

Decl. (dkt. #83) ¶ 22.)  When asked what the packaging says or suggests about other brands of beer, 3% of the test respondents reporting receiving any message about other brands of beer having or using corn syrup.  (Johnson Decl. (dkt. #65) ¶¶ 30-31.)

### E.  Costs

As of June 6, 2019, the total value of unused secondary packaging for Bud Light products containing the "no corn syrup" icon and language is $27,711,176, which amounts to 69,471,463 packages.[3]  This packaging had not yet been used to pack Bud Light products, nor had it been shipped to distributors or retailers.  Also as of June 6, 2019, defendant has 1,326,587 cases of finished beer for Bud Light that have been packaged into secondary containers but that have not yet left A-B's breweries or warehouses.  The value of the product in this packaging is approximately $5,000,000.  Defendant also represents that its quality control policy requires secondary packaging be used within 270 days.  Therefore, the packaging available as of June 6, 2019, will "expire" by early March 2020.

## OPINION

The court will not recount the standard governing plaintiff's motion for preliminary injunction other than its burden to demonstrate some likelihood of success in proving the challenged statements on defendant's packaging have "the tendency to deceive a substantial segment of its audience."  (5/24/19 Op. & Order (dkt. #57) 18-20 (citing

---

[3] In its reply brief, plaintiff suggests that defendant could apply stickers to the packaging.  In a sur-reply, defendant maintains that the sticker would cost $1.10 per package, apparently three times the cost of the packaging itself, resulting in a total cost of over $76 million.  This strikes the court as an absurdly high estimation, but the court need not weigh this cost for the reasons that follow.

*Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018); *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 382 (7th Cir. 2018)).) Under the Lanham Act, such false advertising "violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002).[4]

At the end of its prior order, the court described the packaging as "non-comparative" (5/24/19 Op. & Order (dkt. #57) 49), which defendant now characterizes as a "ruling." (Def.'s Opp'n (dkt. #63) 2.) However, the court expressly declined to rule on the packaging without additional submissions by the parties and merely chose that adjective to draw a contrast with the Second Thespians commercial and the series of billboards, both of which referenced Bud Light's "no corn syrup" in close proximity to Miller Lite's or Coors Light's "corn syrup." (5/24/19 Op. & Order (dkt. #57) 8, 10, 32-33.) While the packaging now at issue does not mention Miller Lite or Coors Light, that does not mean that it is not actionable under the Lanham Act. *See, e.g., Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 162 (2d Cir. 2007) ("Given the nearly binary structure of the television services market, it would be obvious to consumers that DIRECTV's claims of superiority are aimed at diminishing the value of cable—which, as discussed above, is synonymous with TWC in the areas covered by the preliminary injunction. Therefore, although the Revised Simpson Commercial does not explicitly mention TWC or cable, it 'necessarily diminishes' the value

---

[4] In its prior opinion and order, this court noted that at least the Third Circuit has extended to Lanham Act false advertisement claims, the Supreme Court's holding in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006), requiring a movant to supply evidence to support as to each element to obtain injunctive relief in the patent context, although the Seventh Circuit has not. (5/24/19 Op. & Order (dkt. #57) 45 n.25.)

of TWC's product.").

Viewed in context of the full advertising campaign, a reasonable jury could find that the implicit message of the packaging is that other beers contain corn syrup. *See Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 15 (7th Cir. 1992) ("The presence of this implied message is even more pronounced when viewed in the context of Mead's entire promotional campaign."). Moreover, in light of the limited number of beers in the light beer market, with Bud Light, Miller Lite and Coors Light accounting for almost 100% of sales, that same jury could also find a substantial segment of consumers would infer that Bud Light's principal competitors contain corn syrup, especially after a hundred million dollar television and print campaign misleadingly suggesting the same thing.

Defendant challenges whether the court should consider the challenged packaging in light of this full advertising campaign, but the cases it cites in support are distinguishable for the reasons plaintiff points out. For example, the district court in *Ameritox, Ltd. v. Millennium Laboratories, Inc.*, 889 F. Supp. 2d 1304 (M.D. Fla. 2012), found "eight distinct representations," that were sufficiently discrete to be considered as a whole. *Id.* at 1309-11. In contrast, defendant's "corn syrup" / "no corn syrup" language was part of an intentional, coordinated campaign used in both the previously enjoined advertisements and the packaging at issue in the present opinion. *See also Am. Muscle Docks & Fabrication LLC v. Merco, Inc.*, 187 F. Supp. 3d 694, 702-03 (N.D. W. Va. 2016) (discussing two distinct representations, one concerning quality and the other concerning who originated the company).

Defendant also cites to *Pizza Hut, Inc v. Papa John's International, Inc.*, 227 F.3d 489

(5th Cir. 2000), but that case is similarly inapposite. In that case, the Fifth Circuit concluded that the district court's injunction preventing Papa John's from using its slogan "Better Ingredients. Better Pizza" was too expansive given the lack of evidence "that the slogan has become forever 'tainted' by its use as the tag line in [a] handful of misleading comparison ads." *Id.* at 502 n.11. But defendant's comparison to that injunction ignores this court's substantially more limited, preliminary injunction, which not only does not enjoin defendant from using the word "ingredients" or discussing Bud Light's ingredients, or even prevent it from emphasizing its use of rice over corn syrup in brewing its beer. Moreover, the Fifth Circuit's holding in *Pizza Hut* in no way undermines consideration of the full advertising campaign in assessing the scope of an injunction for statements on packaging.

Putting aside this legal argument, defendant also challenges the extent to which plaintiff may rely on the larger advertising campaign to demonstrate a likelihood of confusion as a factual matter. As described above, defendant's commissioned survey casts doubt both on consumers linking the packaging to (1) another beer brand and (2) a statement about corn syrup. In response, plaintiff's expert Yoram (Jerry) Wind, Ph.D. offered several criticisms of Johnson's approach, some of which may well have traction with a reasonable jury. (Suppl. Wind Decl. (dkt. #70).) Certainly, the court is skeptical that a reasonable jury would accept Wind's argument that the survey is flawed because respondents were not shown the bottom of the packaging, at least absent some evidence that a substantial segment of beer purchasers examine the bottom of packaging in deciding which beer to purchase (or at least that retailers regularly stack product to display the

11

bottom of packaging). Other criticisms, however, might well be accepted, including: the survey was not conducted in a retail setting *next to* Miller Lite and Coors Light packaging; and the limited time (ten seconds per image) respondents had to examine an image of the packaging cuts against the weight of the survey findings. Moreover, Wind raises valid challenges to Johnson's coding of open-ended questions, including Johnson's treatment of references to "other beers." (*Id.* ¶¶ 31-33.) While a jury may ultimately credit Johnson's opinions based on his survey, plaintiff has at least demonstrated some likelihood of success in proving to a reasonable jury that the Bud Light packaging's continued use of the now-well-known tag lines "no corn syrup" and "find out what is in your beer" when on display next to Miller Lite and Coors Lite packaging is likely to be misleading, at least viewed in the context of defendant's full advertising campaign.

Contrary to defendant spending tens of millions of dollars on special packaging closely attuned to its larger advertising effort, defendant also challenges the importance of packaging and, specifically, whether statements on packaging are material to consumers' decisions. *See LG Elec. v. Whirlpool*, No. 08 C 242, 2010 WL 2921633, at *3 (N.D. Ill. July 22, 2010) ("Materiality is an element of an implied falsity claim."). In support, defendant primarily relies on the market research report by Mintel Group as previously described above. As Dr. Wind observes, however, defendant points to the relatively low percentage of beer buyers who rely on cosmetic "label / packaging design" like choice of font, color or layout of the packaging, to drive their purchase decision, not to the issues in this case, which extend to substantive concerns about nutritional value. (Wind Suppl. Decl. (dkt. #70) ¶ 18.) In contrast, the declaration of MillerCoors Vice President Ryan Reis and the

Nielsen study provide an evidentiary basis for a reasonable factfinder to conclude that statements on packaging, especially when influenced by a larger advertising campaign, are likely to be material. Moreover, defendant's position that packaging is *not* material to the packaging decision is contradicted in its sur-reply, which contends that its consumers would not tolerate stickering over certain words. (Def.'s Sur-reply (dkt. #80) 3.)

For these reasons, the court concludes that plaintiff has demonstrated some likelihood of success on the merits and benefits from a presumption of irreparable harm. Still, given the lack of *express* comparative statements on the packaging and the significant harm to defendant in having to replace its packaging materials, both financial and possible interruption in product distribution, the court concludes that a more tailored injunction is appropriate. Defendant may sell Bud Light using the packaging it had on hand as of June 6, 2019, or until March 2, 2020 (270 days from June 6, 2019), whichever occurs first. After that date, however, defendant shall remove the "no corn syrup" language *and* icon from its packaging until resolution of this case or the preliminary injunction is lifted.[5]

As directed by the court, defendant briefed the issue of the amount of bond sought if the court were to enjoin packaging. Because the injunction ordered by the court was not addressed in defendant's brief, the court will permit defendant until September 17, 2019,

---

[5] The court understands that plaintiff may view this modified injunction as providing very limited relief, but without more evidence, the court is unable to discern whether consumers may be harmed by requiring a more aggressive deadline for replacing packaging. The court is open to a motion to modify the preliminary injunction with an earlier deadline for defendant to change its packaging if plaintiff can show either that the sticker option is a feasible option for existing packaging or how soon defendant could practically obtain replacement packaging without interrupting its ability to offer Bud Light for sale. Of course, this would likely require the posting of a far higher bond to account for stickering over misleading language or rendering old packaging unusable.

to file a motion seeking a *reasonable* bond. Plaintiff may have until September 27, 2019, to respond. If the court concludes that a bond is required, the court will require plaintiff to satisfy its obligation by securing a letter of credit.

ORDER

IT IS ORDERED that the preliminary injunction entered May 24, 2019, is MODIFIED to include the following: Defendant Anheuser Busch is PRELIMINARILY ENJOINED from using the "no corn syrup" language and icon on its packaging after it exhausts the challenged packaging on hand as of June 6, 2019, or on March 2, 2020 (270 days from June 6, 2019), whichever occurs first.

Entered this 4th day of September, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge