**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| **MILLERCOORS, LLC,** | ) | |
| | ) | |
| **Plaintiff/Counterclaim Defendant,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19-cv-218-WMC** |
| | ) | |
| **ANHEUSER-BUSCH COMPANIES, LLC,** | ) | |
| | ) | |
| **Defendant/Counterclaimant,** | ) | |
| | ) | |

**Anheuser-Busch Companies, LLC's Amended Answer to MillerCoors, LLC's First Amended Complaint and Counterclaim against MillerCoors, LLC**

## AMENDED ANSWER

Comes now Defendant Anheuser-Busch Companies, LLC ("AB"), and for its Amended Answer, Affirmative Defenses, and Jury Trial Demand relating to MillerCoors, LLC's First Amended Complaint for Injunctive and other Relief:

### Response to "PRELIMINARY STATEMENT"

AB admits it makes and sells Bud Light beer. AB further admits that Bud Light has run truthful advertisements that accurately describe MillerCoors' use of corn syrup as an ingredient for Miller Light and Coors Light, which MillerCoors has publicly disclosed as "Ingredients" on its webpages and elsewhere. AB further states that corn syrup is a less expensive ingredient than rice. AB further admits that its truthful advertisements are designed to increase transparency in ingredients. AB admits it uses corn syrup in some products, such as its value products, Natural Light and Busch Light.

1

████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

█████████████████████████

AB denies all other allegations set forth in the Preliminary Statement.  AB further denies that MillerCoors is entitled to any relief requested in its Complaint.

## Response to "INTRODUCTION"

1.      AB admits that Bud Light ran advertisements during Super Bowl LIII that discussed beer ingredients and states that those advertisements accurately described the ingredients used to brew Miller Lite and Coors Light and that those ingredients include corn syrup.  AB admits that nearly 100 million people viewed the Super Bowl.  Except as so stated, the allegations in Paragraph 1 are denied.

2.      AB admits that Bud Light aired television advertisements during Super Bowl LIII that discussed beer ingredients and that those advertisements accurately stated that Miller Lite and Coors Light both use corn syrup as an ingredient.  AB further admits that Bud Light does not

use corn syrup as an ingredient and that its ingredients are water, rice, barley, and hops.  AB specifically denies that the advertisements were mocking in nature and that the advertisements suggested that Miller Lite and Coors Light used only corn syrup and "no other ingredients."  To the extent this paragraph purports to quote, paraphrase, or characterize the Bud Light advertisements, the advertisements speak for themselves and all statements therein must be considered in context.  Except as so stated, the allegations in Paragraph 2 are denied.

3.      Denied.  Bud Light had no intent to mislead consumers.  To the extent this paragraph purports to quote, paraphrase, or characterize an article purportedly found at https://www.foodandwine.com, any such article speaks for itself and the selective quotations in this paragraph are misleading.  Further, all statements in the interview must be read in context, which includes the actual Bud Light advertisements.

4.      Denied.  The use of quotation marks suggests that Mr. Goeler stated that when consumers drink Miller Lite or Coors Light that they put corn syrup in their bodies.  He did not say that.  MillerCoors has admitted corn syrup is used as an ingredient for both beers.  Further answering, corn syrup sugars and byproducts are present in the finished Miller Lite and Coors Light beers.

5.      Denied.  AB's advertisements make no claims about HFCS.  Further answering, the Beer Business Daily article does not claim to quote Mr. Goeler.  In fact, Mr. Goeler stated that consumers "absolutely" did understand the difference between HFCS and corn syrup and that consumers preferred their products to include neither as an ingredient.

6.      Denied.

7.      Denied.  MillerCoors has repeatedly admitted that corn syrup is an ingredient used to brew Miller Lite and Coors Light and that those beers are "brewed with" corn syrup and

"made with" corn syrup. Corn syrup is an ingredient and not just part of the "fermentation process" for Coors Light and Miller Lite. It is used by MillerCoors as a substitute for more expensive ingredients like rice. Corn syrup sugars and byproducts are present in the finished Miller Lite and Coors Light beers. The degree of fermentation of MillerCoors's corn syrup ingredient is less than 100 percent. MillerCoors has admitted that corn syrup affects the taste of the beers. AB further denies that "there is no HFCS in any of MillerCoors products." ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8.      Denied. Further answering, AB states that the term "sugar or carbohydrate" is vague because it suggests that using pre-processed corn syrup in brewing is the same as using ingredients like rice. Use of pre-processed corn syrup is not "intrinsic to all beer making," but instead is a substitute for more expensive ingredients such as rice. AB specifically denies that corn syrup is used only for fermentation and denies that use of pre-processed corn syrup permits underlying hops and malt to "shine through." Corn syrup sugars and byproducts are present in the finished Miller Lite and Coors Light beers. The degree of fermentation of MillerCoors's corn syrup ingredient is less than 100 percent.

9.      AB denies that Bud Light's advertisements encourage any consumers to draw any incorrect conclusions about any products mentioned in the advertisements. AB admits it uses corn syrup in brewing certain beers sold at value price points, such as Busch Light and Natural Light. Further admitted that corn syrup is used in other alcohol beverages, such as Stella Artois Cidre, Stella Artois Spritzer, and Bon & Viv. Further admitted that HFCS is used in certain other products. Further admitted that AB does not contend that corn syrup or HFCS is harmful to human health. Except as so stated, the allegations in Paragraph 9 are denied.

10.     AB denies that corn syrup is a "brewing adjunct" and not an ingredient.  AB admits that at different times reporters and other competitors of MillerCoors have made public that MillerCoors uses corn syrup.  AB also admits that one can locate MillerCoors' ingredients list on its websites.  AB lacks information regarding whether MillerCoors is ashamed of its use of corn syrup and therefore denies same.  AB further states that corn syrup is clearly an ingredient used to brew Miller Lite and Coors Light; and that those ingredients are not disclosed on MillerCoors packaging or bottles or cans.  Except as so stated, the allegations in Paragraph 10 are denied.

11.     Denied.  Corn syrup sugars and byproducts are present in the finished Miller Lite and Coors Light beers.  The sugars that are present in those final beers come from two sources: corn syrup and malted barley.  Corn syrup byproducts, such as sulfated ash, are also present in the final beers.  The degree of fermentation of MillerCoors's corn syrup ingredient is less than 100 percent. ███████████████████████████████████████ ███████████████████████████████████ AB also denies the final three sentences of Paragraph 11.

12.     Denied.

13.     AB admits that Bud Light has spent millions of dollars on advertising for Bud Light designed to encourage transparency in ingredients and that those advertisements are resonating with consumers who are interested in selecting products that are transparent about ingredients.  To the extent this paragraph purports to characterize those advertisements, the advertisements speak for themselves and all statements therein must be considered in context.  Except as so stated, the allegations in Paragraph 13 are denied.

14.     Denied.

15.      Denied.

16.      AB admits that in the brewing of light American lager beers, the use of corn syrup is cheaper than the use of rice.  Except as so stated, the allegations in Paragraph 16 are denied.

17.      Denied.

18.      AB admits that MillerCoors has filed this lawsuit, but denies that it has any merit or that MillerCoors is entitled to any relief.

**Response to "JURISDICTION AND VENUE"**

19.      Paragraph 19 states a legal conclusion for which no response is required.  If a response is deemed to be required, AB denies the allegations of paragraph 19.  AB specifically denies that it has caused any injury to anyone.

20.      Paragraph 20 states a legal conclusion for which no response is required.  If a response is deemed to be required, AB denies the allegations of paragraph 20 in that no count is based on any state law claims.

21.      Paragraph 21 states a legal conclusion for which no response is required.  If a response is deemed to be required, and except as so stated, AB denies the allegations of paragraph 21.

**Response to "THE PARTIES"**

22.      AB lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22 and therefore denies the same.

23.      Admitted.

**Response to "FACTS"**

24.      AB lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24 and therefore denies the same.

25.     AB denies that MillerCoors and its predecessor has sold "a number of iconic brands."  AB admits that Bud Light is the best-selling light beer in the United States and that data reports that Miller Lite and Coors Light are the second and third best-selling brands in that category.  AB further admits that MillerCoors brews and sells Coors Light and Miller Lite.  AB lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 25 and therefore denies the same.

26.     AB lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26 and therefore denies the same.

27.     AB lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27 and therefore denies the same.

28.     AB lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28 and therefore denies the same.

29.     AB lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 29 and therefore denies the same.

30.     AB lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 30 and therefore denies the same.

31.     AB lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 31 and therefore denies the same.

32.     AB lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32 and therefore denies the same.

33.     Denied.  Further answering, AB states that corn syrup is an ingredient used to brew Coors Light and Miller Lite and it is not a fermentation aid.  Corn syrup sugars and

byproducts are present in the finished Miller Lite and Coors Light beers.  The degree of fermentation of MillerCoors's corn syrup ingredient is less than 100 percent.

34.     Denied.  Corn syrup sugars and byproducts are present in the finished Miller Lite and Coors Light beers.  The sugars that are present in those final beers come from two sources: corn syrup and malted barley.  Corn syrup byproducts, such as sulfated ash, are also present in the final beers.  The degree of fermentation of MillerCoors's corn syrup ingredient is less than 100 percent. ████████████████████████████████████ ████████████████████████████████

35.     AB admits that Bud Light's ingredients are barley, rice, water, and hops and that rice is a carbohydrate.  AB denies that use of these ingredients is "like" the use of corn syrup and denies that corn syrup in the case of Miller Lite and Coors Light is used as a "fermentation adjunct" and not an ingredient.  Corn syrup sugars and byproducts are present in the finished Miller Lite and Coors Light beers.  AB admits that it uses corn syrup in some products other than Bud Light, such as Natural Light and Busch Light, and states that it makes no health or safety claims in its advertising.  Except as so stated, the allegations of Paragraph 35 are denied.

36.     AB lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 36 and therefore denies same.

37.     AB lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 37 and therefore denies same.

38.     AB lacks information or knowledge sufficient to form a belief as to the truth of the allegations of the first sentence of Paragraph 38 and therefore denies same.  AB denies the second sentence of Paragraph 38.

39.     AB admits that Bud Light ran advertisements during Super Bowl LIII and that the Super Bowl has viewership approaching 100 million people.  AB further admits that it spent millions of dollars on the commercials and that the commercials have high-quality production elements and special effects.  AB denies that any Super Bowl LIII advertising campaign for Bud Light was false or misleading.  AB further states that MillerCoors itself has repeatedly admitted that Miller Lite and Coors Light are "made with" and "brewed with" corn syrup.  Except as so stated, the allegations of Paragraph 39 are denied.

40.     AB admits that reports indicate that over 90 million people viewed Super Bowl LIII and that reports indicate that millions more engaged in social media activity.  Except as so admitted, AB lacks information and knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 40 and therefore denies same.

41.     AB admits that Bud Light aired television advertisements during Super Bowl LIII and that those advertisements cost millions of dollars.  The remaining allegations contain inaccurate and incomplete descriptions of Bud Light's advertisements and AB denies them.  Further answering, AB states that advertisements for Bud Light did accurately and lawfully compare the ingredients of Bud Light to those used to brew Miller Lite and Coors Light.

42.     Denied.

43.     AB admits that Bud Light ran a 60-second commercial titled "Special Delivery," the content of which speaks for itself.  AB lacks information sufficient to form a belief as to the truth of the allegation that the first quarter had the maximum audience that was focused on the game and commercials.  In that this paragraph purports to quote, paraphrase, or characterize the advertisement it is incomplete and misleading without context such that AB denies the

allegations describing the advertisement.  Except as so stated, the allegations in Paragraph 43 are denied.

44.    AB admits that the photograph appears to be a screen shot of one frame of a 60-second commercial.  AB further states that the advertisement speaks for itself and that all statements and images must be considered in context.

45.    Denied.

46.    AB admits that the advertisement accurately communicates that corn syrup is not an ingredient of Bud Light and accurately communicates that Miller Lite does use corn syrup. AB admits that in the advertisement the Bud Light King and his entourage do embark at once on a dangerous journey to deliver the corn syrup to the Miller Lite Kingdom.  AB further states that the advertisement speaks for itself and that all statements must be considered in context.  Except as so stated, the allegations of Paragraph 46 are denied.

47.    AB admits that the quoted words are contained in the commercial and further states that the advertisement speaks for itself and that all statements must be considered in context.

48.    AB admits that the photograph appears to be a screen shot of one frame of a 60-second commercial.  AB further states that the advertisement speaks for itself and that all statements and images must be considered in context.

49.    AB admits that the quoted words are contained in the commercial and further states that the advertisement speaks for itself and that all statements must be considered in context.  AB denies that the man atop the Coors Light castle is "bumbling."

50.     AB admits that the photograph appears to be a screen shot of one frame of a 60-second commercial.  AB further states that the advertisement speaks for itself and that all statements and images must be considered in context.

51.     Denied.

52.     AB admits that the photograph appears to be a screen shot of one frame of a 60-second commercial.  AB further states that the advertisement speaks for itself and that all statements and images must be considered in context.  AB admits that Bud Light is brewed with no corn syrup.

53.     AB admits that Bud Light aired its Special Delivery advertisement during and after Super Bowl LIII on multiple networks and that it is active on other social media platforms.  AB lacks knowledge or information sufficient to form a belief as to whether all described networks ran the advertisement as scheduled and therefore denies same.  Except as so stated, the allegations in Paragraph 53 are denied.

54.     AB admits that Bud Light aired a commercial called "Medieval Barbers" involving barbers in the Bud Light Kingdom who accurately recite the ingredients used to brew Bud Light and Coors Light.  Further answering, AB states that because Paragraph 54 is an incomplete description of the advertisement as a whole and the advertisement speaks for itself, AB denies the allegations of Paragraph 54 except as expressly so admitted.

55.     AB admits that the photograph appears to be a screen shot of one frame of the commercial.  AB further states that the advertisement speaks for itself and that all statements and images must be considered in context.

56.     AB admits that Bud Light's "Medieval Barbers" advertisement aired during and after Super Bowl LIII on multiple networks and that it was active on other social media

platforms.  AB further states that it is no longer actively running "Medieval Barbers" with any paid media.  AB lacks knowledge or information sufficient to form a belief as to whether all described networks ran the advertisement as scheduled and therefore denies same.  Except as so stated, the allegations of Paragraph 56 are denied.

57.     AB admits that Bud Light aired a commercial called "Trojan Horse" involving soldiers in the Bud Light Kingdom and who accurately recite the ingredients used to brew Bud Light and Miller Light.  Further answering, AB states that because Paragraph 54 is an incomplete description of the advertisement as a whole and the advertisement speaks for itself, AB denies the allegations of Paragraph 57 except as expressly so admitted.

58.     AB admits that the photograph appears to be a screen shot of one frame of the commercial.  AB further states that the advertisement speaks for itself and that all statements and images must be considered in context.

59.     AB admits that Bud Light aired a commercial called "Trojan Horse" involving soldiers in the Bud Light Kingdom and who accurately recite the ingredients used to brew Bud Light and Miller Light and include the words set out in Paragraph 59.  AB denies that the soldiers were shushed because ingredients were intended to be secret.  Rather, the soldiers were in a Trojan Horse trying to sneak into a city and therefore needed to be quiet.  Further answering, AB states that because Paragraph 59 is an incomplete description of the advertisement as a whole and the advertisement speaks for itself, AB denies the allegations of Paragraph 59 except as expressly so admitted.

60.     AB admits that the photograph appears to be a screen shot of one frame of the commercial.  AB further states that the advertisement speaks for itself and that all statements and

images must be considered in context.  AB further admits that Bud Light is brewed with no corn syrup.

61.    AB admits that Bud Light aired its "Trojan Horse" advertisement during and after Super Bowl LIII on multiple networks and that it was active on other social media platforms.  AB further states that it is no longer actively running "Trojan Horse" with any paid media.  AB lacks knowledge or information sufficient to form a belief as to whether all described networks ran the advertisement as scheduled and therefore denies same.  Except as so stated, the allegations in Paragraph 61 are denied.

62.    AB denies that any Bud Light advertisements or its campaign were false or misleading.  AB admits that the "Mountain Men" advertisement involved actors accurately reciting ingredients and that Paragraph 62 accurately describes the ingredients used to brew Bud Light, Coors Light, and Miller Lite.  Further answering, AB states that because Paragraph 62 is an incomplete description of the advertisement as a whole and the advertisement speaks for itself, AB denies the allegations of Paragraph 62 except as expressly so admitted.

63.    AB admits that the photograph appears to be a screen shot of one frame of the commercial.  AB further states that the advertisement speaks for itself and that all statements and images must be considered in context.  AB admits that Bud Light is brewed with no corn syrup.

64.    AB admits that Bud Light ran an advertisement that involved cave explorers accurately reciting ingredients and that that allegations of Paragraph 64 accurately describe the ingredients used to brew Bud Light and Coors Light.  Further answering, AB states that because Paragraph 64 is an incomplete description of the advertisement as a whole and the advertisement speaks for itself, AB denies the allegations of Paragraph 64 except as expressly so admitted.

13

65.     AB admits that the photograph appears to be a screen shot of one frame of the commercial.  AB further states that the advertisement speaks for itself and that all statements and images must be considered in context.  AB admits Bud Light is brewed with no corn syrup.

66.     Denied.  The allegation misquotes the advertisement.

67.     AB admits that the photograph appears to be a screen shot of one frame of the commercial.  AB further states that the advertisement speaks for itself and that all statements and images must be considered in context.  AB admits Bud Light is brewed with no corn syrup.

68.     AB denies that it ran the advertisement referenced in paragraph 68 on television during the Oscars.  AB admits that Bud Light ran an advertisement on social media that involved two actors and music.  AB further admits that the photograph appears to be a screen shot of one frame of that advertisement.  Further answering, because Paragraph 68 is an incomplete description of the advertisement as a whole and the advertisement speaks for itself, AB denies the allegations of Paragraph 68 except as expressly so admitted.

69.     Denied.

70.     Denied, except that AB admits that the Bud Light Super Bowl LIII advertisements were part of an overall advertising campaign revolving around transparency in ingredients and that after Super Bowl LIII, Bud Light has continued to air the "Special Delivery" advertisement and conducted other advertisements, including commercials, point-of-sale advertising, print advertising, social media, packaging materials, billboards, and signs, all designed to accurately communicate the ingredients used to brew Bud Light, Coors Light and Miller Light.

71.     AB denies that it made any false statements and that any advertisement was in response to "backlash."  AB admits that the Bud Light King has stated (truthfully) that corn syrup is less expensive and that Bud Light is brewed with rice, hops, barely and water even

14

though it would be cheaper to use corn syrup.  Except as expressly so admitted, the allegations of

Paragraph 71 are denied.

72.     AB admits that the photograph appears to be a screen shot of the February 6, 2019

Twitter post.  AB further states that the post speaks for itself and that all statements and images

must be considered in context.

73.     AB denies that it has discussed corn as an ingredient versus corn syrup.  AB

admits that corn syrup is a less expensive ingredient than rice and that AB charges less for

Busch, Busch Light, and Natural Light, which can at times use corn syrup (as well as corn).

Further answering, AB states that the allegations of Paragraph 73 contain ellipses and are a very

shortened version of Mr. Goeler's public statements and so the remaining allegations of

Paragraph 73 are denied.

74.     Denied.

75.     AB admits that it began selling Bud Light in updated secondary packaging after

Super Bowl LIII and that the picture in Paragraph 75 appears to accurately depict a portion of

that packaging.  AB further states that the packaging speaks for itself and that all statements and

images must be considered in context.

76.     AB admits that it began selling Bud Light in updated secondary packaging after

Super Bowl LIII and that the packaging contains in part the quoted language in Paragraph 76.

AB further states that the content speaks for itself such that the allegations of Paragraph 76 are

denied except as expressly so admitted.  AB specifically denies the alleged implications of the

packaging.

77.     AB admits that it began selling Bud Light in updated secondary packaging after

Super Bowl LIII and that the packaging contains in part the quoted language in Paragraph 77.

AB also admits that the pictures in Paragraph 77 appear to accurately depict portions of Bud Light's website as it appeared prior to the Court's preliminary injunction order in this case.  AB further states the pictures in Paragraph 77 no longer appear on Bud Light's website and that they have not appeared on Bud Light's website since the compliance date set in the Court's preliminary injunction order.  AB further states that the packaging speaks for itself and that all statements and images must be considered in context.

78.     AB admits that it has created secondary packaging for Bud Light Orange, Bud Light Lime, and Bud Light Lemon Tea, each of which contains in part the quoted language in Paragraph 76.  AB further states that the packaging for each of these products speaks for itself and that all statements and images must be considered in context.

79.     Denied.

80.     Denied, except to admit that Bud Light has placed accurate and truthful print advertisements that describe the ingredients of Bud Light and that the photograph appears to be of one such advertisement.

81.     Denied, except to admit that Bud Light has placed accurate and truthful billboard advertisements that describe the ingredients of Bud Light and that the photographs in Paragraph 79 appear to be of two such billboard advertisements.  AB further states that the advertisement speaks for itself and that all statements and images must be considered in context.

82.     AB admits that it ran an advertisement containing the quoted language in Paragraph 82.  AB further states that the advertisement speaks for itself and that all statements must be considered in context.

83.     Denied.

84.     Denied.

16

85.     Denied.

86.      AB admits that the photograph appears to be an accurate picture of a Natural Light Twitter post that has been removed.

87.     Denied.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Denied.  Further answering, AB lacks knowledge or information sufficient to form a belief as to the truth of the allegations about Josh Charles' Twitter account and therefore denies the same.

96.     Denied.  Further answering, AB lacks knowledge or information sufficient to form a belief as to the truth of the allegations about the referenced Facebook account and therefore denies the same.

97.     Denied.

98.     AB admits that it previously ran a radio ad for Bud Light containing the quoted language in Paragraph 98.  AB stopped running this ad on May 10, 2019.  The ad compared the brewing process for Miller Lite versus Bud Light and expressly stated, "Miller Lite brews with … corn syrup."  The ad accurately stated that the ingredients of Miller Lite could be accessed through a PDF on the company's website.

99.     AB lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 99 and therefore denies the same.

100.    Denied.

101.    Denied.

102.    Denied.

## Response to "FIRST CAUSE OF ACTION FOR FALSE ADVERTISING (Lanham Act Violation. 15 U.S.C. § 1125(a))"

103.    AB incorporates herein by reference its response to each and every allegation contained in Paragraphs 1 through 102 of its Answer.

104.    Admitted.

105.    Denied.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

## Response to "SECOND CAUSE OF ACTION FOR FEDERAL TRADEMARK DILUTION (Lanham Act Violation, 1 5 U. S. C. § 1125(c))"

113.    The court has dismissed MillerCoors's trademark dilution count.  No response is necessary to Paragraphs 113-120.

114.    The court has dismissed MillerCoors's trademark dilution count.  No response is necessary to Paragraphs 113-120.

18

115.     The court has dismissed MillerCoors's trademark dilution count.  No response is necessary to Paragraphs 113-120.

116.     The court has dismissed MillerCoors's trademark dilution count.  No response is necessary to Paragraphs 113-120.

117.     The court has dismissed MillerCoors's trademark dilution count.  No response is necessary to Paragraphs 113-120.

118.     The court has dismissed MillerCoors's trademark dilution count.  No response is necessary to Paragraphs 113-120.

119.     The court has dismissed MillerCoors's trademark dilution count.  No response is necessary to Paragraphs 113-120.

120.     The court has dismissed MillerCoors's trademark dilution count.  No response is necessary to Paragraphs 113-120.

AB denies each and every allegation set forth in the Complaint that is not expressly admitted.  In addition, AB demands a trial by jury on all counts.

## AFFIRMATIVE DEFENSES

As affirmative defenses to MillerCoors's Complaint, and without assuming any burden of pleading or proof that would otherwise rest on MillerCoors, AB alleges the following:

1.     The Complaint fails to state a claim against AB upon which relief may be granted.

2.     The Complaint is barred in whole or part by the doctrines of laches, unclean hands, waiver/forfeiture, and estoppel.  MillerCoors waited to file its complaint for seven weeks. MillerCoors has engaged in conduct in the marketplace that has a material relation to the equitable relief it seeks and therefore renders it ineligible for relief in this case.  ███████

███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ With respect to its unclean hands defense, AB

further states:

    a.   MillerCoors has advertised false statements on the issue of high fructose corn

syrup, a matter that is materially related to its request for equitable relief in this

case. MillerCoors filed a sworn declaration in this Court and has made numerous

public statements – including on Twitter, its "Behind the Beer" blog, and on the

MillerCoors website – claiming that "MillerCoors does not use HFCS in … <u>any

of our products</u>." MillerCoors has repeated this claim in public statements

contending that AB uses high fructose corn syrup in certain products and

disparaging high fructose corn syrup as "Public Health Enemy No. 1." ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

    b.   From February 4, 2019, to the present, MillerCoors has stated repeatedly that

AB's flavored products use high fructose corn syrup while MillerCoors does not.

It also claims that "nutritionists have called [high fructose corn syrup] Public

Health Enemy No. 1." MillerCoors's intention was to link high fructose corn

syrup to a unique health concern to AB's products. ██████████████████

20

██████████████████████████████████████

██████████████████████████████████

████████████████████████████████

c. MillerCoors has advertised false statements on the material issue of corn syrup in

reference to Bud Light's products.  On February 6, 2019, MillerCoors's Chief

Communications Officer, Pete Marino, published a Tweet stating that AB uses

corn syrup in Bud Light Lime and Orange.  This statement is false.  ████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████ This false Tweet is still posted online, ███

████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

████████████████████████████ MillerCoors is

asking in this case that Bud Light Lime and Orange not be allowed to say "no

corn syrup" on packaging ██████████████████████████████

███████████████████

d. MillerCoors has advertised false statements about Bud Light's products in

reference to rice syrup in media interviews.  On February 8, 2019, in an interview

with Cheddar digital media, Mr. Marino, MillerCoors's Chief Communications

Officer, publicly claimed that AB probably uses a rice syrup to make Bud Light.

███████████████████████████████████████████████████████

███████████████████████████████████████

e.   MillerCoors has engaged in false advertising regarding the material issue of its

own corn syrup ingredient.  The current Miller Lite website includes an

Ingredients page that shows an image of an ear of corn beside a description of the

corn syrup used in Miller Lite.  However, ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████

f.   From 2014 to 2019, MillerCoors has publicly listed corn syrup as an ingredient in

Miller Lite and Coors Light on its website.  MillerCoors identifies corn syrup as a

main ingredient in Miller Lite and Coors Light.  ██████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████Even today, MillerCoors continues to

publicly identify corn syrup as an ingredient in Miller Lite and Coors Light.  Bud

Light's Super Bowl ads expressly referred to the MillerCoors website as the

source of information regarding MillerCoors's use of corn syrup.  MillerCoors

contends it is false or misleading for Bud Light to state that Miller Lite and Coors

Light are made with corn syrup even though MillerCoors itself has done the same

for years.

g. MillerCoors has falsely claimed from the Super Bowl until today that its finished beers contain no corn syrup and that the message intended to be communicated from that statement is that all corn syrup sugars ferment and no such sugars are in the final beer. ████████████████████████

████████████████████████████

████████████████████████████

██████████████████

h. ████████████████████████

███████████████████████████

███████████████████████████

████████████████████████████

████████████████████

█████████████████████████████

████████████████████████████

██████████████████████████

█████████████████████████████

████████████████████████████

██████████████████████████

████████████████████████

████████████████████████████

███████████████████████

████████████████████████

██████████████████████████



i. ████████████████████████████████████████

████████████████████████████████████████

████████████████ Limited numbers of AB employees have access to these

Technical Manuals on the computer system.  There is a document control and

confidentiality provision for each.  The confidentiality restriction states that they

are a "controlled document" and "CONFIDENTIAL" and remain the property of

ABI and that "No part of this may be reproduced in any way, even for internal

24

purposes." There is a separate technical manual for each beer, all of which are designated confidential and the property of AB. ████████████████

███████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

███████████████████████████████████

██████████████████████████████████

████████████████████████

3.      MillerCoors's claims are barred because AB's advertisements are literally true.

4.      MillerCoors's claims are barred because the advertising at issue here is true and is not misleading or likely to deceive consumers.

5.      MillerCoors's claims are barred because the advertising at issue does not imply that Bud Light is superior because it is not brewed with corn syrup, and, even if it did, such implications would be mere puffery, and consequently, would not be actionable.

6.      MillerCoors's claims are barred because the advertising at issue uses non-actionable parody and puffery and are humorous.

7.      MillerCoors's claims are barred by the First Amendment.

8.      MillerCoors has failed to mitigate its damages.

9.      Any alleged loss or damage sustained by MillerCoors was directly or proximately caused, in whole or part, by the conduct or fault of persons or entities other than AB.

10.     MillerCoors has failed to allege facts sufficient to support a claim for attorneys' fees or costs.

25

11.     AB expressly reserves the right to add additional affirmative defenses as may be revealed through investigation, preparation, or discovery and to amend its Answer accordingly.

## PRAYER FOR RELIEF

WHEREFORE, as to MillerCoors's Complaint, AB respectfully requests that the Court enter judgment in its favor and against MillerCoors as follows:

1.     MillerCoors's Complaint be dismissed with prejudice;

2.     Judgment be entered for AB;

3.     AB be awarded its costs, expenses, and attorneys' fees;

4.     AB be awarded such other relief as the Court deems just and equitable.

## COUNTERCLAIM

For its counterclaims against MillerCoors LLC, Anheuser-Busch Companies, LLC ("AB") states and alleges as follows:

### Introduction

1.     This Counterclaim seeks a Court order and other relief to protect AB's trade secrets. ██████████████████████████████████████

████████████████████████████████████████████████████

██████ The trade secrets at issue are AB's most important assets – specifically, the means and manner in which it brews its most popular beers.

2.     MillerCoors filed this action against AB related to its beer ingredient advertising, including ads that premiered during the 2019 Super Bowl. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████.

    3.     The information ██████ includes precise recipes for brewing Bud Light and

Michelob Ultra from February 2019.  The information includes detailed Technical Manuals for

some of the leading beer brands in the world that are treated by AB as limited access documents,

labeled as confidential, and that contain precise instructions regarding how to brew AB beers.

    4.     █████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████

    5.     ██████████████████████████████████████████

███████████████████████████████████

**Parties and Persons Involved**

    6.     Anheuser-Busch Companies LLC is a limited liability company organized and

existing under the laws of the State of Delaware, with its principal place of business located in

St. Louis, Missouri.

    7.     Upon information and belief, MillerCoors, LLC is a limited liability company

organized and existing under the laws of the State of Delaware, with its principal place of

business located in Chicago, Illinois.

27

8.      Upon information and belief, Molson Coors Company is organized and existing under the laws of the State of Delaware, with its principal place of business located in Denver, Colorado.

9.      Gavin Hattersley is the Chief Executive Officer for Molson Coors and MillerCoors.

10.      Anthony ("Manny") Manuele is the Vice President of Global Brewing, Quality, Innovation, and Technical Governance for Molson Coors.  Mr. ███████████████

███████████████████████████████████████

██████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████

11.      Robert A. Taylor, II, is the current Senior Director of Global Brewing Governance for Molson Coors.  ████████████████████████████████

████████████████████████

12.      Pete Marino is the Chief Public Affairs and Communications Officer for MillerCoors.

13.      Adam Collins is the Vice President of Public Affairs and Communications for MillerCoors.

14.     Anup Shah is Vice President of the Miller Family of Brands for MillerCoors.

15.     Ryan Reis is the Vice-President of the Coors Family of Brands for MillerCoors.

16.     Martin David Brooks is the Vice President of Global Quality and Food Safety for Molson Coors and a former AB InBev employee.  He left his employment with AB InBev in 2017.  During his employment, he had access to AB's confidential trade secrets.

17.     Josh Edgar is a MillerCoors brewer at the Golden, Colorado brewery who, before joining MillerCoors, worked for AB for years as a brewer at its Cartersville, Georgia brewery. Mr. Edgar continued to maintain relationships with current employees of AB at the Cartersville brewery.

## Background

### A.     MillerCoors Decides to Find out Detailed Ingredients of Bud Light.

18.     Prior to the Super Bowl, AB started to advertise an ingredients panel for Bud Light, displaying on its packaging that Bud Light's ingredients were barley, rice, hops, and water.  At that time, MillerCoors's competing products of Coors Light and Miller Lite listed ingredients that included "corn syrup" and "hops extract."

19.     When AB listed its own ingredients, ███████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████

20.     █████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

21. ████████████████████

22. ████████████████████

23. ████████████████████

24. ████████████████████

25. ████████████████████

26.   ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

27.     The weekend of the Super Bowl, AB started using point-of-sale displays that listed the ingredients of all three beers.  The lists for Coors Light and Miller Lite cited to the millercoors.com website.  ████████████████████████████████████████

████████████████████████████████████████████.

28.   ████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

29.     When████████████████████████████████████████████

████████████████████████████████████████████████

███████████

30.   ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

**B.    Misappropriation of Bud Light's Recipe from AB's Cartersville Brewery.**

*1.    AB's Recipes are Trade Secrets*

31.     AB's beers, including Bud Light and Michelob Ultra, are brewed based on recipes.  The recipes provide much more information than just the essential ingredients that AB lists on its website or otherwise communicates publicly.  The Bud Light recipe provides the geographic source, precise mixture, and specific varieties of the hops used to brew Bud Light;

the mixture of six-row and two-row barley used to brew Bud Light; and the weights and volume of the mixture of the ingredients.  The same can be said for the Michelob Ultra recipe.

32.     Hops give the unique flavor profile of each of these beers, and for this reason all hopping information is particularly sensitive.  Similarly, the amount of grain and grain variety (including the malt to adjunct ratio used) helps defines the body and character of each of these beers.  Each brand is uniquely characterized by the information that is contained within a recipe.

33.     AB has restricted access to the recipes to only certain employees within AB. Recipe information itself is valuable because it is confidential and not generally known outside of AB.  AB considers recipe information to be highly confidential, proprietary, and trade secret information, and it would be extremely valuable to competitors as it provides information necessary for replicating its beers.  This is particularly true when combined with the information contained in a Technical Manual, which is also highly confidential, proprietary, and trade secret information.

34.     AB also treats as confidential information which breweries are using certain processes and its plans for marketing.  Its recipes for other beers, such as its value beers, are also trade secrets.

35.     Over the years, brewing has become an automated process.  Various valves, pumps, tanks, heating, and other processes are controlled by a programmable logic controller (PLC).  The control room of a brewery is the "brains of the operation," and employees there monitor anywhere between six to ten screens that provide them with insight into the status of the brewing process.  Given the sophistication of the brewing process, there has to be a plan for what the brewery will make on any given day and what commodities it will need to support the corresponding brew schedule.

36.     The Brewing Process and Analysis (BPA) System is a computer system which captures data related to the brewing process, including ingredients, balling, and barrels, and sends it to the Brewing Inventory Tracking (BIT) System, a computer system used for inventory tracking to support financial reporting.  BIT, in turn, ties into SAP, AB's financial reporting system.  Human Machine Interface (HMI) is a generic term referring to any interface that demonstrates part of a process – for instance, a brewing process.  AB runs FactoryLink, a Siemens product, and FTView, a Rockwell product, which are both HMIs.  FactoryLink, for example, displays a map of the brewery's systems (i.e., alarms for processes, valve fields, pump fields, etc.).  BPA, BIT, and HMIs are displayed in the brewery control room.

37.     Employees in the control room of the brewery are granted limited access to recipe information.  The employees in the control room are bound by the confidentiality agreement set forth below.  In addition, they must "badge in" to the brewery each day.  An employee must also use credentials and a password to access the computer system in the control room to see recipe information.  Employees obtain access to the BIT and BPA systems using their AB login.

38.     Employees' access to BIT and BPA is tracked, audited, and monitored, and access lists for BIT and BPA are reviewed annually.  In this regard, AB electronically monitors access to recipe information as a security device and records the date and time of every access to a recipe by an employee.  Employees' PCs have been virtualized and access ports disabled, so employees cannot extract these recipes using thumb drives.

39.     AB requires all employees, and especially those who work with its recipes, to sign confidentiality agreements prohibiting the disclosure of confidential information.  The terms include robust confidentiality provisions that extend to "any time during or after [their] employment" with AB:

33

"Unless the company consents or directs me otherwise in writing, I will not at any time during or after my employment with the Company use any Confidential Information for my own benefit or disclose any Confidential Information to anyone outside the Company or to any employee of the Company not also having authorized access to such Confidential Information nor shall I direct anyone else to do such things.  In addition, for a period of three (3) years following the termination of my employment with the Company and upon its request, I will certify under oath in writing that I have not disclosed or used in any way any Confidential Information.  After this three (3) year period, the obligation not to use of disclose Confidential Information which incorporates a Company Trade Secret will remain in full force and effect."

40.     The agreements further provide, "All tangible property in my custody or possession … containing any Confidential Information … is the exclusive property of the Company, shall not be copied or removed from the premises of the Company except for Company business, and shall be delivered to the Company without keeping any copies or any portions thereof on the termination of my employment."

41.     The agreements include a general definition of confidential information and state that such information specifically includes "product specifications, manufacturing processes, product formulas/recipes" and information or materials of a similar nature.

*2.*     ██████████████████████

42.     ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████

43.     ██████████████████████████████
██████████████████████████████████
████████████████████████████████████████
██████████████████████████████

██████. Mr. Edgar, before joining MillerCoors, worked for years as a brewer at AB's

Cartersville brewery. ████████████████████████████████████████████ Mr.

Edgar was under confidentiality obligations to his former employer, AB.

44.   ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

████████████████████████████

45.   Mr. Edgar was obtaining information from current AB employees, and he was

aware that the AB employee he was talking to was bound to keep recipe information secret.

████████████████████████████████████████████████

████████████

46.   ████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

████████████████

47.   Text messages obtained by AB during its investigation demonstrate that in the

days immediately before and after the Super Bowl on February 3, 2019, Mr. Edgar asked an AB

employee for information related to, among other matters:

  a.   Ingredients for AB's beers, including any use of enzymes in Bud Light

(which AB does not use):

| | | | |
|---|---|---|---|
| 1/28/2019 17:36 | Joshua Edgar | ███████ | How much enzyme u adding to Bud Light ? |

       b.    Identification of which breweries might be using corn syrup in AB's value brands:

| | | | |
|---|---|---|---|
| 2/8/2019 10:57 | Joshua Edgar | ███████ | U using dextrose on natural and Busch ? |
| 2/8/2019 10:58 | ███████ | Josh Edgar | No. Grits |

* * *

| | | | |
|---|---|---|---|
| 2/8/2019 22:53 | Joshua Edgar | ███████ | Is Busch Light dextrose? |

| | | | |
|---|---|---|---|
| 2/8/2019 22:53 | ███████ | Joshua Edgar | No. Grits |
| 2/8/2019 22:54 | Joshua Edgar | ███████ | Are some breweries using dextrose ? |
| 2/8/2019 22:56 | ███████ | Josh Edgar | Maybe ███ Not sure if they are still ███. We make it with ███ in cville |

       c.    Technical (and secret) information about the alcohol content of Bud Light at a specific point in the brewing process:

| | | | |
|---|---|---|---|
| 2/15/2019 13:04 | Joshua Edgar | ███████ | What's ur end of age ABW on BH40 ? |
| 2/15/2019 14:54 | ███████ | Josh Edgar | About ███ abv end of chips |

    48.    Mr. Edgar specifically told this AB employee that he was being asked for this information by MillerCoors's senior management, which was very unusual and demonstrates how important the flow of information was to the CEO Gavin Hattersley:

| | | | |
|---|---|---|---|
| 2/4/2019 14:24 | Joshua Edgar | ███████ | I got a few calls already from Corp folks asking about bud light, we must be prepping a retaliation |

* * *

36

| 2/8/2019 11:00 | Joshua Edgar | ████████ | It's definitely got people here's attention. |
| 2/8/2019 11:01 | Joshua Edgar | ████████ | First time ever I've been ccd ON Emails with Pete and CEO |

49.     Mr. Edgar also obtained information regarding the layout of AB's control room and marketing plans.

50.     MillerCoors has offered this AB employee employment at least two times in recent years.  These offers of employment were of value to this employee.  One such offer was to work for MillerCoors in California.  Another such offer was for work in Colorado.

51.     In fact, just two months prior, on December 6, 2018, Mr. Edgar informed this AB employee that MillerCoors had many job openings available for people:

| MillerCoors inquiry (December 2018) | | | |
| 12/6/2018 14:58 | Joshua Edgar | ████████ | We have a ton of openings if people are willing to move |

52.     ████████████████████████████████

███████████████████████████████

███████████████████████████████

██████████████████████████████

████████████████████████████

███████████████████████████████

██████████████

53.     ████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████████████████████

████████████

54.  █████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████

55.      In the document production in this case, MillerCoors has produced ███████████

██████████████████████████████ photographs of the recipes for Bud Light and

Michelob Ultra.  The photographs are dated February 2, 2019, one day before the airing of Bud

Light's Super Bowl ads.  Through its security monitoring, AB has been able to verify that the

records were accessed one minute before the date stamps at the bottom of each.  The

photographs show exactly how a recent batch of Bud Light was brewed and how a recent batch

of Michelob Ultra was brewed.  These recipes show the precise blend of six-row and two-row

barley; the hop blend; the volume and relative ingredient weights; and other trade secret

information.  The photographs show that they were transmitted outside of the ordinary course of

business (on a Saturday).  A redacted version of the photographs ███████████████████████

████████ are below:

 

56. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

57.     The manner of transmission appears to be a print-out of a screen shot that was folded up, secreted out of the AB brewery, and then sent by text. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

58.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

59.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████ The information ████████ had value to AB and was not publicly available to MillerCoors.

      ***3.***   █████████████████████████████████████████

60.    ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████

61.    █████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████

62.    █████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

63.   ██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████  Mr.

Edgar subsequently obtained additional information from his "source" at AB's Cartersville brewery.  This employee has provided his telephone and computer to AB for inspection.  These records indicate numerous texts during this time before and just after the Super Bowl.  Many of these texts provided confidential AB information.

64.   ██████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████

65.   ██████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████

66.   ██████████████████████████████████████████  Mr.

Edgar obtained information about advertising plans.  He was informed, "There is a lot more coming too":



| 2/9/2019 9:43 | ████████ | Joshua Edgar | There is a lot more coming too. |

67. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████

68. ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████

69. ██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

70. ████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

71. ████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████████████

42

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████

72.    The Bud Light and Michelob Ultra recipe information is highly confidential ████ ███████████████████████████████████ The method of transmittal of the recipes demonstrates that they were sent outside of normal business practices. ██████████████ ███████████████████████████████████████████████████████ ███████████████████████████████

73.    ███████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████

74.    ███████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████

75.    The precise recipe and other information described above was not known outside AB. ███████████████████████████████████████████████ ███████████████████████████████████████████████ The recipes are extraordinarily valuable – Bud Light is the best-selling beer in the U.S. and Michelob Ultra is the fastest growing.

76.     AB protects the information obtained from the Cartersville Brewery by requiring employees to enter confidentiality agreements, through training, and by limiting access to computer records that list the recipes for brewed beer.

77.     ███████████████████████████████████████

████████████████████████████████████████████

C.      ████████████████████████████████████████.

78.     AB has created Technical Manuals for many of its best-selling global and regional beers.  These Technical Manuals cover, among other beers, Bud Light, Budweiser, Corona (a brand owned and sold internationally by AB InBev), and Stella Artois.  These Technical Manuals were created from 2010-2015 and are still current.  A screen shot of the cover of the Technical Manual for Budweiser is below:



79.     The Technical Manuals specify the production procedures and quality parameters in order to brew, package, and distribute the beers, as stated in their purpose sections:

a.      Bud Light Technical Manual:

**General**

This Technical Manual specifies the production procedures and quality parameters in order to brew, package and distribute **Bud Light**.   The purpose of this Technical Manual is to ensure that the brewer shall manufacture Bud Light strictly in accordance with the technical instructions, the process and product specifications and any other instructions concerning the product, process or packaging.

44

      b.   Budweiser Technical Manual:

## 1.1 Purpose

This Technical Manual - part of the License Agreement - specifies the production procedures and quality parameters in order to brew Budweiser.

      c.   The Stella Artois Technical Manual:

## 1.1 Purpose

This Technical Manual - part of the License Agreement - specifies the production procedures and quality parameters in order to brew Stella Artois

      d.   The Corona Extra Technical Manual:

1.1 Purpose

This technical Manual specifies the technical instructions, process and product specifications in order to brew Corona, breweries which brew and package Corona Extra MUST follow.

     80.    The Technical Manuals include information such as the ratio of malt to adjunct; the real degree of fermentation (RDF) for the final beers; exact water, malt, and adjunct specifications for the beers; the approved hop varieties for the beers; the type of yeast strain that must be used; precise brewhouse process details for every step of the brewing process, including diagrams and pictures; precise fermentation and maturation details, including the design of the fermentation tank; times and temperatures for fermentation; times and temperatures for the aging process; and precise finishing details for chillproofing and filtration.

     81.    The Technical Manuals include precise details for packaging procedures for bottling, canning, and kegging the beers.  They include precise sensory specifications for the hops, grains, yeast, water, and defects.  They include specifics for quality assurance testing and sampling.

45

82.     In short, the Technical Manuals include every detail necessary to brew the beers. The information is *exactly* what a competitor would need to know to make AB's family of beers to the precise specification required by AB.  AB's affiliates possess the documents but are themselves bound by duties of confidentiality to AB.

83.     The manuals all contain confidentiality designations:

     a.     Bud Light Technical Manual:

This is a controlled document issued by ABInbev. The technical information within this document and its enclosures are confidential and remain the property of ABInbev.

     b.     Budweiser Technical Manual:

### 1.3 Document Control and Confidentiality

This is a controlled document issued by ABInbev. The technical information within this document and its enclosures are confidential and remain the property of ABInbev. No part of it may be reproduced in any way, even for internal purposes.

     c.     Stella Artois Technical Manual:

### 1.3 Document Control and Confidentiality

This is a controlled document issued by ABInbev. The technical information within this document and its enclosures are confidential and remain the property of ABInbev. No part of it may be reproduced in any way, even for internal purposes.

     d.     Corona Extra Technical Manual:

1.3 Document Control and Confidentiality

This is a controlled document issued by Grupo Modelo- ABI. The Technical information with this document and its enclosures are CONFIDENTIAL and remain the property of Grupo Modelo ABI. No part of this may be reproduced in any way, even for internal purposes.

84.     The Technical Manuals are kept electronically on a specific shared drive with restricted access.  Individuals must be given permission to access the manuals and, even then,

what the individual can do with the document is further restricted.  For example, most individuals' access is limited to "read" only, meaning they cannot modify the documents.  A handful of individuals have "full control" access, meaning they can modify the documents. Access is limited to individuals that need the information to perform their job duties.  In general, the only employees who can read the manuals are director-level brewing and quality employees, their direct reports, quality managers, and/or brewmasters in plants.

85.     Each person's need for the information is reviewed, based on his/her job functions, before access is granted.  Once approved, access is assigned to an employee's personal User ID, and that User ID is added to a limited security group within the server.  The Technical Manuals are not intended to be disseminated to anyone outside of this group.

86.     Technical Manuals may also be provided to licensees, but only after a strict confidentiality agreement is executed.  Such agreements include provisions requiring the information to be kept confidential and secret, both during the term of the license and after its expiration or termination.  Such agreements include provisions requiring that disclosure be limited only to the extent necessary to facilitate the license (for example, limiting disclosure only to those employees who need to know such information), and only after the individual recipient is made aware of and complies with the confidentiality obligations of the license.  Such agreements also include provisions requiring the return of all tangible copies of the Technical Manual and the expungement of all electronic copies from computer systems in the event the license agreement expires or is terminated.

87.     The Technical Manuals have tremendous economic value, as they describe precisely and in great detail how to make AB's most successful beers.  The information contained in the Technical Manuals is valuable because it is confidential and not generally known.  Indeed,

the entire purpose of the Technical Manuals is to permit a skilled brewer to make brands such as Bud Light, Budweiser, Corona, and Stella Artois to exacting specifications around the world, and would be a roadmap to recreating these beers even in the hands of a novice brewer.  AB considers these documents, and the detailed brewing recipe specifications each contains, to be highly confidential, proprietary, and trade secret information.  Any one of these Technical Manuals would be extremely valuable to competitors.

88.     The Technical Manuals are extremely valuable to any competitor who might wish to have knowledge about ingredients and processes.  ████████████████████

████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████

███████████████████████

89.     Martin David Brooks was an employee of SAB Miller when it was acquired by AB InBev.  From 2015 to 2017, Mr. Brooks worked for AB InBev.  Mr. Brooks' job involved helping to create and revise the Technical Manuals, and he had access to them until his departure in 2017.

90.     Mr. Brooks was bound both during his employment for AB InBev and thereafter to maintain the confidentiality of the information learned during his employment.  He initialed each page of the confidentiality agreement and received training on it on March 16, 2015. Mr. Brooks initialed each page and signed the Code of Conduct.  The Code of Conduct includes robust confidentiality provisions relating to, among other items, "brand formulations."  It states,

"Confidential information or information which is not generally available to the public will not be shared outside of SAB Miller by anyone, including former employees."

91.     On June 22, 2017, Mr. Brooks left employment with AB InBev and went to work as Vice President of Global Quality and Food Safety for Molson Coors.

92.     ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

93.     ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

94.     ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

95. ███████████████████████████████████████████

███████████████████ The version of the Technical Manuals available to Mr. Brooks during

his employment remain valid and contain a large amount of current, secret information about the

beers. ████████████████████████████████.

96. ████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████.

97. ███████████████████████████

████████████████████████.

98. ████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████.

99. ███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

████████████████████████.

100. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████

101. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████.

102. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████

103. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████



104.

105. ████████████████████████████████

████████████████████████████████████████

██████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

106. █████████████████████████████████

████████████████████████████████████████

107. ██████████████████████████████████

████████████████████████████████████

█████████████████████████████████.

108. █████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████

**D.** █████████████████████████████████

109. ██████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

110. ███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████

111. ███████████████████████████████████

███████████████████████████████████

███████████████████████

112. ███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████.

113. ███████████████████████████████████

█████████████████████████████████

█████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████

**E.**     **Trade Secret Allegations.**

114.    The AB recipes, brewing information, and Technical Manuals described above
are trade secrets in that:

a.      AB has taken reasonable measures to keep such information secret by limiting access to the information; by requiring the execution of confidentiality agreements; by instructing employees regarding the same; and as otherwise described above; and

b.      The information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.  MillerCoors, a sophisticated brewer, was unaware of the information and the information allows precise brewing instructions for some of the most popular beers in the world.

115.   ███████████████████████████████████████
██████████████████████████████████████████████████
███████████████████████████████████████████.

116.   ███████████████████████████████████████
████████

117.   The Molson Coors Code of Business Conduct, which is accessible from MillerCoors's website, expressly instructs the company's employees: "Don't exchange information with competitors or seek it from 'informal' sources."  It obligates employees, officers, and directors to "ensure that any information we obtain about our competitors is from the public domain or sources approved by your local legal team."

118.   The Code further states: "We always compete fairly in the marketplace by following the laws that promote or protect free and fair competition around the world and by acting in an honest, fair and objective way in our interactions with … competitors."

119.    Along the same lines, the Molson Coors Code prohibits MillerCoors employees from sharing MillerCoors's "confidential Company information" outside the company or, even, internally, except on a "need-to-know" basis.

120.    According to the MillerCoors website, MillerCoors employees, "are responsible for understanding and following the Code and are required to annually complete training and affirm the Code."  In addition, the website states, "The Principles in [the] Code also apply to all MillerCoors officers and directors."

121.    ████████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████

122.    ██████████████████████████████████
█████████████████████████████████████
████████████████████████████████████████
█████████

123.    ████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████

124.    Upon AB's request, MillerCoors withdrew its own confidentiality designation of the photographs of AB's Bud Light and Michelob Ultra recipes but declined to permit AB to share even within its own company the emails that discuss the brewing details of AB's beers and those of its affiliates.  Thus, to this day MillerCoors claims that its information about AB's products is proprietary to MillerCoors.

125.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████  AB took immediate action upon identifying the document and has conducted an internal investigation led by its compliance department and outside counsel separate from this case.  AB is continuing its investigation.

126.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████

127.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

**Count I – Violation of The Defend Trade Secrets Act (18 U.S.C. § 1836, et seq.)**

128.    AB incorporates and restates the allegations in the preceding paragraphs.

129.    AB's proprietary and confidential recipes, Technical Manuals, and other technical and precise information about AB's ingredients, brewing processes, and marketing are trade secrets that are the result of more than a century of work developing brewing recipes, ingredients, processes, and marketing insights.

130.    AB enacted reasonable measures to maintain the secrecy of its recipes, Technical Manuals, and other technical and precise information about AB's ingredients, brewing processes, and marketing.

131.    AB's recipes, Technical Manuals, and other technical and precise information about AB's ingredients, brewing processes, and marketing derive an independent economic value from not being generally known outside AB and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

132.    ██████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████.

133.    ████████████████████████████████████████

134. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

135. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

██████████████

136. ████████████████████████████████████

137.     The Defense of Trade Secrets Act authorizes this Court to enjoin the misappropriation of AB's trade secrets.

138.     In addition, AB is entitled to damages proximately caused by MillerCoors's misappropriation of trade secrets in an amount to be determined at trial, including actual and punitive damages and attorney's fees.

WHEREFORE, AB prays for judgment against MillerCoors and:

    a.  MillerCoors be preliminarily and permanently enjoined and restrained from accessing, using, or disclosing the AB trade secret information set forth above, including AB recipes, technical manuals, policies and procedures, and brewing training materials, together with all information relating thereto;

    b.   MillerCoors be ordered to immediately return to AB any confidential or trade secret information of AB, and all copies thereof, in whatever form stored or maintained, and to remove all copies from its possession;

    c.   Actual damages;

    d.   Damages for any unjust enrichment caused by the misappropriation of the AB trade secrets;

    e.   Punitive damages;

    f.   Attorneys' fees; and

    g.   Such other and further relief as this Court deems fair and reasonable.

### Count II – Violation of Wisconsin (§ 134.90) and Colorado (§ 7-74-101) Uniform Trade Secrets Act

139.    AB incorporates and restates the allegations in the preceding paragraphs.

140.    AB's proprietary and confidential recipes, Technical Manuals, and other technical and precise information about AB's ingredients, brewing processes, and marketing are trade secrets that are the result of more than a century of work developing brewing recipes, ingredients, processes, and marketing insights.

141.    AB enacted reasonable measures to maintain the secrecy of its recipes, Technical Manuals, and other technical and precise information about AB's ingredients, brewing processes, and marketing.

142.    AB's recipes, Technical Manuals, and other technical and precise information about AB's ingredients, brewing processes, and marketing derive an independent economic value from not being generally known outside AB and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

60

143. ████████████████████████████████████████
████████████████████████████████████████████
█████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████

144. ████████████████████████████████████████
██████████████████████████████████

145. ████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████
█████████████████████████████████████████
██████████████████████████

146. ████████████████████████████████████████
████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████

147. ████████████████████████████████████████

148.    AB is entitled to damages proximately caused by MillerCoors's misappropriation of trade secrets in an amount to be determined at trial, including actual and punitive damages and attorney's fees.

WHEREFORE, AB prays for judgment against MillerCoors and:

   a.  MillerCoors be preliminarily and permanently enjoined and restrained from accessing, using, or disclosing the AB trade secret information set forth above,

including AB recipes, technical manuals, policies and procedures, and brewing training materials, together with all information relating thereto;

b. MillerCoors be ordered to immediately return to AB any confidential or trade secret information of AB, and all copies thereof, in whatever form stored or maintained, and to remove all copies from its possession;

c. Actual damages;

d. Damages for any unjust enrichment caused by the misappropriation of the AB trade secrets;

e. Punitive damages;

f. Attorneys' fees; and

g. Such other and further relief as this Court deems fair and reasonable.

### Count III - Conversion

149.    AB incorporates and restates the allegations from the preceding paragraphs.

150.    AB's recipes, Technical Manuals, and other technical and precise information about AB's ingredients, brewing processes, and marketing, together with information contained therein, are AB company property.

151.    AB owned its recipes, Technical Manuals, and other technical and precise information about AB's ingredients, brewing processes, and marketing.



152.

153.                                                              The value of AB's property derives, in part,

from the fact that it is not in the possession of other companies or competitors. ███████

████████████████████████████████████████████████

WHEREFORE, AB prays for judgment against MillerCoors and that AB be awarded its damages resulting from its loss of sole possession of its company property.

### Count IV – Tortious Interference

154.    AB incorporates and restates the allegations in the preceding paragraphs.

155.    AB has a confidentiality agreement and expectancy with each of its current and former employees, including Martin David Brooks, Joshua Edgar, and the "sources" within AB.

156.    Each of Mr. Brooks, Mr. Edgar, and Mr. Edgar's "sources" are bound by non-disclosure agreements with AB to keep confidential AB company information and trade secrets, and these obligations continue even if their employment ends.

157.    The non-disclosure agreements prohibit the copying or removal of any AB property that is in the custody or possession of an AB employee except for purposes of Company business.  The agreements provide further that, upon termination of employment, an employee must deliver any AB property that is in his possession or custody "to the Company without keeping any copies or portions thereof."

158.    The non-disclosure agreements expressly prohibit the use or disclosure of confidential company information absent written consent by the Company.

159.    The non-disclosure agreement further provides:  "I will not directly compete with the Company or as an individual or as an employee of another entity in the development, production, marketing, performance or servicing of any product or service with which the Company is involved or becomes involved nor will I aid others in any such acts."

160.    The Recipes, Technical Manuals, and other technical and precise information about AB's ingredients, brewing processes, and marketing are confidential AB information and company property.

161.    The non-disclosure agreement prohibits current and former AB employees from copying, taking, removing, or disclosing the Recipes, Technical Manuals, and other technical and precise information about AB's ingredients, brewing processes, and marketing absent written consent.  The non-disclosure agreement also prohibits current or former employees from directing other current or former employees to copy, take, remove, or disclose AB confidential information.



167.  ███████████████████████████████████████

███████

WHEREFORE, AB prays for judgment against MillerCoors and:

    a.  MillerCoors be preliminarily and permanently enjoined and restrained from accessing, using, or disclosing the AB confidential company information and property that it acquired as a result of its intentional interference, including AB recipes, technical manuals, policies and procedures, and brewing training materials, together with all information relating thereto;

    b.  MillerCoors be preliminarily and permanently enjoined and restrained from communicating with current or former AB employees for the purpose of requesting or discussing confidential AB company information and property until entry of the Court's final judgment;

    c.  MillerCoors be ordered to immediately return to AB any confidential or trade secret information of AB, and all copies thereof, in whatever form stored or maintained, and to remove all copies from its possession;

    d.  Actual damages;

    e.  Punitive damages;

    f.  Attorneys' fees; and

    g.  Such other and further relief as this Court deems fair and reasonable.

**Jury Demand**

AB demands trial by jury.


Dated: October 17, 2019               Respectfully submitted,

                                      **GODFREY & KAHN, S.C.**

                                      By: _/s/ Kendall W. Harrison_
                                      Kendall W. Harrison
                                      Jennifer L. Gregor
                                        One East Main St., Suite 500
                                        Madison, WI, 53703

Phone: (608) 284-2627
Fax: (608) 257-0609
kharrison@gklaw.com

**DOWD BENNETT LLP**
James F. Bennett
Megan S. Heinsz
Michael J. Kuhn
Matthew K. Crane
Adam J. Simon
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
Phone: (314) 889-7300
Fax: (314) 863-2111
jbennett@dowdbennett.com
mheinsz@dowdbennett.com
mkuhn@dowdbennett.com
mcrane@dowdbennett.com
asimon@dowdbennett.com

**ULMER & BERNE LLP**
Thomas M. Williams
500 W. Madison St., Suite 3600
Chicago, IL 60661
Phone: (312) 658-6556
twilliams@ulmer.com

*Attorneys for Anheuser-Busch Companies, LLC*