UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MILLERCOORS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ANHEUSER-BUSCH COMPANIES, LLC, <br><br> Defendant. | REDACTED <br><br> Case No. 19-cv-00218 |

**MILLERCOORS, LLC'S OPPOSITION TO ANHEUSER-BUSCH COMPANIES, LLC'S MOTION TO UNSEAL DOCUMENTS**

Anheuser-Busch Companies LLC's ("AB's) motion, which purports to be designed to promote the public interest, is instead a premature, one-sided public relations effort which comes dangerously close to violating this Court's preliminary injunction order. AB has not made any serious effort to resolve any dispute it has about what the parties have marked as confidential under their agreed upon protective order, misstates the law regarding public access to court filings, and despite the Court's preliminary injunction order continues its effort to win some perceived public relations battle by seeking to unseal only carefully selected snippets of documents in order to publicize its theory of the case. This attempt to use the unsealing process for one-sided gain must be rejected.

AB's motion does not meet the legal standard for unsealing and, and in any event, is premature for the following reasons:

First, AB misstates the public interest, which does not outweigh the litigants' interest in preventing wholesale release of their business confidential information without context or explanation. Although the public has a critical and hard-won interest in access to the courts and

to documents that form the material bases for judicial decisions, those interests are not served when the request seeks the release of documents from a party-opponent when discovery is not complete and it has not even been decided if the issues to which the documents relate are relevant to the case, as AB has done here.  The documents that AB seeks to unseal here do not form the basis for any judicial decision, much less a merits decision.  The documents are internal MillerCoors business documents that were exchanged in electronic discovery – along with hundreds of thousands of other pages, as is common in commercial cases – and sealed under the protective order agreed to by AB and issued by this Court.  Most of them relate to claims and defenses AB wishes to add to the case, but its motion to do so has not even been fully briefed, much less decided.  Until a dispositive decision on the merits, the public's interest in the vast scrum of documents exchanged in discovery in commercial litigation does not outweigh the parties' interest in maintaining agreed-upon confidentiality for sensitive information pending a final decision.  The mid-litigation release of discovery materials therefore undermines the negotiated and Court sanctioned Protective Order, which the parties until now agreed was necessary to foster open and fair discovery.

      Second, AB's motion is at a minimum premature given AB's failure to hold a meet and confer and the absence of a decision on the merits.  AB sprung its request to consent to unseal on MillerCoors the day after filing its Motion for Leave to Amend the Answer ("Motion for Leave"), unreasonably demanding that MillerCoors respond within one business day thereafter.  After MillerCoors responded by reasonably asking AB for the remainder of the week to consider AB's request given the intervening summary judgment deadline, AB simply proceeded to file this motion without waiting for a response or participating in the requisite meet and confer.  Against this backdrop, it is obvious that AB viewed the satisfaction of its meet and confer

obligation as a mere formality and had no intention of negotiating any compromise with MillerCoors. It was dead set on using the Motion for Leave and this motion as mechanisms to generate publicity contrary to the injunction.

AB's motive is clear from the specific documents that AB gratuitously attached to its Motion for Leave. As will be shown in MillerCoors' opposition, due on November 7, 2019, that motion lacks merit and AB's proposed amendment is futile. But, even if it were valid (and it is not), AB had no need to attach hundreds of pages of discovery documents to that motion in order to make its argument. AB broadly publicized its filing of the Motion for Leave by contacting certain members of the press beforehand, thus leveraging the filing into articles in major media outlets repeating AB's corn syrup claim in order to generate publicity for the claim that it is enjoined from making in its own advertising and to inflict the very harm on MillerCoors the preliminary injunction was designed to prevent. AB's motion to unseal is more of the same.

Finally, AB's motion is an invitation to mischief. If any party to a commercial case, like AB, can take documents exchanged in discovery pursuant to an agreed protective order that it unilaterally wants public for any reason whatsoever, attach those documents to a court filing, and then require that those documents be released to the public at large, then there is no reason for the protective order and the dichotomy in the rules between discovery and a merits determination is undone. If accepted, AB's unsealing theory would result in endless disputes between litigants that are wholly unrelated to the merits of the underlying cases the Court is supposed to decide. This tactic should not be condoned, let alone encouraged.

AB's motion should be denied.

**I.      Legal Standard**

While there is a "long-recognized presumption in favor of public access to judicial records," *In the Matter of Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984), only the

documents that "influence or underpin the judicial decision are open to public inspection" absent meeting the definition of trade secret protection or other "categories of bona fide long-term confidentiality." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002). Courts recognize that documents material to a judicial decision are "usually a small subset of all discovery." *Id.*

By its terms then, the presumption of open access does not apply to the bulk of information that may be exchanged in discovery. Regarding discovery, Federal Rule 26(c)(1)(G) provides that upon a showing of "good cause," a court may enter a protective order that such information "not be revealed or be revealed only in a specified way." Such orders are commonplace in commercial litigation and most districts now have model orders that preserve the confidentiality of information exchanged in discovery. *See, e.g., Illinois League of Advocates for the Developmentally, Disabled v. Illinois Dep't of Human Servs.*, No. 13 C 1300, 2013 WL 3287145, at *4 (N.D. Ill. June 28, 2013) (approving the use of a model confidentiality order because it would "be more efficient"). Thus, information exchanged in discovery but not admitted into evidence is not ordinarily expected to become public. *Cf. Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information") (internal citations omitted). Particularly in the age of e-discovery most discovery materials are not admitted or disclosed publicly.

The Seventh Circuit has expressly recognized this distinction and, furthermore, the reality that not every document that makes its way into a court filing is the basis for a judicial decision subject to the right of open public access. For information "that may have crept into the record,"

4

the Seventh Circuit has held that it is "not subject to the presumption" favoring public access. *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013).

## II.     Background and Stage of the Proceedings

The Parties mutually agreed to a protective order shortly after the onset of this litigation. It has been in place since June 26, 2019, and under it the parties have exchanged tens of thousands of pages of documents and many hours of testimony. Document production is still ongoing on both sides, and it is not clear whether the existing production record constitutes a complete and fair sampling of relevant information to both the claims and defenses in this case. As part of this process, both parties have availed themselves extensively of confidentiality provisions of the protective order, with both sides designating thousands of documents as "Attorneys' Eyes Only." AB notes that "the majority of the deposition testimony of its key witness" is publicly accessible, while insinuating that MillerCoors has somehow over designated. Br. at 4. This is simply false.

Tellingly, AB's purported concern for the public's right to know ignores the key evidence that it has designated as confidential (and has remained sealed if submitted), including, for example:

- the deposition testimony of AB's Vice President of Brewing, Andy Goeler REDACTED

- focus group research by AB prior to the Super Bowl, REDACTED

- REDACTED

- consumer surveys REDACTED

- the deposition of AB's brewing expert REDACTED

- the deposition of AB's brewing expert REDACTED

- the deposition testimony of AB's Vice President of Brewing, Andy Goeler, REDACTED

QB\60161974.2

- discussions among AB personnel REDACTED

On October 17, 2019, AB moved for Leave to File Counterclaims and Amended Answer. To that motion (not to its proposed amended complaint), AB attached approximately 300 pages of MillerCoors documents exchanged in discovery and certain MillerCoors deposition testimony. Conspicuously absent, of course, was any document produced by AB or any testimony given by an AB employee. As MillerCoors will show in its opposition to AB's motion for leave, those 300 pages of attachments are not material to the amendment offered, while amendment is itself without merit and futile. In other words, AB attached those 300 pages of discovery simply to bring this motion to unseal and advance its public relations' objectives.

On Friday afternoon, October 18, AB sent a letter asking MillerCoors' consent to unseal those attachments and requesting a response by noon on the following Monday. *See* Ex. 3. MillerCoors provided the requested response on the requested day in a letter stating it was looking into the issues raised and would respond further later that week. Ex. 4. The letter indicated that MillerCoors was also looking at the question of whether information sealed at the request of AB should be unsealed. *Id.* This was based on the pending summary judgment motion deadlines before this Court, which were filed on October 22, 2019. Without further correspondence or discussion, AB filed the instant motion the next day.

---

[1] Unless otherwise specified, all exhibits cited herein refer to Exhibits to the 10/29/19 Declaration of Anita Marie Boor, filed concurrently.

QB\60161974.2

**Argument**

### III. AB's Motion Should Be Denied

#### A. AB Is Using This Court to Run a Marketing Campaign In Direct Violation Of This Court's Order

This Court has ordered that AB is preliminarily enjoined from making various claims about corn syrup, Bud Light, Miller Lite, and Coors Light in its "commercials, print advertising and social media." *See* Dkt. 189. Yet in the now nearly two weeks since AB's motion for leave, headlines from coast to coast repeat statements that would be barred by the Court's order if they were made in the context of AB advertising.

Defendants' motion for leave generated national press coverage within minutes of its filing on Thursday afternoon, October 17, 2019. Indeed, AB's litigation team pre-scheduled calls and interviews with the press to be given simultaneously with the filing of AB's Motion for Leave. As further evidence, an industry article entitled "Corngate Ratchets Up Several Notches; AB Denies Charges, Counterclaims That MC Misappropriated Its Trade Secrets" appeared online almost simultaneously with the filing. *Compare* Ex. 5 (email notification of article) *with* Ex. 6 (email notification of filing). Over the remainder of Thursday, Friday, and over the weekend, similar stories appeared widely in the press. *See, e.g.,* Exs. 7, 8. Many of these articles repeated AB's claim that "corn syrup was being used to make" Miller Lite and Coors Lite. *See, e.g.*, Ex. 8. AB has now asked for the unsealing of the documents referred to in the extensive press coverage that it orchestrated.

AB's amended answer and proposed counterclaim is no ordinary pleading: it gratuitously includes additional attachments and quotes from discovery materials in a manner that violates the "pleading the evidence" rule that exists in this Circuit. *See, e.g., Wakeen v. Hoffman House,* 724 F.2d 1238, 1244 (7th Cir. 1983) (affirming a denial of an amendment where the "amendment

8

merely restates the same facts using different language, or reasserts a claim previously determined."); *see also Johnny Blastoff Inc. v. Los Angeles Rams Football Co.*, No. 97-C-155-C, 1998 WL 132924, at *2 (W.D. Wis. Feb. 17, 1998) (denying motion to amend because "most of plaintiff's proposed 'clarifications' are futile because they are duplicative or overkill"). If AB wants to properly include its newly discovered evidence as further support for its defenses, there is a tool for that: interrogatories. *See, e.g.,* Ex. 9, AB's Responses to MillerCoors' Second Set of Interrogatories (last updated Sept. 9, 2019) (reciting the factual and legal basis for certain AB defenses). Instead, AB attached its purported evidence to its pleading, manifesting this motion and dispute. As Chief Judge Griesbach cautioned, parties should "give careful consideration *before* filing confidential material with the court." *Formax Inc. v. Alkar-Rapidpak-MP Equip., Inc.*, No. 11-C-0298, 2014 WL 792086, at *2 (E.D. Wis. Feb. 25, 2014).

Instead, AB appears to be pushing the press to repeat the same advertising to beer consumers this Court has enjoined: Miller Lite and Coors Light contain corn syrup and Bud Light does not. REDACTED

To unseal these documents would allow AB to further drive its false and misleading corn syrup smear campaign in the public (and not judicial) forum, further intentionally confuse

consumers, and potentially circumvent this Court's order enjoining its conduct concerning corn syrup advertising. The Court should not condone this gamesmanship. AB's motion should be denied.

### B. AB's Motion Does Not Meet The Unsealing Standard And Is Premature

#### 1. AB Inaccurately States the Public Interest At Play

The public access presumption is to documents that influence or underpin a judicial decision. *Baxter,* 297 F.3d at 545. There is no such decision based on the documents AB seeks to unseal. *See, e.g., ABS Glob., Inc. v. Inguran, LLC*, No. 14-CV-503-WMC, 2017 WL 3588290 (W.D. Wis. Apr. 5, 2017) (discussing, after trial, the materiality of certain exhibits to resolving the parties' claims and defenses, and, on that basis, sealing and unsealing exhibits). Without any judicial decision that would place these documents into context, the materials can only be characterized at present as having "crept into the record" and well could be immaterial. *Goesel,* 738 F.3d at 833. At the same time, these potentially immaterial and irrelevant documents could, if misconstrued, result in significant harm to the party opposing release. Thus, the factors underpinning the policy of public access do not apply yet. *Id.*

#### 2. AB's Motion is Premature

AB's attachments are not yet the basis for any "judicial action." *Gildon v. Rainin Instrument, LLC*, No. 04-C-852-S, 2005 WL 1899472, at *2 (W.D. Wis. Aug. 9, 2005). Indeed, they may never be. We do not know if either party will introduce these attachments into evidence at a future trial, nor if they will become part of the record which will be the basis for a decision either on summary judgment or at a future trial. *Id.* (denying, after trial, a motion to unseal documents untethered to any judicial action). Instead, AB's motion has been prematurely filed in an attempt to generate favorable press in view of several decisions against it and to

advance the goal of the original campaign by intentionally confusing consumers. It should be denied.

The cases AB cites are entirely inapplicable to the premature decision it wishes the Court to make here. For example, while citing *Union Oil Co.*, AB neglects to mention the context of that decision: an **appellate decision** on a district court case where **even the case's existence** was sealed. *Union Oil*, 220 F.3d at 567. This case is not subject to such secrecy. The parties are not in a scenario of "bona fide long-term confidentiality", as discussed in *Baxter*. Neither party is in a position to evaluate "bona fide long-term" confidentiality, particularly with judicial actions looming in the future as guideposts to what material documents the public may have an interest in. AB's other cases are similarly unavailing.[2]

The premature nature of AB's request is perhaps best illustrated with a simple example: AB has alleged that its "recipe" is a trade secret and that MillerCoors illegally obtained it. There are, however, many reasons that may be litigated in the future regarding why AB's allegations regarding theft of trade secret may be overstated. For example, AB has already placed the identity of its ingredients in the public eye by virtue of its so-called "transparency" marketing campaigns. Moreover, AB's own allegations are that the claimed trade secret information was transmitted to MillerCoors **by AB's own employee** who was apparently able to retrieve the alleged trade secret information and send it to MillerCoors. This is a distinct lack of reasonable measures to protect allegedly trade secret information, a prerequisite to a trade secret claim. *See*

---

[2] Nearly every single case cited by AB involves an appellate, post-trial, or post judgment decision. *See, e.g., Union Oil* 220 F.3d at 567-68 (appellate review of specific performance decision); *Baxter,* 297 F.3d at 545(discussing sealing of the appellate record); *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) (appellate review of a denied motion to amend); *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 341 (N.D. Ill. 1998)(denying a motion to seal after successful motion to change forum); *Formax ,* 2014 WL 792086 at *2 (summary judgment). The public has an interest in the information material to these decisions. But that's not the case here.

QB\60161974.2

*United States v. Lange,* 312 F.3d 263, 266 (7th Cir. 2002) (acknowledging that "one ingredient of a trade secret is that the owner [] has taken reasonable measures to keep such information secret") (internal citations omitted); *see also Maxpower Corp. v. Abraham,* 557 F. Supp. 2d 955, 961 (W.D. Wis. 2008) (evaluating whether the party took reasonable measures to protect confidentiality of alleged trade secret information). Moreover, AB has failed to identify with specificity what it asserts is secret about the alleged "recipe" received by MillerCoors, despite repeated requests and its counsel's agreement to do so (Exs. 10 - 13), as the alleged "secret" information includes information that is plainly public, such as ingredients that AB itself widely touts in its advertising and labeling. But there has been no judicial finding on AB's assertions regarding trade secrets. Indeed, the court has not ruled whether such issues are legitimately included within this litigation, so the confidentiality of the underlying documents is not ripe for discussion.

AB's motion asks the Court to divert "time and attention from the merits of the case and forces…the [C]ourt to devote time and resources to tangential issues that do not contribute to the resolution of the case." *Formax,* 2014 WL 792086 at *2. After trial in this matter, scheduled for April 2020, a judicial decision may be rendered, and the parties and court can revisit the issue of confidentiality. At that point, it may be time to debate the "bona fide long-term" confidentiality discussed in *Baxter*. Until then, AB's motion is premature and should be denied.

### C. To Grant AB's Motion Invites Mischief

Any corporate litigant understands that it will likely have to produce thousands, if not millions, of pages documents as part of litigation. Pursuant to the protections agreed to in a stipulated protective order, the vast bulk of that information is protected from public disclosure for good reasons. AB now seeks to back out of that stipulation for what appear to be motives

inspired by a desire to circumvent the Court's preliminary injunction order, continue to advance its misleading advertising campaign, pre-try its case in the press and potentially poison the jury pool by unilaterally filing the other parties' documents with an unrelated procedural motion. This type of maneuver could, if countenanced by the Court, foreshadow future litigation fights over every procedural filing, if one party or the other lards it with confidential documents obtained in discovery, no matter the relevance, weight or necessity – purely because it hopes for premature public release, and otherwise would burden discovery. *See City of Greenville, Ill. v. Syngenta Crop Prot., LLC,* 764 F.3d 695, 697 (7th Cir. 2014) ("Requiring judges to vet *every* document in the record to determine whether it is covered by a privilege or some other basis of confidentiality would needlessly increase the district courts' workload. The increased risk of releasing commercially valuable information to the public also would induce litigants to resist disclosure in the first instance."). As this Court has stated, "discovery may properly be expedited by confidential disclosure." *Gildon,* 2005 WL 1899472 at *2 (citing *Union Oil*, 220 F.3d). AB's request would have the opposite effect, resulting in parties fighting tooth and nail over relevance and discoverability, given the risk of premature and on-sided public disclosure.

The public interest, and interests of both parties, would be better served if, after a decision on the merits (i.e., summary judgment motions, motions to dismiss, trials), the parties are able to meet and confer regarding which materials that they jointly agree to have unsealed. The court can then, at that juncture, resolve any remaining disagreements regarding whether particular documents should be unsealed.

**IV.  Conclusion**

For the foregoing reasons, MillerCoors respectfully requests that this Court deny AB's motion to unseal.

Respectfully submitted this 29th day of October, 2019.

                                          */s/ Donald Schott*

                                          Donald Schott
                                          don.schott@quarles.com
                                          Anita Marie Boor
                                          anita.boor@quarles.com
                                          QUARLES & BRADY, LLP
                                          33 East Main Street, Suite 900
                                          Madison, WI 53703
                                          (608) 283-2452

                                          Christopher A. Cole
                                          ccole@crowell.com
                                          David Ervin
                                          dervin@crowell.com
                                          Mark Klapow
                                          mklapow@crowell.com
                                          CROWELL & MORING LLP
                                          1001 Pennsylvania Avenue NW
                                          Washington, D.C. 20004
                                          (202) 624-2701

                                          Holly Melton
                                          hmelton@crowell.com
                                          CROWELL & MORING LLP
                                          590 Madison Avenue, 20th Floor
                                          New York, NY 10022
                                          (212) 895-4258

                                          *Attorneys for Plaintiff*