UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MOLSON COORS BEVERAGE COMPANY USA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ANHEUSER-BUSCH COMPANIES, LLC,<br><br>Defendant. | Case No. 19-cv-00218-wmc<br><br>Redacted |

**PLAINTIFF'S BRIEF RESPONDING TO COURT ORDER OF MAY 27, 2020, AND ADDRESSING WHAT QUESTIONS REMAIN IN DISPUTE**

This Court directed the parties to meet and confer about "whether any question remains for trial…" in light of the Seventh Circuit's recent decision. (Dkt. 312). The parties conferred in good faith but did not reach agreement. Molson Coors[1] believes there are two open issues: (1) Molson Coors' entitlement to a permanent injunction and (2) AB's trade secret counterclaim.

The Seventh Circuit decided Molson Coors was not entitled to the preliminary injunction granted by this Court. It acknowledged that it was "doubtless" that some consumers were misled by AB's originally enjoined ads, but determined that Molson Coors was not entitled to the issued injunction because a portion of its corporate website listed "corn syrup" as an "ingredient" for Miller Lite and Coors Light. That webpage has now been changed to clarify that while corn syrup is used as an adjunct to aid fermentation, it is consumed by yeast during that process, and is not present in the final products.

---

[1] Plaintiff changed its name to Molson Coors Beverage Company USA, LLC during the pendency of this case. Hereinafter, Plaintiff is referred to as "Molson Coors."

1

Based on the facts that now exist, and AB's position that it remains entitled to disseminate the originally enjoined ads and packaging, Molson Coors is entitled to a permanent injunction against AB's misleading ads and packaging, and nothing in the Seventh Circuit's decision precludes such a claim. AB's proposed trade secret counterclaim also remains for resolution.

I.  **MOLSON COORS' REQUEST FOR A PERMANENT INJUNCTION REMAINS FOR RESOLUTION.**

   A.  **The Seventh Circuit's Holding Was Based On Facts That No Longer Exist.**

The Seventh Circuit's consolidated decision and order[2] resolved the issues before it by holding that language in a section of the Molson Coors corporate website listing corn syrup as an "ingredient" for Miller Lite and Coors Light precluded the preliminary injunctive relief granted by this Court. (Dkt. 311-1; Ex. A). Specifically, the panel held that although AB's ads contain statements "from which some consumers doubtless infer" the false conclusion that there is corn syrup in the final products of Miller Lite and Coors Light, Molson Coors was not entitled to preliminary injunctive relief because Molson Coors' website listed corn syrup as an "ingredient" for Miller Lite and Coors Light. (*Id.* at 3-4 (citing a chart then entitled "Brands and Nutritional Data" from the corporate website, www.molsoncoors.com)). According to the panel, even if this webpage merely showed the inputs used to make the beers and not the contents of the final products, consumers might have mistakenly inferred from its use of the term "ingredients" that every item on the list winds up in the final products—the same false impression the AB ads convey. (*Id.* at 4-5).

---

[2] *Molson Coors Beverage Co. USA, LLC. v. Anheuser-Busch Companies, LLC*, Nos. 19-2200, 19-2713, 19-2782, 19-3097 & 19-3116 (7th Cir. 2020). For the Court's convenience, this opinion is attached as Exhibit A to the Declaration of Anita Marie Boor (hereinafter "Boor Decl."), filed concurrently herewith. All cites to "Ex." refer to those exhibits attached to the Boor Decl.

The webpage relied on by the panel has since been revised to make clear that corn syrup serves only as an adjunct in the brewing process, and is not in the final beers, in order to avoid any consumer confusion on that point.  The webpage now makes clear that "Where corn syrup is used as an adjunct to aid fermentation, it is consumed by yeast during that process and is not present in the final product."  (Ex. B (showing revised chart now entitled "Nutritional, Ingredient and Fermentation Source Data – Brands Sold in the U.S. Only" from the corporate website, www.molsoncoors.com)).  The individual *brand* websites for Coors Light and Miller Lite (not referenced in the Seventh Circuit's order), which are more important marketing vehicles for each beer than the corporate website, have not been changed because they already made clear that corn syrup is converted to alcohol during fermentation and is not in either beer.  (*See* Ex. C (excerpts of the brand websites for Coors Light https://www.coorslight.com/our-beer and Miller Lite https://www.millerlite.com/ingredients)).

  **B.**  **In Light Of The Change In Circumstances, The Seventh Circuit's Order Does Not Resolve Molson Coors' Claim For Permanent Injunctive Relief.**

The Seventh Circuit's order does not resolve Molson Coors' request for permanent injunctive relief barring AB from continuing to falsely communicate or misleadingly suggest that corn syrup is in Miller Lite or Coors Light beers.  In determining "the need for injunctive relief," courts must take "appraisal of *all* relevant circumstances" including any "changed" facts that may affect the analysis.  *Atl. Richfield Co. v. Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO*, 447 F.2d 945, 947 (7th Cir. 1971) (emphasis added).  In other words, courts must judge whether to grant an injunction given the present relevant circumstances—this is one of the reasons courts may award injunctive relief later in a case, even after declining to award it earlier. *See, e.g.*, *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 782 (7th Cir. 2011) ("[F]indings made at the preliminary injunction stage do not bind the district court as the case

3

progresses."); *Avanti Center, Inc. v. Avanti Educational Programs, Inc.*, No. 11-cv-196-bbc, 2011 WL 13244670, *1 (W.D. Wis. Dec. 21, 2011) (granting a permanent injunction in a trademark infringement case after finding insufficient evidence on a preliminary injunction).

Appraisal of changed facts is particularly important in trademark/false advertising cases because such cases depend on public perceptions, which are malleable. *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 140 S.Ct. 1589, 1596 (2020) ([T]he enforceability of a mark and likelihood of confusion between marks often turns on extrinsic facts that change over time. [L]iability for trademark infringement turns on marketplace realities that can change dramatically from year to year."). Per McCarthy, "'Rights in this field do not stay put. They are like ocean beaches; they shift around. Public behavior may affect them.'" 6 McCarthy on Trademarks and Unfair Competition § 32:88 (5th ed.). When "facts on the ground shift[]" in trademark/advertising cases, courts must evaluate the need for injunctive relief based on those changed facts. *LFP IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424, 426-427 (6th Cir. 2016) (affirming modification of injunction because "facts on the ground shifted"); *see also Sizzler Family Steak Houses v. W. Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1539-1540 (11th Cir. 1986) (affirming modification of injunction to cover new violations).[3]

Here, the facts that underpinned the Seventh Circuit's decision to vacate the preliminary injunction have changed. The panel itself recognized that AB's ads contain statements from which some consumers "doubtless infer" the false understanding that there is corn syrup in the final Miller Lite and Coors Light products. (Dkt. 311-1, at 4; Ex. A, at 4). Despite this, the panel vacated the preliminary injunction because it found that the listing of "corn syrup" as an "ingredient" on one page of the Molson Coors corporate website may have led consumers to

---

[3] These trademark cases involve modification of already-entered injunctions, but the underlying rationale applies to the present case with equal force.

draw the same mistaken inference.  (*Id.* at 4-5).  Now that this page of the website has been changed, there is no longer any basis to bar Molson Coors from enjoining those ads that the Seventh Circuit expressly recognized as misleading to consumers.

In addition to changed facts, courts must also consider "the possibility of future misconduct" and "the threat or likelihood of recurring violations" in evaluating the need for injunctive relief.  *Atl. Richfield*, 447 F.2d at 947.  Here, AB has indicated it intends to continue running its ads and using its packaging, so the "threat" of continued violations is acute and the need for injunctive relief urgent.  *See id.*; *cf. Riddell, Inc. v. Shutt Sports, Inc.*, 724 F. Supp. 2d 964, 980 (W.D. Wisc. 2010) ("[T]here is no ground for injunctive relief: Riddell has already removed the reference to 'Youth' helmets from the rush mailer and there is no suggestion they intend to use that language.").

Because Molson Coors no longer refers to corn syrup as an ingredient without also explaining that it ferments during brewing, and because AB had indicated it intends to continue to run ads implying exactly the opposite—a message the Seventh Circuit found "doubtless[ly]" misleading—Molson Coors must be allowed to pursue permanent injunctive relief.

### C. Injunctive Relief Is Particularly Appropriate Here Because Thousands Of Pages Of Late Disclosures By AB Show That AB Intended To Communicate The False Impression That The Molson Coors Beers Contain Corn Syrup.

Under this Court's prior scheduling order, summary judgment briefing was completed on November 22, 2019.  (Dkt. 114).  After the briefing closed, AB produced tens of thousands of new pages of documents—28,273 new pages out of 47,839 total, roughly 59% of its total production—many containing explosive revelations about AB's intent to mislead consumers about what is in Miller Lite and Coors Light.[4]  Redacted

---

[4] In the final two weeks of discovery alone, AB produced over 20,000 pages of new documents.  (Boor Decl., ¶ 11; *see also* Exs. F-H (examples of documents produced after summary judgment briefing)).

Redacted

Redacted

Redacted

---

[5] Redacted

6

Redacted

███████████████████████████████████████████

    ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

    ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████

# Redacted

Redacted

███████████████████████████████████████████

███████████████████████████████████████████

Redacted

### D. Suggested Procedure for Resolving Molson Coors' Claim for Permanent Injunctive Relief.

AB's motion for summary judgment and Molson Coors' motion for partial summary judgment are both filed, fully briefed, and remain pending. Molson Coors' motion is still applicable, as it relates to AB's affirmative defense. However, much of AB's motion is now moot. AB may wish to argue that Molson Coors' claim for permanent injunctive relief should be dismissed on summary judgment. Any such argument lacks merit, especially in light of the Seventh Circuit's observation about the misleading implication of AB's own ads. However, should AB wish to file such a motion, Molson Coors respectfully proposes the following procedure for future proceedings regarding Molson Coors' claim for permanent injunctive relief:

1. Within 30 days of the Court's order on this briefing, AB may file a renewed motion for summary judgment on the claim for permanent injunctive relief, with Molson Coors' opposition due 28 days after the motion's filing, and AB's reply due 14 days after the opposition's filing.

2. The briefing may incorporate arguments from prior briefing by specific reference. New Proposed Findings of Fact and responses to prior Proposed Findings of Fact may be submitted, but limited to facts which are new since the completion of the prior summary judgment briefing, or based on discovery produced or taken since the last summary judgment briefing.

## II. AB'S PROPOSED TRADE SECRET COUNTERCLAIM REMAINS FOR RESOLUTION.

On October 17, 2019, AB moved to amend its complaint to add counterclaims for trade secret misappropriation under the federal Defend Trade Secrets Act and state Uniform Trade Secrets Acts ("the counterclaim"). (Dkt. 162). In the briefing that followed, AB told the Court that "this counterclaim is inextricably interwoven with the underlying dispute…Redacted

8

Redacted

███████████████████████████." (Dkt. 247 at 7).[6] Molson Coors initially opposed leave, *inter alia*, on grounds of prejudice given the then-quickly approaching trial date and the lack of discovery as to the counterclaim. (Dkt. 221, at 19-21). Because that trial date has since been vacated, Molson Coors withdraws its opposition to the request to amend and add the counterclaim.[7]

Adequate time for discovery and identification of experts on the counterclaim will need to be built into the schedule for the case before trial.[8] This discovery period need not be particularly long. Before that discovery can begin, however, AB should identify with specificity its alleged trade secrets. *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) (trade secret plaintiff must identify what particular information qualifies as a trade secret). Without a trade secret identification, Molson Coors, the Court, and the jury will all be "shooting in the dark" as to what is at issue. To streamline discovery, AB should—for each alleged trade

---

[6] AB also told the Court that "the claims do arise out of the occurrences that are the subject of MillerCoors's complaint. The Counterclaim is interwoven with the underlying dispute. Redacted ███████████████████████████████████████████████." (Dkt. 162, at 2).

[7] Molson Coors continues to oppose AB's amendment otherwise, including to its legally deficient unclean hands defense (paragraph 2 of its Affirmative Defenses) and to its other counterclaims that remain legally deficient for the reasons stated in Molson Coors' opposition. (Dkt. 221, at 8-15). Further, Molson Coors continues to oppose AB's inappropriate request to unseal, including confidential documents and materials that AB gratuitously attached to its filings. (*See, e.g.*, Dkt. 300, at 17).

[8] For example, Molson Coors has a right to explore whether AB owns the alleged trade secrets, whether AB adequately protected them, whether the alleged trade secrets have independent value because of their secrecy, and to what extent AB may have disclosed them to others without necessary safeguards. All of these are open questions Redacted ████████████████████████████

secret—identify who (allegedly) developed the information, which aspects are secret or are in the public domain, and to whom it has been disclosed. Contemporaneously, Molson Coors will serve document requests. AB should produce responsive documents right away.

Thus, AB should be ordered to identify its trade secrets with specificity and make an initial production within 30 days of the Court's decision on this briefing. It should produce expert reports within 60 days of the Court's decision, and Molson Coors should produce its expert reports within 60 days after that. Summary judgment motions should be due 30 days after the Molson Coors expert deadline, with opposition briefs due 28 days thereafter, and reply briefs due 14 days later.

## CONCLUSION

There are two issues that remain in this case: (1) Molson Coors' request for a permanent injunction and (2) AB's trade secret counterclaim. The Court should proceed to resolve those claims using the procedures set forth above.

Respectfully submitted this 3rd day of July, 2020.

*/s/ Donald K. Schott*
Donald K. Schott
don.schott@quarles.com
Anita Marie Boor
anita.boor@quarles.com
QUARLES & BRADY, LLP
33 East Main Street, Suite 900
Madison, WI 53703
(608) 283-2452


Christopher A. Cole
ccole@crowell.com
David Ervin
dervin@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
(202) 624-2701

Holly Melton
hmelton@crowell.com
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
(212) 895-4258

Raija J. Horstman
rhorstman@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
(213) 622-4750

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on July 3, 2020, I caused a copy of the foregoing document to be served on all counsel of record via the Court's electronic filing system:

>	*/s/ Donald K. Schott*
>	Donald K. Schott